FILED
U.S. District Court
District of Kansas

JUI 01 2025

Clerk, U.S. District Court
By_____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

**BRYAN C. ZESIGER,**
**Plaintiffs, Pro Se,**

**DR. GINA MONTALBANO,**
**Plaintiffs, Pro Se**

v.        Civil Action No. *2:25-CV-2354-EFM-ADM*

**Defendants**

- **GOVERNOR LAURA KELLY**, IN HER OFFICIAL CAPACITY
- **SENATOR JERRY MORAN**, IN HIS OFFICIAL CAPACITY
- **LEAVENWORTH COUNTY BOARD OF COMMISSIONERS** (Collective and Individual Members Named in Official Capacities)
- **SECRETARY MIKE BEAM,** IN HIS OFFICIAL CAPACITY
- **KANSAS DEPARTMENT OF AGRICULTURE** (Agency – State of Kansas – Official Capacity)
- **KANSAS BOARD OF TAX APPEALS (BOTA)**, IN ITS OFFICIAL CAPACITY
- **KENNY TITUS**, IN HIS OFFICIAL CAPACITY (FORMER CHIEF LEGAL COUNSEL TO THE KANSAS DEPARTMENT OF AGRICULTURE AND CURRENT KANSAS STATE SENATOR)
- **KANSAS DEPARTMENT OF REVENUE – PROPERTY VALUATION DIVISION (PVD)**, AND **DAVID HARPER, FORMER DIRECTOR**, IN HIS OFFICIAL CAPACITY
- **DIRECTOR DEBBIE BEAVERS**, IN HER OFFICIAL CAPACITY AS HEAD OF THE KANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION (ABC) AND **THE KANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION**, THROUGH THE KANSAS DEPARTMENT OF REVENUE, IN ITS OFFICIAL CAPACITY

1

- **KANSAS DEPARTMENT OF COMMERCE, AND THE LIEUTENANT GOVERNOR OF KANSAS** IN HIS OFFICIAL CAPACITY
- **SENATOR CARYN TYSON** (Official Capacity Only)
- **FORMER SENATOR JEFF PITTMAN** (Official Capacity Only)
- **REPRESENTATIVE LANCE NEELLY** (Official Capacity Only)
- **REPRESENTATIVE KEN CORBET** (Official Capacity Only)
- **FORMER SENATOR TOM HOLLAND** (Official Capacity Only)
- **MISTY BROWN** (County Counselor and Custodian of Records for Leavenworth County – Official Capacity)
- **DAVID VAN PARYS** (Former County Counselor for Leavenworth County – Official and Individual Capacities)
- **LEAVENWORTH COUNTY APPRAISER'S OFFICE, BOB WEBBER, AND TRAVIS HUNTSINGER** (Agency-level liability; Webber and Huntsinger individually and officially)
- **JOHN JACOBSON** (Named in Official Capacity Only)
- **KRYSTAL VOTH** (Named in Both Official and Individual Capacities)
- **DOUG SMITH** (Named in Both Official and Individual Capacities)
- **ROGER MARS** (Legal Representative, Leavenworth County Counselor's Office – Official Capacity Only)
- **LEAVENWORTH COUNTY PUBLIC WORKS- Director of Public Works –** (Official Capacity Only)

## Verified Complaint and Petition for Declaratory Judgment, Injunctive Relief, Damages, and Other Relief

This is a verified civil rights action brought under 42 U.S.C. § 1983, seeking declaratory and injunctive relief, as well as compensatory and punitive damages based on constitutional violations, unlawful taxation, and preempted zoning activity.

## INTRODUCTION

Plaintiffs Bryan C. Zesiger, Pro Se and Dr. Gina Montalbano, Pro Se, acting pro se, bring this civil action against the above-named Defendants under 42 U.S.C. §§ 1983 and 1985, 28 U.S.C. §§ 1331, 1343, and 1367, the Takings Clause of the Fifth Amendment, the Equal Protection and

Due Process Clauses of the Fourteenth Amendment, the First Amendment (right to petition the government), the Commerce Clause of the U.S. Constitution, and under Kansas statutory authority including K.S.A. 79-1476, K.S.A. 19-2921, and K.S.A. 74-50,164.

Pursuant to 7 U.S.C. § 1626, the United States Congress defines 'agricultural products' to include viticultural activities and manufactured products raised or produced on farms. This definition unambiguously includes farm winery operations such as the Zesiger Vineyard. Therefore, Leavenworth County's effort to classify such agricultural land and buildings as commercial is not only in violation of Kansas law (K.S.A. 19-2921), but also flies in the face of federal legal standards governing agriculture and rural land use. (see Ex. 25)

Plaintiffs also allege a pattern of racketeering conduct under 18 U.S.C. §§ 1961–1968 (RICO) based on predicate acts involving deprivation of rights under color of law, mail and wire fraud, concealment of official knowledge, and retaliatory use of government systems to suppress constitutionally protected rights.

This case arises from the repeated, targeted, and unlawful conduct by Kansas state agencies and local government bodies who, acting in concert, denied Plaintiffs' constitutional and statutory rights, obstructed lawful agricultural and agritourism operations, interfered with protected property interests, and subjected Plaintiffs to unequal, discriminatory taxation, regulatory overreach, and retaliatory enforcement for attempting to expose and correct governmental wrongdoing.

Plaintiff Bryan Zesiger is a retired U.S. Army Major, Bronze Star recipient, decorated combat veteran, and lifelong public servant who retired out of Fort Leavenworth, Kansas. Together with his wife, Dr. Gina Montalbano — a first-generation Sicilian-American, daughter of immigrants, holder of a Doctorate in Education, and retired public school principal — the Plaintiffs chose to make Kansas their home, where they built Z&M Twisted Vines Winery and Vineyard from nothing into a thriving agricultural business. That effort was met with a coordinated campaign of obstruction, economic suppression, and bureaucratic retaliation, all designed to discourage accountability and enforce submission.

The Special Use Permit (SUP) imposed on Plaintiffs' agricultural property was used as a weapon to restrict commercial hours, limit staffing, impose unlawful fees, and otherwise stifle their ability to compete in the Kansas wine market. Plaintiffs assert that this state-sanctioned interference in lawful interstate commerce and agricultural entrepreneurship violates the Commerce Clause of the U.S. Constitution, and that similarly situated businesses were not subjected to such treatment.

# JURISDICTION AND VENUE

This Court has original jurisdiction over this civil action pursuant to:

• 28 U.S.C. § 1331 – Federal question jurisdiction, as the claims arise under the U.S. Constitution and federal statutes;

• 28 U.S.C. § 1343(a)(3) – Jurisdiction over actions to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States;

• 42 U.S.C. §§ 1983 and 1985 – For violations of civil rights and civil conspiracy under color of state law;

• 18 U.S.C. §§ 1961–1968 (RICO) – For damages arising from participation in an unlawful pattern of racketeering activity involving multiple governmental departments and officials;

• 28 U.S.C. § 1367(a) – Supplemental jurisdiction over related state law claims arising from a common nucleus of operative fact.

**Declaratory relief is authorized under 28 U.S.C. §§ 2201–2202.**

**Injunctive relief is authorized under Federal Rule of Civil Procedure 65.**

Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, the challenged actions, policies, and injuries took place within Leavenworth County, Kansas, where the Plaintiffs reside and where Defendants perform or have performed official duties under the color of law.

The inclusion of state and federal officials, including elected and appointed officials such as the Governor of Kansas, members of the Kansas State Legislature, and various county-level actors, is proper under federal civil rights law and does not immunize them from suit in their official or individual capacities where prospective relief and injunctive orders are sought under the doctrine set forth in Ex Parte Young, 209 U.S. 123 (1908).

Plaintiffs seek relief from ongoing violations of federal and state law, thereby satisfying all jurisdictional elements under both federal and supplemental authority. Any assertion that this action cannot proceed against state or local actors in federal court is unfounded and contrary to well-established civil rights jurisprudence, including but not limited to:

• Ex Parte Young, 209 U.S. 123 (1908) – Permitting suits against state officials for prospective injunctive relief for ongoing constitutional violations;
• Verizon Maryland Inc. v. Public Serv. Comm'n, 535 U.S. 635, 645 (2002) – Confirming federal courts' power to grant prospective relief against state officers;
• Pulliam v. Allen, 466 U.S. 522 (1984) – Holding that judicial immunity does not bar injunctive relief against state judicial officers;
• Hafer v. Melo, 502 U.S. 21 (1991) – Clarifying personal-capacity suits against state officials under § 1983;
• Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) – Municipal liability for policies or customs causing constitutional injury.

Plaintiffs further reserve the right to expand or amend jurisdictional assertions as additional information becomes available through discovery, Kansas Open Records Act responses, or federal referral channels.

## FEDERAL COMPLIANCE VIOLATION AND SUPREMACY:

The Plaintiffs bring this action before the United States District Court because the conduct of Leavenworth County, the Kansas Board of Tax Appeals (BOTA), and other state officials does not merely violate Kansas law—it also stands in direct conflict with federal statutory authority and constitutional doctrine. Specifically, 7 U.S.C. § 1626, a federal statute under the Agricultural Marketing Act, defines viticulture and the production of processed agricultural goods (including wine) as protected agricultural activities. This federal law supersedes any state or local regulation to the contrary. When Leavenworth County used zoning mechanisms (such as special use permits) or commercial taxation to reclassify Plaintiffs' vineyard and wine

operations—despite the known protections under K.S.A. 19-2921, four consistent Kansas Attorney General opinions (1985, 1992, 2016, and 2018), (See Ex. 12, 13, 14, 15) and the controlling Kansas Supreme Court case Blauvelt v. Board of Leavenworth County Commissioners, 227 Kan. 110 (1980)—they acted not only outside the scope of Kansas law, but also in violation of federal law and the Supremacy Clause of the United States Constitution.

To the extent that Leavenworth County, BOTA, or any Kansas agency has received federal funding through USDA programs, federal tax-sharing mechanisms, or any form of rural development funding, their actions risk placing that funding in jeopardy. Under the doctrine of federal preemption, and as reinforced in Gade v. National Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 108 (1992) and Leslie Miller, Inc. v. Arkansas, 352 U.S. 187 (1956), where state actions conflict with valid federal statutes governing economic activity, federal law controls. Because the Plaintiffs' agricultural operation is expressly covered under federal statute, this Court has jurisdiction under 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 1367 (supplemental jurisdiction over state claims). Further, the continued enforcement of unlawful zoning classifications and commercial tax assessments constitutes an ongoing deprivation of rights secured by the laws of the United States, subject to remedy under 42 U.S.C. § 1983.

(See Exhibit 25 – Summary of Federal and State Agricultural Law Violations)

**Included Federal Case Law:**

- Gade v. National Solid Wastes Mgmt. Ass'n, 505 U.S. 88 (1992): Confirms that where federal law occupies a regulatory field, state law must yield.
- Leslie Miller, Inc. v. Arkansas, 352 U.S. 187 (1956): States cannot create barriers to federal policy enforcement.
- Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001): Federal courts have power to strike down arbitrary and discriminatory local government action.
- 28 U.S.C. § 1331: Federal question jurisdiction.
- 42 U.S.C. § 1983: Federal remedy for deprivation of constitutional and statutory rights under color of state law.

# PARTIES

**Plaintiffs**

**BRYAN C. ZESIGER** (Co-Founder of Z&M Twisted Vines, Combat Veteran, Retired U.S. Army Major)

Plaintiff Bryan C. Zesiger is a retired U.S. Army Major, an Apache Longbow combat pilot, and a veteran of Operation Iraqi Freedom, Operation Enduring Freedom, and multiple international military missions over a distinguished 26-year career. He is a graduate of the University of New Mexico and the United States Army Officer Candidate School and holds a Master of Business Administration.

Following his military retirement, Mr. Zesiger redirected his lifelong discipline, leadership, and vision into agriculture — co-founding Z&M Twisted Vines Winery and Vineyard with his wife, Dr. Gina Montalbano. What began as a personal dream became a deeply rooted lifestyle and a nationally recognized farm winery, committed to Kansas-grown products, veteran employment, and community-building through agritourism.

Plaintiff Bryan Zesiger is not just a veteran — he is a builder, a creator, and a protector. The land they live on, grow on, and work daily is more than property. It is the soil where he chose to plant his flag after a lifetime of service to his country.

He brings this petition forward not just as a legal recourse, but as a matter of constitutional defense, landowner justice, and the same duty-bound conviction with which he wore the uniform of the United States.

**DR. GINA MONTALBANO** (Co-Founder of Z&M Twisted Vines, Educator, First-Generation Italian-American, Advocate for Agriculture and Education)

Plaintiff Dr. Gina Montalbano Zesiger is a lifelong educator, former school principal, and a first-generation Italian-American whose roots trace back to the vineyards of Sicily. She holds a Doctorate in Education and spent decades mentoring students, developing curriculum, and advocating for families and children across Kansas.

Her journey into farming and winemaking began when she and her husband, Bryan, combined their personal stories — one of service, the other of culture and education — into a shared mission: to create a vineyard that honored tradition, community, sustainability, and most of all, love.

Together, they co-founded Z&M Twisted Vines, living by the motto:

"Twisted in life, twisted in love, and twisted in wine.

Their vineyard is more than a business. It is their home. It is where they host nonprofit fundraisers, community events, grape stomps, and veteran celebrations. It is where they wake, work, and dream — hand-in-hand.

Dr. Gina brings this petition not just as a plaintiff, but as a wife, educator, immigrant daughter, and advocate for fairness and respect in agriculture. She has seen firsthand how unjust laws and retaliatory enforcement tear at the threads of progress — and she stands here not only to defend their land, but to ensure that no other Kansas woman, farmer, or small business owner is ever forced to endure the same.

## Defendants

## DEFENDANT NO. 1: GOVERNOR LAURA KELLY, IN HER OFFICIAL CAPACITY

Governor Laura Kelly is sued solely in her official capacity as the chief executive of the State of Kansas. She is named pursuant to the doctrine of Ex parte Young, 209 U.S. 123 (1908), which provides a longstanding exception to sovereign immunity where a state official is sued in their official role to prevent ongoing violations of federal law through injunctive or declaratory relief.

As Governor, Kelly is the ultimate executive authority under the Kansas Constitution and statutes, and is charged with overseeing the lawful and constitutional operation of all state agencies, including but not limited to the Kansas Department of Revenue, Property Valuation Division (PVD), Board of Tax Appeals (BOTA), and the Kansas Department of Agriculture.

Governor Kelly had a non-discretionary duty to ensure consistent and lawful application of Kansas statutes and constitutional protections. When multiple agencies under her authority—specifically the PVD, BOTA, and the Department of Agriculture—took conflicting or contradictory

6

actions regarding Plaintiffs' classification, taxation, and treatment, it became her legal responsibility to intervene and resolve the inter-agency conflict in a manner consistent with the Constitution and laws of both Kansas and the United States.

This obligation is supported by:

- Kansas Constitution, Article I, § 3, which vests executive power in the Governor to ensure faithful execution of the laws;
- K.S.A. 75-105, which gives the Governor the authority to supervise the conduct of all executive and ministerial officers;
- K.S.A. 75-102, which holds that the Governor may require information in writing from any officer of the executive department;
- K.S.A. 19-2921, which places zoning and agricultural classifications under regulatory review and balance;
- And K.S.A. 74-50,164, which recognizes agritourism as a protected class of agricultural activity.

Despite this, Governor Kelly took no corrective action after being made aware—through official correspondence, including a public letterhead document signed by agency directors with her name on the top right and Secretary of Agriculture Mike Beam on the top left—that multiple executive agencies were in open conflict over Plaintiffs' agricultural and agritourism classification. This constitutes deliberate indifference and a failure to exercise executive oversight, which allowed the unconstitutional conduct of subordinate agencies to continue unabated.

Petitioners do not seek monetary damages from Governor Kelly. Rather, they respectfully invoke the equitable authority of this Court under Ex parte Young to order injunctive and declaratory relief, compelling the Governor to:

- Acknowledge the recognized classification of Plaintiffs' business as agricultural and agritourism,
- Compel uniform treatment across all Kansas state agencies,
- Prevent future agency conflict that results in constitutional harm,
- And ensure compliance with federal law, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Commerce Clause of Article I, Section 8.

Governor Kelly is not above the law, and the principles of federalism do not insulate her from judicial oversight where there is ongoing harm and a pattern of administrative obstruction that violates the constitutional rights of Kansas citizens. The injunctive relief sought against her is prospective in nature and limited to requiring her to carry out her constitutional duties as executive.

## DEFENDANT NO. 2: SENATOR JERRY MORAN, IN HIS OFFICIAL CAPACITY

Senator Jerry Moran, a sitting United States Senator from Kansas, is sued in his official capacity only. Plaintiffs do not seek monetary damages from Senator Moran but instead seek injunctive and declaratory relief under the doctrine of Ex parte Young, 209 U.S. 123 (1908), as well as relief under relevant constitutional provisions and statutory authority that apply to federal actors who fail to uphold constitutionally mandated duties to their constituents — particularly under

circumstances involving retaliation, equal protection violations, and denial of redress for First Amendment petitions.

## Personal Engagement and Knowledge

Senator Moran was:

- Directly contacted via multiple emails, both prior to and following formal attempts by the Plaintiffs to seek assistance through state and federal channels;
- Personally visited by the Plaintiff in Washington, D.C., as part of formal Kansas Farm Bureau advocacy, where Plaintiff hand-delivered issues regarding unconstitutional taxation, regulatory abuse, and violation of federal protections relating to agricultural classification and commerce;
- Repeatedly introduced to and photographed with the Plaintiff, a decorated combat veteran and small business owner, including public events in Kansas and Washington;
- Specifically asked for assistance following Plaintiffs' presentation of evidence of conflicting agency actions and open constitutional violations, including discrimination against a first-generation American woman and veteran-owned business operating in an agricultural and federally supported capacity.

Despite these extensive personal and professional interactions, Senator Moran and his staff failed to respond, failed to act, and deliberately ignored credible claims of:

- Fourteenth Amendment violations,
- Commerce Clause interference,
- Agricultural misclassification under federal and state law,
- And violations of Plaintiffs' First Amendment right to petition the government for redress of grievances.

## Statutory and Constitutional Basis for Naming Senator Moran

1. Ex parte Young, 209 U.S. 123 (1908)
   → Applies when a government official is sued to stop an ongoing constitutional violation through injunctive relief, not for damages.
2. First Amendment – Right to Petition Government for Redress
   → Federal officials cannot ignore or suppress constitutionally protected petitions from constituents, especially when the government's own agencies are alleged to be violating rights.
   → Moran had a constitutional obligation to acknowledge and refer such claims to proper oversight bodies, especially when originating from a veteran and constituent.
3. Equal Protection Clause (14th Amendment, applied through 5th for federal actors)
   → By knowingly refusing to assist the Plaintiffs, while supporting similarly situated individuals or businesses, Moran's selective inaction resulted in unequal access to federal support, oversight, and redress.
4. Federal Ethics and Oversight Standards for U.S. Senators
   - Per Senate Ethics Manual, Chapter 3, Senators are expected to assist constituents when contacted about abuse of government power, and must do so without discrimination, political bias, or silence.
   - Neglecting duties while maintaining public branding as a champion of veterans and farmers creates a pattern of misrepresentation.
5. Speech or Debate Clause Immunity (U.S. Const. Art. I, §6)
   → Does not apply here, as Plaintiffs are not challenging legislative acts, but Senator

8

Moran's ministerial inaction, constituent neglect, and failure to act upon executive oversight responsibilities once alerted to constitutional violations.

## Why Senator Moran Must Be Held to Account

Senator Moran publicly markets himself as a defender of farmers, veterans, and rural small businesses. Yet when personally approached by the Plaintiffs — who represent all three of those protected American archetypes — he willfully ignored their pleas for assistance, thus enabling and empowering the unconstitutional actions of subordinate agencies.

This Court has the authority to issue declaratory and injunctive relief requiring that:

- Senator Moran acknowledged receipt of credible federal grievances.
- Senator Moran refers or elevates those grievances to DOJ, USDA, or federal oversight committees.
- Senator Moran ceased the pattern of neglect that creates unequal access to constitutional redress for constituents in agricultural or veteran roles.

## Evidence to Be Attached as Exhibits:

- Photos of Plaintiff meeting with Senator Moran (Exhibit X)
- Emails to Senator Moran and/or his staff (Exhibit Y)
- Letter or follow-up correspondence sent after D.C. visit (Exhibit Z)
- Printout or screen capture of Senator Moran's public statements on supporting veterans, farmers, or small business (for contradiction & hypocrisy)

## Legal Relief Requested

Plaintiffs respectfully request that this Court:

- Declare that Senator Moran, in his official capacity, had a constitutional duty to respond to constituent claims of civil rights violations.
- Enjoin further neglect or obstruction by requiring future acknowledgment and referral procedures be followed when credible First and Fourteenth Amendment violations are presented.
- Award any other equitable relief this Court deems just and proper.

Summary of Key Legal Authority Cited:

- Ex parte Young, 209 U.S. 123 (1908)
- Kansas Constitution, Article I, § 3
- K.S.A. 75-105
- K.S.A. 75-102
- K.S.A. 19-2921
- K.S.A. 74-50,164
- 14th Amendment (Due Process / Equal Protection)
- 1st Amendment (Right to petition the government)
- Commerce Clause (Article I, § 8)

## DEFENDANTS 3: LEAVENWORTH COUNTY BOARD OF COMMISSIONERS (Collective and Individual Members Named in Official Capacities)

**Current Members Named:**
• **Jeff Culbertson**
• **Mike Stieben**
• **Willie Dove**
• **Vanessa Reid**
• **Mike Smith**

**Former Members Named (Official Capacity Only):**
• **Vickie Kaaz**
• **Doug Smith** (already named in both official and individual capacities)

The Leavenworth County Board of Commissioners is named as a defendant for its ongoing and systemic failure to correct, mitigate, or acknowledge the discriminatory and unconstitutional treatment of plaintiffs — a veteran-owned, female-led, agricultural operation — despite receiving actual and repeated notice through formal filings, public records, sworn testimony, and correspondence.

Each named Commissioner — past and present — bears responsibility, as elected public officials, for the ongoing disparate enforcement of zoning, taxation, permitting, and land-use governance against Z&M Twisted Vines Winery and Vineyard, in direct violation of:
• State statutory law,
• Federal constitutional protections,
• Binding case law,
• And formal legal advisement from multiple Kansas state agencies.

**BASIS FOR INCLUSION:**
Over a period of more than five years, the plaintiffs have:
• Filed letters of objection,
• Submitted sworn documentation,
• Engaged in formal correspondence,
• Filed petitions,
• And raised legal concerns with this governing body directly, placing each Commissioner on actual notice of the unequal enforcement of land-use laws and targeted regulatory abuse.
Despite this, the Leavenworth County Commission has:
• Taken no remedial action,
• Continued enforcement of the Special Use Permit (SUP) against plaintiffs,
• Ignored comparable operations (e.g., Beyond Paradise Winery, Grinter Farms, Forever Fencing) who were not subjected to the same standards,
• Refused to initiate any oversight or policy correction, and
• Acted in concert with other departments (Planning & Zoning, Public Works, Taxation) to preserve and perpetuate this unconstitutional treatment.

**SYSTEMIC VIOLATIONS:**
Plaintiffs assert that the conduct of the Leavenworth County Commission — both by its votes and its silence — constitutes:
• A pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors;
• Selective enforcement of zoning and tax policy, in violation of the Fourteenth Amendment Equal Protection Clause;

10

• Retaliatory land use and enforcement practices designed to suppress or obstruct the growth of a farm winery recognized by the:
• United States Department of Agriculture,
• Kansas Department of Agriculture,
• Kansas Department of Commerce, and
• Kansas Alcoholic Beverage Control;
• Violation of K.S.A. 19-2921, which exempts agricultural land from local zoning interference;
• Violation of K.S.A. 79-1439(a), requiring uniform valuation of agricultural property;
• Violation of procedural and substantive due process rights under the Fourteenth Amendment;
• And violation of civil rights under 42 U.S.C. § 1983 through their actions and knowing inaction under color of law.

## CARNAL KNOWLEDGE & FEDERAL RECORD:

Commissioners received extensive documentation from plaintiffs regarding these violations, including but not limited to:
• Side-by-side comparisons of SUP enforcement disparities;
• Kansas Department of Agriculture guidance (Kenny Titus) confirming farm winery exemption under K.S.A. 19-2921;
• Public statements by Commissioners and County staff acknowledging awareness of the issue;
• Requests for equitable treatment, returned fees, and policy hearings — all denied or ignored.
Despite their legal obligation to correct unlawful conduct once placed on notice, the Commissioners chose instead to:
• Protect privileged businesses,
• Preserve a broken and retaliatory system,
• And allow ongoing violations of the plaintiffs' civil and economic rights.

## CONSTITUTIONAL AND FEDERAL ACCOUNTABILITY STATEMENT:

The acts complained of herein, when taken in totality, constitute a pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors.

These actions constitute a violation of rights secured by the Equal Protection Clause and 42 U.S.C. § 1983, and may warrant referral under 28 C.F.R. § 35.170(b) and Executive Order 14063.

The County's enforcement behavior — arbitrary, targeted, and knowingly unequal — constitutes a deprivation of property rights so egregious as to 'shock the conscience,' violating substantive due process under County of Sacramento v. Lewis, 523 U.S. 833 (1998).

Plaintiffs have attempted in good faith to report and correct these unlawful practices internally. These filings are made only after Leavenworth County demonstrated a pattern of concealment, retaliation, and institutional silence.

This petition forms part of a documented federal record of systemic land-use discrimination, and plaintiffs intend to present these facts to the Department of Justice, Office of Inspector General, and appropriate Congressional Oversight bodies, as permitted by 42 U.S.C. § 1983 and the Civil Rights of Institutionalized Persons Act.

## RELIEF REQUESTED:

Plaintiffs respectfully request:
• A declaratory finding that the Leavenworth County Board of Commissioners — through its members, agents, and votes — has failed to enforce land-use policy in a constitutionally consistent manner;

• Injunctive relief ordering the immediate removal of all enforcement tied to the unlawful SUP imposed on Z&M Twisted Vines;
• Prohibition of any future discriminatory application of zoning or tax enforcement against agricultural or agritourism entities;
• A public review and audit of the Leavenworth County Board's land-use enforcement practices over the past five years;
• And any further relief deemed necessary to prevent ongoing or future violations of the plaintiffs' civil rights.

## DEFENDANT NO. 4: SECRETARY MIKE BEAM, IN HIS OFFICIAL CAPACITY

Mike Beam, Secretary of the Kansas Department of Agriculture, is sued solely in his official capacity for failing to exercise his constitutional, statutory, and administrative duties to protect and uphold the rights of licensed agricultural producers and agritourism operators in Kansas, including the Plaintiffs.

Plaintiffs do not seek monetary damages from Secretary Beam, but invoke the doctrine of Ex parte Young, 209 U.S. 123 (1908), to request injunctive and declaratory relief compelling him to enforce agricultural laws uniformly, prevent agency conflict, and recognize protected classifications under Kansas statute and federal commerce and due process protections.

### Secretary Beam's Direct Knowledge and Duty to Act

Secretary Beam oversees the licensing and regulation of Kansas wineries, vineyards, agritourism sites, and specialty crop producers, including the Plaintiffs, who are:

- Certified by the Kansas Department of Agriculture as a farm winery and agritourism operator;
- Compliant with K.S.A. 74-50,164 and K.S.A. 82a-2101 et seq.;
- Engaged in direct correspondence with his department and senior legal staff, including Russell Plaschka and Kenny Titus, over a multi-year period.

On official Department of Agriculture letterhead, Secretary Beam's office — through Mr. Plaschka — directly informed Plaintiffs that:

"No special use permit (SUP) is required for agricultural operations such as Z&M Twisted Vines..."

This written acknowledgment, issued with Secretary Beam's name in the upper left, confirms:

- His personal institutional awareness of the conflict between agricultural classification and county enforcement;
- His failure to act as a regulatory authority when local agencies — including Leavenworth County and the Kansas Department of Revenue — took contradictory, punitive action in direct violation of that classification.

### Statutory and Constitutional Duties Breached

Secretary Beam is obligated under multiple Kansas statutes and legal doctrines to:

1. Ensure statutory clarity and agency coordination

- Under K.S.A. 74-50,164, agritourism operations shall be promoted and protected as bona fide agricultural operations.
- Under K.S.A. 82a-2101, licensed farm wineries are recognized as agricultural entities.
- As Secretary, Beam holds exclusive regulatory authority to define and defend these classifications.

2. Prevent unlawful interference in interstate agricultural commerce
   - By allowing other state agencies to obstruct a licensed winery with conflicting directives, Secretary Beam violated the Commerce Clause of the U.S. Constitution.
3. Enforce uniform agricultural standards across agencies
   - Under K.S.A. 75-3701 and 75-7427, Beam is required to coordinate with fellow agency heads to resolve classification conflicts impacting Kansas producers.

## Kenny Titus: From Legal Counsel to State Senator

Beam's lead attorney, Kenny Titus, authored the agency's internal memoranda and responses regarding the Plaintiffs' classification — yet took no action to resolve the contradiction with PVD, BOTA, or Leavenworth County.

Titus subsequently left his position, ran for the Kansas House, and is now a Kansas State Senator, having built his political ascent in part on his knowledge and interaction with this very dispute — and the Plaintiffs.

This means Beam's office was:

- Internally aware of the harm caused to Plaintiffs,
- Directly engaged with them during the drafting of House Bill 2254 and Senate Bill 410, legislation aimed at protecting agritourism and winery operations, and
- Fully capable of intervening, but chose not to.

## Why Secretary Beam Must Answer

Secretary Beam is not merely a distant agency head — he is the figurehead of agricultural integrity in Kansas. His failure to act, even while his own department publicly supported Plaintiffs' business classification, represents:

- A failure of executive oversight,
- A betrayal of statutory authority, and
- A complicit silence that emboldened unlawful county and state action against a veteran-owned agricultural enterprise.

## Legal Relief Requested

Plaintiffs respectfully request this Court to:

- Declare that Secretary Beam, in his official capacity, has an affirmative legal duty to resolve interagency conflict relating to agricultural classification;
- Enjoin Secretary Beam from further permitting or acquiescing to enforcement that contradicts certifications issued by his own agency;
- Require publication and enforcement of clear internal rules preventing local or state actors from undermining farm winery and agritourism classifications; and

13

- Grant any other relief the Court deems just and proper.

## DEFENDANT NO. 5: KANSAS DEPARTMENT OF AGRICULTURE (Agency – State of Kansas – Official Capacity)

The Kansas Department of Agriculture (KDA) is named as a defendant in its official capacity for its role in knowingly permitting and perpetuating unlawful land-use enforcement against Plaintiffs, despite its statutory obligation to define, defend, and enforce agricultural rights under Kansas law.

Over a period of years, Plaintiffs engaged in repeated correspondence with KDA personnel — including but not limited to Russell Plaschka, Director of Agricultural Marketing — who acknowledged in official communications that Z&M Twisted Vines Winery and Vineyard was a legally recognized agricultural operation.

Plaintiffs were informed in writing by KDA that:

- Farm wineries are agricultural operations under K.S.A. 19-2921,
- Agritourism is a protected land-use category,
- Local governments, including Leavenworth County, were bound by this interpretation.

Despite this, KDA took no public position, enforcement action, or meaningful step to ensure the law was followed. Their inaction permitted Leavenworth County to:

- Impose unconstitutional Special Use Permits (SUPs),
- Classify agricultural land as commercial,
- Suppress agricultural subdivision rights,
- And execute targeted regulatory retaliation — in direct contradiction to KDA's own policy guidance.

This failure to act, despite actual knowledge and the power to intervene, establishes institutional liability under Ex Parte Young, as well as deliberate indifference to constitutional and statutory rights.

## LEGAL BASIS FOR LIABILITY

- K.S.A. 19-2921 – Explicitly exempts land used for agricultural purposes from county zoning restrictions. KDA is the primary interpreting body.
- K.S.A. 2-3701 et seq. – Kansas Agritourism Promotion Act – requires state-level support and defense of registered agritourism sites.
- 42 U.S.C. § 1983 – For violation of constitutional rights under color of state law, including the failure to act where a duty exists.
- Ex Parte Young, 209 U.S. 123 (1908) – Allows suits for injunctive relief against state officials or agencies where constitutional rights are being violated and the state failed to intervene.
- City of Canton v. Harris, 489 U.S. 378 (1989) – Liability attaches when a governmental body's failure to act reflects deliberate indifference.
- Monell v. Dept. of Social Services, 436 U.S. 658 (1978) – Institutional liability for custom, policy, or practice that causes constitutional injury.

14

**SUMMARY:**

The Kansas Department of Agriculture cannot declare a landowner protected under Kansas law and then stand by silently while county officials violate that protection. That is not administrative error — that is systemic abdication of constitutional responsibility.

By failing to protect the rights it is legally mandated to define, KDA became an enabler of harm. It is therefore properly named in its official capacity, and subject to injunctive and declaratory relief to prevent future inaction and compel enforcement of its own policy interpretations moving forward.

## DEFENDANT NO. 6:  KANSAS BOARD OF TAX APPEALS (BOTA), IN ITS OFFICIAL CAPACITY

The Kansas Board of Tax Appeals (BOTA) is named as a Defendant in its official capacity under the doctrine of Ex parte Young, 209 U.S. 123 (1908). Plaintiffs seek injunctive and declaratory relief, as well as a court-ordered external review of BOTA's process, personnel, and decisions relating to the unconstitutional taxation and misclassification of farm wineries and agritourism entities in Kansas.

### BOTA's Legal Mandate

BOTA is a quasi-judicial state agency created under K.S.A. 74-2433 through 74-2439, tasked with:

- Reviewing disputes involving state and local taxation;
- Ensuring uniform and equal application of tax law;
- Correcting errors in assessment and classification;
- Providing a remedy for taxpayers where county or state agencies fail to follow the law.

As Kansas's highest authority on tax appeals, BOTA's decisions carry legal weight and serve as binding interpretations of tax law and application.

### Contradictory Opinions and Self-Admitted Incompetence

In Plaintiffs' 2022 and related tax appeals, BOTA:

- Reviewed extensive documentation showing that Leavenworth County misclassified Plaintiffs' vineyard and farm winery as commercial property;
- Acknowledged that there were "multiple issues present," and that the county's handling of the property classification lacked uniformity or coherence;
- Explicitly admitted in writing that it "lacked the mechanisms" to correct or compel compliance from the agencies causing the harm.

Despite recognizing that:

- The property involved is agricultural in nature, operating as a licensed agritourism site;
- Multiple Kansas agencies (Dept. of Ag, ABC, Commerce) support Plaintiffs' classification;
- The local tax scheme was both improperly applied and disproportionately enforced;

15

...BOTA still ruled against the Plaintiffs, upheld the commercial classification, and effectively told the taxpayer to bear the burden without remedy.

This is a stunning breach of their legal responsibility to provide redress and a failure of taxpayer protection at the state's highest tax review body.

## Systemic Consequences and Personnel Accountability

The Board of Tax Appeals is composed of individuals with legal and tax expertise. These are not clerks or bureaucrats — they are trained professionals charged with understanding:

- State and federal constitutional standards for taxation (Equal Protection, Due Process);
- The state's agricultural statutes;
- The role of local zoning as it relates to taxation.

By writing in their official opinion that:

"There are clearly issues present in this case, but BOTA lacks the mechanisms to address them,"
and then issuing a ruling that affirms the damage anyway, BOTA has demonstrated either:

- A complete misunderstanding of their powers, or
- A deliberate choice to abdicate responsibility in the face of constitutional harm.

In either case, their decision emboldens county misconduct, codifies harm against agricultural producers, and destroys faith in Kansas's tax dispute system.

## Constitutional Violations and Failure of Due Process

BOTA's actions — particularly in 2022 — directly contributed to ongoing violations of:

- The 14th Amendment: Plaintiffs were denied equal protection under law and deprived of property through arbitrary, unsupported rulings.
- Kansas Constitution, Article 11, § 1: Requiring uniform and equal taxation, which BOTA recognized was not occurring — and then failed to correct.
- K.S.A. 79-1476 and K.S.A. 79-501: BOTA allowed local valuation in violation of the mandated agricultural land classification methods.

## Relief Requested

Plaintiffs respectfully request that this Court:

- Declare that BOTA's decisions, as written and applied, violate constitutional standards of equal protection and due process;
- Enjoin BOTA from issuing rulings that acknowledge agency wrongdoing yet decline corrective action;
- Order a full judicial or administrative review of BOTA's internal policies, procedures, and member conduct relating to the 2022 and related tax cases;
- Compel the re-opening and re-evaluation of Plaintiffs' prior BOTA case(s) under constitutionally compliant standards;
- And grant any further relief this Court deems just and necessary.

## DEFENDANT NO. 7: KENNY TITUS, IN HIS OFFICIAL CAPACITY (FORMER CHIEF LEGAL COUNSEL TO THE KANSAS DEPARTMENT OF AGRICULTURE AND CURRENT KANSAS STATE SENATOR)

Kenny Titus is sued in his official capacity as a former senior legal official of the Kansas Department of Agriculture and currently elected Kansas State Senator. Plaintiffs seek declaratory and injunctive relief under the doctrine of Ex parte Young, 209 U.S. 123 (1908), for his deliberate and sustained failure to take action to prevent known constitutional violations under his legal authority — and his continued silence and inaction as an elected official despite firsthand knowledge of those ongoing violations.

### Official Role and Knowledge

As Chief Legal Counsel to the Kansas Department of Agriculture, Kenny Titus:

- Authored and distributed multiple legal opinions concluding that farm wineries and agritourism operations, including Z&M Twisted Vines, are agricultural in nature and therefore:
    - Are exempt from local special use permit (SUP) requirements;
    - Should be classified agriculturally for tax purposes under K.S.A. 79-1476;
    - Should receive statutory protection under K.S.A. 74-50,164 (agritourism) and K.S.A. 82a-2101 (farm winery).
- Corresponded with multiple Kansas counties, including Leavenworth County, confirming the Department's legal interpretation that no SUP should be required for Plaintiffs or similarly situated farm wineries.
- Was directly involved in regulatory and legislative discussions relevant to Senate Bill 410 and House Bill 2254, both of which Plaintiffs helped draft and advance, seeking to resolve classification conflicts in Kansas law.

### Failure to Act, Then Political Ascent

Despite holding the clearest legal understanding of Plaintiffs' position, Titus:

- Took no steps to enforce the Department's interpretations or compel coordination with PVD, BOTA, or Leavenworth County;
- Failed to issue any binding order or instruction to counties misapplying zoning or tax law, despite his statutory authority and advisory capacity;
- Took no action to assist Plaintiffs despite personally knowing Bryan and Gina Zesiger, their legal struggle, and their role in shaping Kansas agriculture legislation;
- Then resigned from the Department of Agriculture, ran for the Kansas House, and then again for the Kansas Senate, where he currently serves.

Now, as a sitting lawmaker with full knowledge of the constitutional conflict affecting Kansas farmers and veterans, he continues to remain silent.

### Statutory and Constitutional Violations

Kenny Titus's inaction — both as a public attorney and as an elected lawmaker — constitutes a direct breach of:

- Kansas Rules of Professional Conduct (Rule 1.1, 1.13, 8.4) – His duty as a government attorney required him to protect the integrity of the agency's legal position, communicate up the chain of command, and act to prevent foreseeable harm to citizens.
- K.S.A. 74-50,164 – His legal interpretations acknowledged agritourism protection but were never enforced under his watch.
- K.S.A. 79-1476 – He failed to stop or correct commercial taxation of agricultural land despite statutory clarity.
- K.S.A. 75-105 / 75-102 – As a state official, he had an affirmative obligation to assist the executive branch in resolving conflicting agency action.

As an elected lawmaker, his failure to introduce, defend, or advocate for legislation correcting this ongoing abuse — despite being directly involved with the Plaintiffs — represents not just neglect, but a reckless abuse of institutional knowledge for personal political advancement.

## The Constitutional Stakes

Titus's inaction helped enable:

- Ongoing deprivation of property rights without due process (14th Amendment),
- Discriminatory treatment of a veteran-owned and minority-led agricultural operation (Equal Protection Clause),
- Suppression of lawful interstate commerce (Commerce Clause),
- And retaliatory enforcement that contradicts Kansas's own laws and official positions.

His silence continues to cause harm — not because he lacks power, but because he refuses to use it.

## Legal Relief Requested

Plaintiffs respectfully request this Court to:

- Declare that Kenny Titus, in his official capacity as a former state legal officer and current legislator, knowingly permitted and continues to permit the unconstitutional enforcement of Kansas property, tax, and zoning laws;
- Order that no state legislator or former agency counsel may endorse, support, or permit policies that contradict binding state law and agency interpretations without violating due process protections;
- Require his compliance with future legislative clarification efforts to resolve ongoing harm;
- And grant any further relief this Court deems just and proper.

## DEFENDANT NO. 8: KANSAS DEPARTMENT OF REVENUE – PROPERTY VALUATION DIVISION (PVD), AND DAVID HARPER, FORMER DIRECTOR, IN HIS OFFICIAL CAPACITY

The Kansas Department of Revenue – Property Valuation Division (PVD) is named as a Defendant, along with its former Director, David Harper, in his official capacity. Plaintiffs seek declaratory and injunctive relief under Ex parte Young, 209 U.S. 123 (1908), for the PVD's refusal to perform its statutory duties, resulting in continued constitutional violations, disproportionate taxation, and denial of lawful redress. Plaintiffs assert that the failure to

18

investigate known misconduct — after formal request — constitutes an abuse of discretion and violation of their 14th Amendment rights.

## Statutory Authority and Oversight Responsibilities

Under K.S.A. 79-1404, 79-1407, and 79-1411b, the Property Valuation Division is responsible for:

- Supervising county appraisers and county assessments;
- Investigating irregularities or misapplications of property valuation law;
- Enforcing uniform and equitable assessments throughout the state;
- Initiating corrective action when a county's assessment practices deviate from statutory requirements.

Director David Harper had full statutory authority to initiate an investigation into Leavenworth County upon receiving evidence of:

- Unequal assessment of agricultural property;
- Misclassification of vineyards and wineries as commercial liquor establishments;
- Selective enforcement of special use permits (SUPs) and zoning rules with a discriminatory effect.

## Formal Request for Investigation — Stonewalled

After navigating contradictory agency opinions and after receiving a report from the Kansas Board of Tax Appeals acknowledging irregularities and stating it lacked enforcement mechanisms, Plaintiff Bryan E. Zesiger exercised his statutory right to formally request a PVD investigation into Leavenworth County's assessment practices.

- The request included a clear factual record, legal citations, and supporting documents identifying misclassification, discriminatory zoning enforcement, and overvaluation of agricultural land.
- Rather than acting, PVD Director Harper and his staff stonewalled the request.
  - They asked for more "evidence" despite already being presented with a statutory grievance.
  - They refused to initiate even a preliminary investigation.
  - No site visit, audit, or formal review of the County's actions was undertaken.
- Their refusal directly allowed ongoing violations to continue, including disproportionate tax burdens, denial of due process, and arbitrary suppression of an agricultural enterprise.

## Systemic Inaction and Entrenchment

Plaintiffs allege that:

- The PVD's refusal to investigate, despite a formal and statutorily authorized request, allowed Leavenworth County to maintain an unconstitutional taxation regime that disproportionately targeted Z&M Twisted Vines and other small agricultural operations.
- This represents not a technical error, but a statewide failure of oversight.
- PVD's inaction contradicts its own mission statement and violates its duties under Kansas law and the U.S. Constitution.

- The current PVD Director, Bob Kent, has already told Plaintiffs that farm wineries are no different from liquor stores, confirming that the agency has taken an entrenched, hostile position toward legitimate agricultural businesses.

## Necessity of Federal Review

Because the PVD has failed to:

- Initiate an investigation despite statutory authority;
- Coordinate with other agencies to resolve conflicting classification issues;
- Protect small farmers from unconstitutional taxation practices;

…there is no remaining pathway for relief under Kansas law. Plaintiffs have been denied full records under the Kansas Open Records Act, blocked from discovery of potential agency communications, and have been forced to compile hundreds of pages of documentation on their own.

If the evidence gathered by two citizens alone reveals this level of irregularity and abuse, Plaintiffs believe the actual extent of government misconduct is far greater — a belief reinforced by PVD's refusal to investigate or act.

## Relief Requested

Plaintiffs respectfully request that this Court:

- Declare that the PVD, under the leadership of David Harper, violated its statutory duty to investigate known violations and enforce uniform property valuation standards;
- Enjoin the PVD from further refusal to initiate investigations into known misclassification and unequal taxation of agricultural land;
- Declare that the PVD's refusal to act constitutes an ongoing violation of Plaintiffs' rights under the Fourteenth Amendment (Equal Protection and Due Process Clauses) and a breach of its duties under K.S.A. 79-1404, 1407, and 1411b;
- Refer this matter to the United States Department of Justice or an appropriate federal oversight body for further inquiry;
- And grant such other relief as this Court deems appropriate.

## DEFENDANT NO. 9: DIRECTOR DEBBIE BEAVERS, IN HER OFFICIAL CAPACITY AS HEAD OF THE KANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION (ABC) AND THE KANSAS ALCOHOLIC BEVERAGE CONTROL DIVISION, THROUGH THE KANSAS DEPARTMENT OF REVENUE, IN ITS OFFICIAL CAPACITY

Plaintiffs bring claims against Debbi Beavers, Director of the Kansas Alcoholic Beverage Control Division (ABC), in her official capacity, and against the Kansas ABC Division through the Kansas Department of Revenue, under the doctrine of Ex parte Young, 209 U.S. 123 (1908), seeking injunctive and declaratory relief for ongoing failure to enforce and defend the statutory protections governing farm wineries in the State of Kansas.

## ABC's Role, Authority, and Legal Responsibility

The Kansas ABC Division is the regulatory authority that oversees alcohol production, distribution, and licensing in Kansas under K.S.A. Chapter 41. Farm wineries are licensed under

20

a special agricultural classification and are regulated distinctly from commercial liquor establishments under:

- K.S.A. 41-308a – Statute defining the farm winery license and authorizing operations involving the fermentation of agricultural products grown or processed by the licensee.
- K.S.A. 41-102(a)(26) – Defines a farm winery distinctly from other liquor retailers, explicitly connecting it to agricultural production.
- K.S.A. 74-50,164 – Governs agritourism classification and protection, to which many farm wineries, including the Plaintiffs, are entitled.

Kansas ABC also publishes and maintains the Kansas Farm Winery Handbook, a public guidance document that clearly states:

"A Kansas farm winery license is an agricultural-based license distinct from other retail or manufacturing licenses… Farm wineries transform agricultural products, such as grapes or berries, into wine and are regulated accordingly."

This explicit acknowledgment confirms that farm wineries are not commercial liquor stores and should not be treated or taxed as such. The handbook forms the basis of legal and regulatory expectation for all county and state agencies — yet Kansas ABC has done nothing to protect or enforce it.

## Systemic and Ongoing Inaction

Despite holding clear regulatory authority and knowledge, ABC — under Director Beavers — has:

- Taken no corrective or enforcement action when county or state agencies misclassified or mistreated farm wineries as liquor stores;
- Remained silent while Plaintiffs, and others such as KC Wine Co and KC Pumpkin Patch, were unlawfully burdened by special use permits (SUPs), commercial zoning, and over-taxation;
- Allowed farm wineries to be dragged into local fights over hours of operation, staffing, and zoning rules that are completely inconsistent with ABC's own licensing framework and statutory structure;
- Failed to coordinate with the Kansas Department of Commerce and the Department of Agriculture, despite all three agencies holding overlapping regulatory authority that affects the Plaintiffs and other Kansas wineries;
- Permitted the misrepresentation of its own guidance by other departments and refused to intervene, clarify, or correct the record, even after being notified.

ABC's silence has directly and foreseeably enabled local governments — like Leavenworth County — to:

- Tax agricultural operations at commercial liquor rates;
- Restrict agricultural production through zoning and SUPs;
- Deny basic equal protection to Kansas farm wineries.

## Constitutional and Statutory Breaches

Director Beavers and the ABC have violated or ignored the following duties:

- K.S.A. 41-308a(f) – Requires ABC to protect and oversee licensed farm wineries under a separate framework from other retail licensees;
- K.S.A. 79-1476 – Defines how agricultural land is to be valued; ABC failed to protect that valuation when misclassification arose;
- K.S.A. 74-50,164 – Protects agritourism operators from regulatory overreach and mandates state support and coordination;
- Fourteenth Amendment (Equal Protection and Due Process) – Failing to protect one class of licensee from discriminatory enforcement violates constitutional guarantees;
- Commerce Clause (U.S. Const. Art. I, § 8) – Farm wineries operate in interstate markets, and suppression through unlawful zoning and taxation impairs lawful commerce;
- 1st Amendment (Right to Petition) – Plaintiffs repeatedly informed ABC, to no avail.

## Why ABC and Director Beavers Must Answer

Kansas ABC has codified the correct interpretation, published it, and done nothing to defend it. Their silence is not neutral — it is an active enabler of harm, creating a gap in enforcement where unconstitutional actions can thrive unchallenged.

When an agency publishes the roadmap but refuses to enforce it — and then watches its licensees be punished for following it — that is regulatory failure at its most dangerous.

The Plaintiffs and other Kansas farm wineries are not seeking favoritism. They are demanding that ABC:

- Stand by the laws it administers;
- Protect licensees acting in good faith;
- Coordinate with other agencies to ensure Kansas agriculture is supported, not suppressed.

To this day, ABC's failure to act continues to damage not just Z&M Twisted Vines — but the future of Kansas agriculture.

## Relief Requested

Plaintiffs respectfully request this Court to:

- Declare that the Kansas ABC Division and Director Beavers have failed to enforce or clarify the lawful classification of Kansas farm wineries;
- Enjoin ABC from further permitting counties or state actors to contradict its own published rules regarding the classification and treatment of farm wineries;
- Require ABC to publicly reaffirm the agricultural nature of farm wineries in line with its Farm Winery Handbook;
- And grant any further declaratory and injunctive relief the Court deems appropriate.

## DEFENDANT NO. 10: KANSAS DEPARTMENT OF COMMERCE, AND THE LIEUTENANT GOVERNOR OF KANSAS IN HIS OFFICIAL CAPACITY

The Kansas Department of Commerce, and by extension the Lieutenant Governor of Kansas, who serves as its executive officer, are named in their official capacities as Defendants pursuant to Ex parte Young, 209 U.S. 123 (1908). Plaintiffs seek injunctive and declaratory relief for

ongoing violations of their constitutional rights caused by the Department's complete failure to enforce or defend Kansas's agritourism law, despite licensing, regulating, and publicly promoting Plaintiffs as a model agritourism site for over five years.

## Statutory Authority and Executive Duty

In 2004, the State of Kansas enacted the Agritourism Promotion Act, codified at K.S.A. 74-50,164, to:

- Encourage agricultural operations to diversify through public engagement;
- Promote agritourism as a legally protected subset of agriculture;
- Reduce liability barriers and provide state-backed support to producers.

The statute expressly states:

> "The promotion of agritourism is a public purpose in Kansas. Agritourism activities are considered an agricultural use of land."
> (K.S.A. 74-50,164(a))

The law established a formal registration and licensing program through the Department of Commerce. The Department issues licenses, maintains records of registered agritourism entities, and distributes official materials and training.

The Plaintiffs, Bryan and Dr. Gina Zesiger, have been continuously licensed as an agritourism site by the Department of Commerce for over five years, including a current and valid 2025 license.

## The Agritourism Handbook: Guidance Given, Then Abandoned

The Department of Commerce publishes and distributes the Kansas Agritourism Handbook, which includes:

- Best practices for agritourism operations;
- Regulatory considerations;
- Event hosting guidelines;
- A specific chapter devoted to farm wineries, instructing licensed operators on how to legally and successfully hold events, sell product, and engage the public.

The Plaintiffs followed this handbook exactly — hosting educational and community events on their vineyard, using their own grown grapes, and offering wines produced on-site under their farm winery license.

Despite their full compliance with this guidance:

- Leavenworth County forced them to obtain a Special Use Permit (SUP) to continue hosting events — a permit not required under K.S.A. 74-50,164(c) which prohibits local governments from applying additional regulatory burdens to registered agritourism entities without specific cause;
- They were taxed commercially, as if they were a liquor store, not a vineyard or agritourism operation;
- They were denied agricultural tax treatment, despite their activities falling squarely under Commerce's handbook, ABC guidance, and the Department of Agriculture's certification.

23

At no time did the Kansas Department of Commerce:

- Intervene to defend its own handbook or classification rules;
- Issue a correction or directive to Leavenworth County;
- Publicly reaffirm the legal protections afforded to licensed agritourism businesses;
- Testify or advocate on behalf of Plaintiffs during the legislative process surrounding House Bill 2254, a bill designed to codify agritourism's agricultural status under Kansas tax law — a bill the Department of Commerce chose to remain neutral on despite its obvious relevance.

## The Role of the Lieutenant Governor

The Lieutenant Governor of Kansas is also named in his official capacity as the executive of the Department of Commerce and administrator of the agritourism program. He:

- Has received direct correspondence regarding Plaintiffs' situation;
- Has been copied on communications involving multiple state agencies;
- Was aware of the conflict between county action and state law, and chose not to intervene or clarify the Department's own published policies.

His refusal to lead, clarify, or enforce existing protections under Kansas agritourism law has allowed ongoing constitutional violations, unequal taxation, and suppression of lawful agricultural commerce.

## Constitutional and Statutory Breaches

The Department of Commerce and Lieutenant Governor have violated or enabled violations of:

- K.S.A. 74-50,164 – Agritourism Promotion Act: by failing to enforce the protection of agritourism entities and permitting contradictory local regulation.
- 14th Amendment (Equal Protection / Due Process) – by allowing other agencies to override state-licensed classifications, causing unequal application of law.
- 1st Amendment (Right to Petition Government) – Plaintiffs have repeatedly contacted the Department and received no response or action.
- Commerce Clause (U.S. Const. Art. I, § 8) – by permitting local interference in what is ultimately a licensed, state-backed commercial agriculture operation.

## Why the Department Must Be Held Accountable

Plaintiffs did everything right:

- Registered.
- Complied with the handbook.
- Maintained a working vineyard and educational space.
- Helped draft legislation to fix the problem.

Meanwhile, the agency that licensed them, instructed them, and benefited from their work as an agritourism showcase — sat in silence as they were taxed, zoned, and penalized by local and state actors contradicting the very laws Commerce was sworn to uphold.

This isn't confusion. It's complicity by omission.

## Relief Requested

Plaintiffs respectfully request that this Court:

- Declare that the Kansas Department of Commerce and Lieutenant Governor have failed to enforce the Agritourism Promotion Act;
- Enjoin the Department from further permitting contradictory classifications or county interference with registered agritourism sites;
- Require the Department to reaffirm the legal protections and purpose of the Agritourism Handbook and enforce consistent interagency treatment of such sites;
- And grant such other relief as the Court deems just and proper.

## DEFENDANT 11: SENATOR CARYN TYSON (Official Capacity Only)

**Named Under:** Ex Parte Young, 209 U.S. 123 (1908)

**Relief Sought:** Prospective injunctive relief only

**Capacity:** Official capacity as a sitting Kansas State Senator and Chairwoman of the Senate Committee on Assessment and Taxation

**Basis for Inclusion:**

Pursuant to Ex Parte Young, Senator Caryn Tyson is named in her official capacity as a sitting Kansas State Senator with direct oversight authority over taxation-related statutes and administrative policy. She serves as the Chairwoman of the Kansas Senate Committee on Assessment and Taxation — the legislative committee responsible for statutory oversight of the Kansas Department of Revenue, the Property Valuation Division (PVD), and matters of ad valorem taxation as applied across Kansas.

Petitioners allege that Senator Tyson was placed on actual and constructive notice regarding the unlawful actions and discriminatory taxation policies carried out against them by Leavenworth County and the PVD. Her knowledge is confirmed through the following:

1. Direct Involvement in Legislative Action:
    - Senator Tyson sponsored and introduced Senate Bill 410, a bill which incorporated language from House Bill 2254, co-written and supported by Plaintiff Bryan Zesiger. The purpose of this bill was to reinforce the protection of agritourism and farm winery operations under Kansas law.
    - As Chair, Senator Tyson allowed and witnessed live testimony from both plaintiffs during hearings on HB 2254 and SB 410, directly exposing her to the constitutional violations and statutory misapplications plaintiffs endured.
2. Written Communications:
    - Senator Tyson was CC'd on multiple formal complaints and documentation submitted to other state officials, which explicitly described the unlawful misclassification and disparate taxation of Z&M Twisted Vines, the plaintiff's agricultural winery.
    - Despite these repeated attempts to engage her oversight authority, no action was taken to address or even investigate the tax discrimination against the plaintiffs.
3. Public Acknowledgment of the Issue:
    - In a 2023 public statement made to the Kansas Reflector, Senator Tyson specifically referenced the plaintiffs and their ongoing tax dispute with the

      PVD and Board of Tax Appeals (BOE/BoTA), acknowledging "an issue with taxation" in reference to the Z&M Twisted Vines case.
-    o   This public statement is documented in Exhibit ___, and shows irrefutable awareness of the conflict by a legislative authority with a clear duty to investigate and act.

## Legal and Constitutional Violations:

Senator Tyson's continued inaction — despite her committee authority, direct notice through emails and public testimony, and her public acknowledgment of the taxation conflict — constitutes a failure to exercise legislative oversight and a contributory breach of the plaintiffs' rights under:

- The Fourteenth Amendment Equal Protection Clause, as incorporated to the states;
- The Kansas Constitution, Article 11, Sections 1 and 2, requiring uniform and equal taxation;
- Kansas Statutes K.S.A. 79-1439(a) and K.S.A. 19-2921, which govern the uniform valuation of agricultural lands and exempt agriculture from zoning interference absent a compelling public interest.

Petitioners assert that Senator Tyson's silence and omission are a contributing factor to the state's ongoing constitutional violations and thus entitle them to prospective relief against further legislative and administrative abuse.

## DEFENDANT 12: FORMER SENATOR JEFF PITTMAN (Official Capacity Only)

**Named Under:** Ex Parte Young, 209 U.S. 123 (1908)

**Relief Sought:** Prospective injunctive relief only

**Capacity:** Official capacity as former Kansas State Senator, serving on legislative committees with oversight of public taxation policy and state agency accountability

## Basis for Inclusion:

Petitioners name former Senator Jeff Pittman in his official capacity only, pursuant to the doctrine of Ex Parte Young, for his failure to act on constitutional and statutory violations despite having actual and constructive notice, legislative access, and public awareness of the issue at hand.

During his time as a sitting senator, Jeff Pittman was CC'd on official email communications from the petitioners, including documentation outlining the unlawful property taxation practices and the forced special use permit violations imposed by Leavenworth County and the Kansas Property Valuation Division (PVD). Despite receiving these communications, no formal action or public intervention was taken by Senator Pittman to address the escalating harm to constituents, including the plaintiffs.

As further evidence of his knowledge and recognition of the dispute:

1. Public Admission of Knowledge:
    -    o   In 2023, Senator Pittman made a public statement to the Kansas Reflector regarding the Z&M Twisted Vines property tax and valuation dispute. This

26

statement, occurring concurrently with similar remarks made by Senator Caryn Tyson, acknowledged the existence of "an issue with taxation" surrounding the plaintiffs' farm winery and the administrative handling of their case by PVD and BOTA.

- This bipartisan acknowledgment — one from a Democrat (Pittman) and one from a Republican (Tyson) — illustrates that the issue was neither partisan nor hidden, but well-known to both sides of the legislature. Yet, no corrective action was introduced or supported.

2. Breach of Oversight Duty:
   - As a state senator, Pittman had both the authority and the platform to raise concerns, initiate a legislative inquiry, or refer the matter for further investigation. His failure to exercise this legislative discretion, particularly after acknowledging the validity of the underlying concern, constitutes a contributory breach of his official duties to constituents and the Kansas public.
   - Petitioners assert that Pittman's passive inaction in the face of a known, unlawful application of state policy constitutes participation by omission.

3. Service and Jurisdiction:
   - Petitioners will serve former Senator Pittman through his last known official address at the Kansas State Capitol in Topeka, Kansas. Further service arrangements will be handled in accordance with federal rules governing service of process.

## Legal and Constitutional Violations:

Former Senator Pittman's failure to act or speak on behalf of his constituents — despite his actual knowledge and public acknowledgment — is a contributing factor in the ongoing injury suffered by the petitioners. His omission helped perpetuate a system that violated:

- The Equal Protection Clause of the Fourteenth Amendment;
- K.S.A. 19-2921 (Exemption of Agricultural Use from Special Use Permits);
- K.S.A. 79-1439(a) (Mandating uniform assessment of agricultural property);
- The Kansas Constitution, Article 11, Section 1 (Uniformity in Taxation);
- And other state-level obligations to uphold due process and equal treatment in taxation enforcement.

Petitioners respectfully request only prospective injunctive relief against further inaction or policy continuation that harms their rights, and include Senator Pittman in this suit only in his official legislative oversight capacity.

## DEFENDANT 13: REPRESENTATIVE LANCE NEELY (Official Capacity Only)

**Named Under:** Ex Parte Young, 209 U.S. 123 (1908)

**Relief Sought:** Prospective injunctive relief only

**Capacity:** Official capacity as current Kansas State Representative with direct legislative influence over agricultural policy and constituent representation

**Basis for Inclusion:**

Representative Lance Neelly is named in his official capacity only, under the doctrine of Ex Parte Young, due to his extraordinary level of direct knowledge and his failure to act despite possessing simultaneous roles as both a state legislator and a paid employee of the plaintiffs' agricultural business, Z&M Twisted Vines.

1. Simultaneous Employment While in Office:
   - While serving as a duly elected member of the Kansas House of Representatives, Representative Neelly was employed at Z&M Twisted Vines during legislative breaks, performing work that gave him intimate, firsthand knowledge of the unconstitutional zoning, taxation, and administrative abuse inflicted on the vineyard by local and state agencies.
   - His wife was also employed at Z&M Twisted Vines for an extended period, reinforcing the deep familial and professional connection to the plaintiffs and their ongoing regulatory struggles.
   - This dual role created a unique ethical and legislative responsibility. Representative Neelly had both personal exposure to the harm and public power to do something about it.
2. Legislative Interaction and Initial Support:
   - Plaintiff Bryan Zesiger drafted House Bill 2254, aimed at protecting farm wineries and agritourism from unlawful local taxation and zoning interference. This bill was submitted to Representative Neelly, who assisted in advancing it through the legislative process.
   - Plaintiffs expressly acknowledge and appreciate this initial support and legislative cooperation.
   - However, the plaintiffs allege that Neelly's duty did not end with that bill. With his inside knowledge of the severity of the abuse and the state's continuing misconduct, Representative Neelly was in a privileged and powerful position to push for oversight, demand investigation, or raise the alarm in committee. Yet he did nothing further.
3. Failure to Investigate or Advocate:
   - Following the termination of his employment with Z&M Twisted Vines, Representative Neelly failed to initiate, support, or speak publicly about the ongoing violations, despite carnal knowledge of the harm and continued visibility into the government's abuse of power.
   - Instead, he has continued to publicly promote his credentials as a champion for agriculture, veterans, and small business — while willfully ignoring the plight of a veteran-owned small farm winery he once served.

## Legal and Constitutional Violations:

Petitioners assert that Representative Neelly's failure to act — despite his rare combination of legislative authority and insider knowledge — constitutes a contributing factor in the ongoing constitutional violations. He is properly named for prospective injunctive relief under Ex Parte Young.

This inaction is in violation of:

- Fourteenth Amendment – Equal Protection Clause
- Kansas Constitution, Article 11, Section 1 – Uniformity of taxation
- K.S.A. 19-2921 – Zoning exemptions for agricultural uses
- K.S.A. 79-1439(a) – Uniform and equal valuation of agricultural property

**Relief Sought:**

Plaintiffs request that the Court compel necessary corrective actions to halt the discriminatory treatment and ensure statutory enforcement moving forward. Representative Neelly is named not for damages, but because his unique position and knowledge make him a necessary party in preventing future violations and ensuring equal protection under Kansas law.

## DEFENDANT 14: REPRESENTATIVE KEN CORBET (Official Capacity Only)

**Named Under:** Ex Parte Young, 209 U.S. 123 (1908)

**Relief Sought:** Prospective injunctive relief only

**Capacity:** Official capacity as current Kansas State Representative with legislative oversight responsibilities over taxation, agriculture, and property rights enforcement

**Basis for Inclusion:**

Representative Ken Corbet is named in his official capacity only, under the doctrine of Ex Parte Young, for his deliberate failure to act despite possessing explicit knowledge, firsthand experience, and direct communication with the plaintiffs regarding the constitutional violations being carried out by Leavenworth County and the Kansas Department of Revenue (PVD).

1. Direct Meeting with Plaintiffs:
    - Representative Corbet held a private meeting with both Bryan and Gina Zesiger at his hunting preserve, where the plaintiffs personally discussed the unconstitutional treatment of their agricultural property and the use of unlawful special use permits.
    - During this conversation,Representative Corbet disclosed his own prior litigation experience, in which he successfully sued his home county to protect his hunting preserve's agricultural classification under Kansas law. That case, Corbet v. Shawnee County, set a direct legal precedent for fair agricultural treatment under Kansas tax statutes — the very principles being denied to the plaintiffs.
    - Despite acknowledging the similarities and clear legal violations, Senator Corbet took no action in his legislative capacity to assist or investigate.
2. Actual and Constructive Notice:
    - Representative Corbet was CC'd on multiple formal complaints and legal correspondences submitted by the plaintiffs to other state and legislative officials, outlining constitutional violations including the forced reclassification of agricultural land, denial of due process, and illegal taxation.
    - These emails included references to the unlawful implementation of special use permits (SUPs) and disparate tax assessments — issues Representative Corbet had personal legal experience with.
3. Public Acknowledgment:
    - In 2023,Representative Corbet made a public statement in the Kansas Reflector, acknowledging a "problem" with taxation relating to Z&M Twisted Vines and the PVD. His acknowledgment, alongside public statements by Senators Caryn Tyson and Jeff Pittman, provides documented bipartisan recognition of the constitutional concerns. Yet no legislative follow-up or oversight action was ever initiated.

29

**Legal and Constitutional Violations:**

Petitioners assert that Representative Corbet's continued inaction — despite his:

- Personal litigation background,
- Private meetings with constituents,
- CC'd communications,
- And public acknowledgment of wrongdoing —

makes him liable in his official capacity under Ex Parte Young for prospective injunctive relief to prevent the continuation of constitutional violations.

His omission of duty contributes to ongoing harm in violation of:

- U.S. Const., Amend. XIV – Equal Protection Clause
- Kansas Constitution, Article 11, Sections 1 & 2 (Uniform Taxation and Agricultural Use Protections)
- K.S.A. 79-1439(a) (Agricultural land assessment standards)
- K.S.A. 19-2921 (Prohibiting zoning interference in bona fide agricultural use)
- Corbet's own precedent-setting case: Corbet v. Shawnee County, Case No. [Insert citation if available]

The inclusion of Representative Corbet is not political. It is based on his demonstrated knowledge, past legal advocacy for identical issues, and conscious refusal to intervene, which makes him a proper party for prospective injunctive relief under federal civil rights law and Kansas administrative law.

## DEFENDANT 15: FORMER SENATOR TOM HOLLAND (Official Capacity Only)

**Named Under:** Ex Parte Young, 209 U.S. 123 (1908)

**Relief Sought:** Prospective injunctive relief only

**Capacity:** Official capacity as former Kansas State Senator with legislative oversight responsibilities related to taxation, property law, and agriculture

**Basis for Inclusion:**

Former Senator Tom Holland is named in his official capacity only, pursuant to the doctrine of Ex Parte Young, for his partial but ultimately ineffective engagement regarding the unconstitutional and discriminatory treatment suffered by the plaintiffs — despite having both the authority and specialized knowledge to intervene.

1. Legislative Access and Actual Knowledge:
   - Senator Holland was CC'd on multiple formal email communications sent by the plaintiffs detailing their mistreatment by Leavenworth County and the Kansas Department of Revenue's Property Valuation Division (PVD).
   - Upon receipt of those communications, Senator Holland initiated outreach to the plaintiffs, and even contacted the Director of the PVD — an effort for which the plaintiffs acknowledge and credit him.
2. Failure to Act Beyond Initial Contact:

30

- o Despite initiating contact and confirming awareness of the issues, no further action was taken by Senator Holland. The inquiry "stalled," and the plaintiffs never received follow-up, oversight, or advocacy from him.
- o As a sitting state senator at the time, Holland had both the statutory authority and ethical obligation to investigate systemic violations, request hearings, raise oversight concerns in committee, and bring attention to violations of equal taxation and zoning law. He failed to pull those levers.

3. Conflict of Interest – Vineyard Ownership and Preferential Treatment:
   - o Senator Holland is, to the best of plaintiffs' knowledge, the owner and operator of a vineyard in Kansas and currently holds a valid farm winery license issued by the Kansas Alcoholic Beverage Control (ABC) division.
   - o Despite being similarly situated in terms of agricultural activity and wine production, there is no public record or indication that Senator Holland's vineyard has ever been subjected to:
     - A Special Use Permit (SUP) requirement;
     - Commercial property taxation inconsistent with K.S.A. 79-1439(a); or
     - The targeted zoning restrictions faced by the plaintiffs.
   - o The plaintiffs assert that this distinction reflects a system of preferential enforcement in Kansas — one that benefits connected individuals, including lawmakers, while imposing disproportionate burdens on those without political protection.

4. Legal and Statutory Violations:
   - o Senator Holland's failure to use his office to correct known injustices, despite his unique understanding as a vineyard owner and legislator, constitutes participation by omission and further entrenches:
     - Violations of the Fourteenth Amendment Equal Protection Clause,
     - Violations of K.S.A. 19-2921, which exempts agricultural use from zoning interference,
     - Violations of K.S.A. 79-1439(a), requiring equal and uniform assessment of agricultural lands,
     - And failure to uphold basic obligations of legislative oversight and fairness under Kansas law.

**Relief Sought:** Petitioners respectfully request no damages against Senator Holland, but include him as a named defendant solely for prospective injunctive relief. As a former legislator with direct awareness, specialized industry knowledge, and partial involvement, his inaction helped perpetuate a system of discriminatory taxation and zoning enforcement — and his inclusion is necessary to illustrate the broader institutional failure.

## DEFENDANT 16: MISTY BROWN (County Counselor and Custodian of Records for Leavenworth County – Official Capacity)

Misty Brown is named in her official capacity as the County Counselor for Leavenworth County and as the designated custodian for public records under the Kansas Open Records Act (KORA). Ms. Brown has played an active and ongoing role in the County's failure to acknowledge, address, or correct unlawful land-use practices, and her conduct reflects a broader institutional policy of administrative silence, concealment, and obstruction.

While plaintiffs have previously named Ms. Brown in her individual capacity in a separate federal action regarding open records violations, she is included here in her official capacity only, as the legal officer responsible for advising all county departments — including Planning and Zoning, Public Works, the Board of County Commissioners, and the County Clerk — on matters related to agricultural land use, zoning authority, KORA compliance, and statutory interpretation.

## FAILURE TO ENFORCE LAWFUL STATUTES AND RESPONSIBILITIES:

As the senior legal advisor to Leavenworth County government, Misty Brown has a legal obligation to research, understand, and properly apply Kansas statutes and case law, including but not limited to:

- K.S.A. 19-2921, which limits the County's zoning power over agricultural use;
- K.S.A. 45-215 et seq., the Kansas Open Records Act;
- K.S.A. 79-1439(a), requiring uniform agricultural valuation;
- And the binding precedent of Blount v. Board of County Commissioners of Leavenworth County, 1980, which reaffirmed that homes located on agricultural land are exempt from zoning regulation if used in connection with farming.

Despite multiple written and oral communications, formal records requests, and public attempts by plaintiffs to correct unlawful enforcement patterns, Misty Brown has refused to acknowledge the County's systemic failure, and has instead served as a central obstruction to the plaintiffs' rights to access truth, justice, and legal remedy.

## PATTERN OF WITHHOLDING PUBLIC RECORDS & MISREPRESENTING LAW:

As custodian of records, Misty Brown has:

- Denied or ignored multiple lawful KORA requests regarding entities such as Forever Fencing, which continues to operate without a required Special Use Permit;
- Withheld documentation that would establish whether other agricultural entities — such as Grinter Farms, the Sunflower General Store, or Beyond Paradise Winery — were held to the same zoning standards imposed on plaintiffs;
- Provided misleading or incomplete legal interpretations to the Board of County Commissioners and Planning and Zoning staff regarding the agricultural zoning exemption;
- And failed to initiate or recommend remedial action even after being placed on notice of constitutional and statutory violations.

## LEGAL AND ETHICAL BREACHES:

Ms. Brown's conduct violates not only the letter of the law but the ethical and constitutional spirit of her office. Specifically, her actions reflect:

- A pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors;
- A knowing failure to discharge legal duties in violation of state and federal law;
- A breach of her responsibilities under the Kansas Rules of Professional Conduct, including:
  - Rule 1.1 (Competence) – Failure to understand relevant law;
  - Rule 2.1 (Advisor's Duty) – Failure to provide objective, lawful advice to the County;

32

        ○   Rule 8.4(d) – Engaging in conduct prejudicial to the administration of justice.

## CONSTITUTIONAL VIOLATIONS:

The policies advanced and defended by Ms. Brown in her role as County Counselor have materially contributed to ongoing violations of:

- The Equal Protection Clause of the Fourteenth Amendment,
- The Substantive Due Process protections against arbitrary and conscience-shocking government conduct, under County of Sacramento v. Lewis, 523 U.S. 833 (1998),
- And the plaintiffs' rights under 42 U.S.C. § 1983 to be free from unlawful and unequal treatment under color of law.

## FEDERAL ACCOUNTABILITY STATEMENT:

These actions constitute a violation of rights secured by the Equal Protection Clause and 42 U.S.C. § 1983, and may warrant referral under 28 C.F.R. § 35.170(b) and Executive Order 14063. The County's legal enforcement posture — as preserved and perpetuated by Ms. Brown — is a direct contributor to the unlawful zoning burdens imposed upon the plaintiffs.

This petition forms part of a documented federal record of systemic land-use discrimination, and plaintiffs intend to present these facts to the Department of Justice, Office of Inspector General, and appropriate Congressional Oversight bodies, as permitted by law.

Plaintiffs have attempted in good faith to report and correct these unlawful practices internally. These filings are made only after Leavenworth County, under the legal advisement of Ms. Brown, demonstrated a pattern of concealment, retaliation, and institutional silence.

## RELIEF REQUESTED:

Plaintiffs request declaratory and injunctive relief as follows:

- A finding that the legal interpretations and policy guidance offered by County Counselor Misty Brown — in her official capacity — have resulted in unequal and unlawful enforcement of land-use laws;
- An order requiring Leavenworth County to cease any further enforcement or interpretation of zoning regulations that conflict with Kansas agricultural exemptions and established federal protections;
- An order requiring full compliance with the Kansas Open Records Act regarding all prior and future inquiries from the plaintiffs concerning zoning, tax classification, and commercial enforcement actions;
- And any further relief deemed just and proper to ensure the correction of this institutional abuse.

## DEFENDANT 17: DAVID VAN PARYS (Former County Counselor for Leavenworth County – Official and Individual Capacities)

David Van Parys is named in both his official and individual capacities for his role as chief legal advisor to Leavenworth County during the period in which plaintiffs were systematically subjected to unequal and unlawful treatment under county zoning and tax enforcement policies. Mr. Van Parys, while acting under color of law, directly contributed to the imposition, enforcement, and preservation of unconstitutional land-use restrictions against Z&M Twisted

Vines Winery and Vineyard — despite possessing carnal knowledge of the law, the facts, and the unequal application of both.

## BASIS FOR INCLUSION:

As County Counselor, Mr. Van Parys held the legal obligation to research, understand, and apply Kansas law, federal constitutional standards, and binding administrative interpretations in his advisement to all departments and officials within the Leavenworth County government.

During his tenure, Mr. Van Parys:

- Received formal written communications from the Kansas Department of Agriculture, including from Kenny Titus, Chief Counsel, clearly stating that farm wineries and agritourism entities are exempt from special use permit (SUP) zoning restrictions under K.S.A. 19-2921;
- Was copied on or a recipient of emails from plaintiffs and state officials outlining this legal framework, as well as the unequal treatment being applied by the County against Z&M Twisted Vines;
- Was informed by third parties — including Bernard Irvine, brother of Irvine's Just Beyond Paradise Winery's owner — that the County was failing to enforce SUP regulations equally, and that plaintiffs were being targeted while other wineries operated without restriction;
- Knew or had every opportunity to know that other agricultural operations, including:
  - Irvine's Just Beyond Paradise Winery,
  - Grinter Farms,
  - Sunflower General Store, and
  - Forever Fencing,
    were not being subjected to the same SUP burdens, fees, or hearings as Z&M Twisted Vines;
- And despite this actual and constructive knowledge, advised or allowed the County to continue enforcement against the plaintiffs, including the imposition of over $8,000 in fees, restrictions on land use, and denial of refund requests.

## LEGAL AND ETHICAL BREACHES:

Mr. Van Parys's actions — and his failure to act despite full knowledge — constitute more than poor judgment; they reflect deliberate, knowing, and unequal administration of law, in violation of:

- K.S.A. 19-2921 – Agricultural zoning exemption;
- K.S.A. 79-1439(a) – Agricultural property tax uniformity;
- The Fourteenth Amendment – Equal Protection Clause;
- 42 U.S.C. § 1983 – Civil rights violations under color of law;
- And the Kansas Rules of Professional Conduct, specifically:
  - Rule 1.1 (Competence) – Failure to properly understand and advise based on controlling law;
  - Rule 2.1 (Advisor's Duty) – Failure to provide objective, lawful counsel based on professional judgment;
  - Rule 8.4(d) – Conduct prejudicial to the administration of justice.

## SYSTEMIC DISCRIMINATION AND CONSTITUTIONAL HARM:

The acts complained of herein, when taken in totality, constitute a pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors.

These actions constitute a violation of rights secured by the Equal Protection Clause and 42 U.S.C. § 1983, and may warrant referral under 28 C.F.R. § 35.170(b) and Executive Order 14063. The County's legal enforcement posture — as preserved and perpetuated by Mr. Van Parys — is a direct contributor to the unlawful zoning burdens imposed upon the plaintiffs.

The County's enforcement behavior — arbitrary, targeted, and knowingly unequal — constitutes a deprivation of property rights so egregious as to shock the conscience, violating substantive due process as recognized under County of Sacramento v. Lewis, 523 U.S. 833 (1998).

Plaintiffs have attempted in good faith to report and correct these unlawful practices internally. These filings are made only after Leavenworth County, under the legal advisement and discretionary direction of Mr. Van Parys, demonstrated a pattern of concealment, retaliation, and institutional silence.

This petition forms part of a documented federal record of systemic land-use discrimination, and plaintiffs intend to present these facts to the Department of Justice, the Office of Inspector General, and appropriate Congressional Oversight bodies, as permitted by law.

## WHY QUALIFIED IMMUNITY DOES NOT APPLY:

Plaintiffs assert that Mr. Van Parys is not entitled to qualified immunity, because:

- He had actual knowledge of the legal protections available to plaintiffs;
- He acted with discretionary authority and deliberate indifference to those rights;
- He failed to intervene, correct, or halt unconstitutional practices — and instead facilitated them;
- His conduct occurred within the context of clearly established law and administrative guidance;
- And his position as chief legal advisor placed upon him a heightened duty of constitutional fidelity

## RELIEF REQUESTED:

Plaintiffs seek:

- Declaratory judgment that Van Parys's actions were unconstitutional and unlawful;
- Injunctive relief preventing any future legal advisement or enforcement that violates plaintiffs' rights under Kansas and federal law;
- Compensatory damages for constitutional and financial harm caused by his advisement and inaction;
- And referral of his conduct to the Kansas Attorney Disciplinary Administrator for further investigation and appropriate sanction.

## DEFENDANTS 18:  LEAVENWORTH COUNTY APPRAISER'S OFFICE, BOB WEBBER, AND TRAVIS HUNTSINGER  (Agency-level liability; Webber and Huntsinger individually and officially)

The Leavenworth County Appraiser's Office is named as a defendant for its central role in the unlawful targeting, discriminatory taxation, and deliberate pattern of civil rights violations committed against Z&M Twisted Vines Winery and Vineyard. This office, and its two leading officers — Bob Webber (County Appraiser) and Travis Huntsinger (Deputy Appraiser) — are named in both their official and individual capacities.

## SYSTEMIC ABUSE AND EVIDENCE OF TARGETING:

Over a period exceeding five years, Bob Webber and Travis Huntsinger — acting under color of law — coordinated and executed a deliberate plan to:

- Inflate the tax valuation of Z&M Twisted Vines far above similarly situated agricultural properties;
- Apply commercial valuation methods to a clearly defined agricultural operation, in violation of K.S.A. 79-1476, K.S.A. 79-1439(a), and constitutional guarantees of tax uniformity;
- Utilize Facebook images, Google Earth data, and unauthorized Channel 5 news footage, including copyrighted photos and material, to construct inflated and malicious valuation folders — without the plaintiffs' knowledge, consent, or legal notice;
- Retain and reference internal appraisal memos that admit — in their own words — to manipulating data to support heightened taxation on plaintiffs' property, which is registered as a farm with the USDA, Kansas Department of Agriculture, and Kansas ABC.

Multiple emails obtained through the Kansas Open Records Act (KORA) confirm that these individuals:

- Knew of plaintiffs' legal agricultural classification,
- Were aware of multiple state-issued documents verifying the land's farm status,
- And yet still orchestrated alternative justification schemes internally to sustain unjust tax burdens on the Z&M Twisted Vines property.

## LEGAL VIOLATIONS:

The acts and omissions of the Leavenworth County Appraiser's Office, Bob Webber, and Travis Huntsinger constitute ongoing violations of:

- K.S.A. 79-1439(a) – Requiring agricultural land to be appraised using agricultural methodology;
- K.S.A. 79-1476 – Requiring fair and equal valuation of property throughout the county;
- K.S.A. 45-215 et seq. (KORA) – Improper withholding and redaction of valuation schemes later uncovered by plaintiffs;
- Kansas Uniform Appraisal Standards – Ignored by both named officials in favor of discretionary targeting practices;
- The Fourteenth Amendment Equal Protection Clause – Through targeted, unequal treatment in taxation enforcement;
- 42 U.S.C. § 1983 – For deprivation of civil rights under color of law.

## CONTROLLING FEDERAL CASE LAW:

Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, 488 U.S. 336 (1989)

36

In Allegheny Pittsburgh, the Supreme Court held that a state violates the Equal Protection Clause when its property tax assessments are grossly unequal and deliberately discriminatory, even under local discretion. This precedent is directly applicable here.

Like in Allegheny Pittsburgh, the County:

- Deliberately departed from uniform valuation methods,
- Created a subclass of targeted properties, including only plaintiffs' farm,
- Imposed higher taxation standards without procedural or legal justification,
- And allowed internal communications and personal biases to govern appraisal standards.

The acts complained of herein, when taken in totality, constitute a pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors.

## PATTERN OF MALICIOUS CONDUCT AND DIGITAL SURVEILLANCE:

Bob Webber and Travis Huntsinger's conduct extended beyond policy misapplication and into intentional malice, as documented through:

- Use of surveillance techniques outside lawful appraisal procedures,
- Access to digital imagery and content from private and third-party sources (e.g., Facebook, broadcast media),
- Email chains indicating an intent to "build a justification file" to sustain inflated tax claims,
- And continued refusal to adjust property classification, despite receipt of contradictory facts from state agencies and the plaintiffs directly.

Their sustained effort to penalize Z&M Twisted Vines while other comparable agricultural properties were:

- Given agricultural valuation without SUP requirements,
- Never subjected to media-based evidence-gathering or inflated analysis,
- And allowed to operate with a fraction of the scrutiny applied to plaintiffs, constitutes intentional, unequal, and retaliatory government action.

## FEDERAL OVERSIGHT TRIGGERS:

"These actions constitute a violation of rights secured by the Equal Protection Clause and 42 U.S.C. § 1983, and may warrant referral under 28 C.F.R. § 35.170(b) and Executive Order 14063."
"The County's enforcement behavior — arbitrary, targeted, and knowingly unequal — constitutes a deprivation of property rights so egregious as to 'shock the conscience,' violating substantive due process under County of Sacramento v. Lewis, 523 U.S. 833 (1998)."
"Plaintiffs have attempted in good faith to report and correct these unlawful practices internally. These filings are made only after Leavenworth County, through its appraisal office and legal staff, demonstrated a pattern of concealment, retaliation, and institutional silence."
"This petition forms part of a documented federal record of systemic land-use discrimination, and plaintiffs intend to present these facts to the Department of Justice, Office of Inspector General, and appropriate Congressional Oversight bodies, as permitted by 42 U.S.C. § 1983 and the Civil Rights of Institutionalized Persons Act."

## WHY QUALIFIED IMMUNITY DOES NOT APPLY TO WEBER AND HUNTSINGER:

- They possessed actual knowledge of plaintiffs' protected agricultural status.
- They constructed an intentional scheme to bypass this status through artificial valuation justification.
- They acted with discretionary authority in ways that contradict federal and state law.
- Their actions were rooted in malice, retaliation, and personal bias — not policy error.

## RELIEF REQUESTED:

Plaintiffs respectfully request:

- A declaratory judgment finding that the Leavenworth County Appraiser's Office engaged in unconstitutional targeting of Z&M Twisted Vines;
- Injunctive relief enjoining all further enforcement of discriminatory valuation methods;
- Correction and full reclassification of plaintiffs' land consistent with state-recognized agricultural use;
- Monetary damages for excessive taxation, emotional distress, administrative harm, and constitutional violations;
- Referral of Bob Webber and Travis Huntsinger to the Kansas Board of Tax Appeals, Kansas Attorney General, State Ethics Commission, and U.S. Department of Justice Civil Rights Division for further investigation.

## DEFENDANT 19:JOHN JACOBSON (Named in Official Capacity Only)

## Named Under:

- Ex Parte Young, 209 U.S. 123 (1908) – for official capacity (prospective injunctive relief only)

## Current Position:

Director of Planning and Zoning, Leavenworth County, Kansas

## BASIS FOR INCLUSION:

John Jacobson is named in his official capacity only, as the current Planning and Zoning Director for Leavenworth County, Kansas. Mr. Jacobson assumed this role following the tenure of former Director Krystal Voth, and is currently responsible for administering and enforcing the County's zoning ordinances — including the Special Use Permit (SUP) imposed upon Z&M Twisted Vines Winery and Vineyard.

1. On or about [insert date], Mr. Jacobson issued a written notice to Z&M Twisted Vines, stating that the SUP associated with the property was permanent and irrevocable, and that the plaintiffs were prohibited from selling, transferring, or altering the use of their property without continued compliance with the existing SUP conditions.
2. Plaintiffs assert that this continuing enforcement of an unlawfully imposed and unequally applied SUP constitutes an ongoing constitutional injury, in violation of:
   - K.S.A. 19-2921 (exempting agricultural use from zoning interference),
   - The Equal Protection Clause of the Fourteenth Amendment, and
   - Basic principles of due process and administrative fairness.
3. Mr. Jacobson's official enforcement action contributes to the present harm being experienced by the plaintiffs, including but not limited to:
   - Inability to sell or refinance the subject property,

- o Ongoing economic harm caused by unlawful land-use restrictions,
- o And continued disparate treatment when compared to similarly situated agricultural or agritourism entities (e.g., Irvine's Just Beyond Paradise Winery, Grinter Farms).

## RELIEF REQUESTED:

Plaintiffs seek injunctive relief under Ex Parte Young to:

- Immediately dissolve the Special Use Permit (SUP) wrongfully imposed on Z&M Twisted Vines;
- Enjoin any further zoning enforcement actions related to the SUP;
- And bar the County, through its agents or successors, from continuing to apply unequal or unlawful land-use restrictions to agricultural operations protected under state law.

## RESERVATION OF RIGHTS REGARDING INDIVIDUAL LIABILITY:

At this time, Mr. Jacobson is not named in his individual capacity. However, plaintiffs expressly reserve the right to amend this petition should discovery, depositions, or forensic analysis of personal or professional digital communications reveal that Mr. Jacobson had:

- Actual knowledge of the unlawful, retaliatory, or discriminatory nature of the SUP,
- Or acted in concert with other officials to continue enforcing it despite such knowledge.

Should such evidence be discovered, plaintiffs will seek to impose individual liability under 42 U.S.C. § 1983 and pursue appropriate compensatory relief.

## DEFENDANT 20: KRYSTAL VOTH (Named in Both Official and Individual Capacities)
**Named Under:**
- Ex Parte Young, 209 U.S. 123 (1908) – for official capacity (injunctive relief)
- 42 U.S.C. § 1983 – for individual capacity (constitutional rights violations and damages)

**Relief Sought:**
- Prospective injunctive relief in her former official role
- Monetary damages and declaratory relief for actions taken in her personal capacity under color of law

**Former Position:**
Director of Planning and Zoning, Leavenworth County, Kansas

### BASIS FOR INCLUSION:

Krystal Voth is named in both her official and individual capacities for her direct role in violating the constitutional and statutory rights of the plaintiffs through targeted, unequal, and retaliatory enforcement of zoning laws — most notably involving the unlawful imposition of a Special Use Permit (SUP) requirement against Z&M Twisted Vines.

At all relevant times during her tenure as Director of Planning and Zoning:

1. Voth had actual knowledge that agricultural operations and agritourism sites — including licensed farm wineries — are exempt from SUP requirements under K.S.A.

19-2921 and supported by long-standing administrative interpretations from both Kansas Department of Commerce and Kansas Department of Agriculture.

2. Despite this knowledge, she required Z&M Twisted Vines to obtain an SUP, triggering unnecessary hearings, restrictions, and fees. In contrast, she knowingly permitted the following similarly situated or larger agritourism/agricultural operations to function without an SUP:
    o Grinter Farms
    o A local alpaca operation
    o Irvine's Just Beyond Paradise Farm Winery
    o Other commercial-scale agricultural businesses in Leavenworth County

3. Z&M Twisted Vines was also assessed the highest SUP-related road impact fee of any entity since 2016, despite being a newly opened, minimally trafficked farm winery with no data to justify such an imposition. This violates both equal protection and uniform enforcement principles under Kansas and federal law.

4. Krystal Voth repeatedly refused to refund the unlawful fee — despite multiple written and oral requests — and continued to subject plaintiffs to the burdens of the SUP process, which delayed and harmed their business operations significantly.

5. Her decisions reflect more than poor judgment or mistakes. They reflect a pattern of discretionary abuse, executed under color of law, and done with full knowledge that others were being treated differently under the same statutory framework.

## STATUTORY & CONSTITUTIONAL VIOLATIONS:

Voth's conduct constitutes a violation of multiple state and federal legal standards, including:

- K.S.A. 19-2921 – Prohibition on zoning interference with agricultural land
- K.S.A. 79-1439(a) – Mandate of uniformity in agricultural assessments
- 14th Amendment Equal Protection Clause – Unequal enforcement of local laws
- 42 U.S.C. § 1983 – Civil rights violations under color of law
- Kansas Open Government principles – Fair access, transparency, and equal treatment under Kansas administrative law

## WHY QUALIFIED IMMUNITY DOES NOT APPLY:

Petitioners assert that Krystal Voth's actions meet the threshold to pierce qualified immunity:
- The rights violated (equal protection, lawful exemption of agricultural property) were clearly established at the time.
- She had actual knowledge of these rights.
- She acted with discretionary authority in a deliberately discriminatory and retaliatory manner.
- The resulting harm to Z&M Twisted Vines was direct, documented, and ongoing.

## RELIEF REQUESTED:

Petitioners seek:

- A declaratory finding that Krystal Voth's actions were unlawful
- An injunction preventing further enforcement or imposition of discriminatory SUP requirements against similarly situated plaintiffs
- Damages for economic harm and administrative burdens imposed as a result of her discriminatory actions
- Any other relief the Court deems just and proper under federal civil rights statutes

## DEFENDANT 21: DOUG SMITH (Named in Both Official and Individual Capacities)

**Named Under:**

- Ex Parte Young, 209 U.S. 123 (1908) – for official capacity (injunctive relief)
- 42 U.S.C. § 1983 – for individual capacity (constitutional rights violations and damages)

**Former Position:**

Leavenworth County Commissioner

## BASIS FOR INCLUSION:

Doug Smith is named in both his official and individual capacities for his direct participation in the unconstitutional enforcement of Special Use Permit (SUP) requirements against the plaintiffs, and for misleading and discriminatory guidance rendered while he served as an elected County Commissioner.

1. Commissioner Smith had direct, ongoing communication with the plaintiffs via text messages and phone calls, in which he:
   - Advised that Irvine's Just Beyond Paradise Winery (owned by Ed & Cindy Irvine) was operating in violation of zoning law by not holding a valid SUP;
   - Encouraged the plaintiffs to comply with the SUP process;
   - Later advised them to meet with Tom Kohl, Leavenworth County's Economic Development Director, as a means of seeking relief — knowing that no viable remedy would be offered.
2. Commissioner Smith also voted in favor of the SUP requirement and road impact fees imposed on Z&M Twisted Vines — despite his personal knowledge that other similar operations were:
   - Not subjected to the same requirements,
   - Not penalized or brought into compliance,
   - And operating under identical or greater levels of commercial/agritourism activity.
3. Plaintiffs assert that these actions constitute:
   - Selective enforcement in violation of the Fourteenth Amendment Equal Protection Clause,
   - Procedural and substantive due process violations,
   - And misconduct under K.S.A. 19-2921, which exempts agricultural operations from zoning interference.

## GROUNDS FOR INDIVIDUAL LIABILITY:

Doug Smith is not entitled to qualified immunity because:

- He had actual knowledge of plaintiffs' disparate treatment.
- He exercised discretionary authority to enforce, approve, or mitigate the harm — and failed to act equitably.
- He personally misled the plaintiffs into pursuing avenues that delayed resolution and compounded harm.

41

- His actions directly caused financial injury, regulatory burden, and violation of constitutional rights.

## RELIEF REQUESTED:

Plaintiffs seek:

- Declaratory judgment that Smith's actions were unconstitutional and unlawful;
- Injunctive relief ensuring no further discriminatory zoning enforcement;
- Compensatory damages for harm caused by his individual actions;
- Any other relief the Court deems just and proper under federal law.

## DEFENDANT 22: ROGER MARS (Legal Representative, Leavenworth County Counselor's Office – Official Capacity Only)

Roger Mars is named in his official capacity as a legal representative of the Leavenworth County Counselor's Office for his participation in the enforcement, defense, and public justification of discriminatory tax policies against Z&M Twisted Vines Winery and Vineyard. Mr. Mars appeared before the Kansas Board of Tax Appeals (BOTA) on behalf of the County, during formal proceedings involving the plaintiffs, and acted as the official legal voice of Leavenworth County's taxation decisions.

## BASIS FOR INCLUSION:

Mr. Mars's inclusion as a defendant is based on his representation of county taxation positions at BOTA proceedings, where — despite years of documents, KORA requests, legal correspondence, and state guidance — he was unable to answer basic questions posed by the Board regarding:

• Why Z&M Twisted Vines was classified and taxed differently than other similarly situated agricultural properties;

• Why county enforcement diverged from K.S.A. 19-2921 (zoning exemption for agricultural use);

• Why commercial tax rates and impact fees were imposed on land recognized by the USDA, Kansas Department of Agriculture, Kansas Department of Commerce, and Kansas ABC as a farm winery and agritourism site.

At the BOTA hearing — referenced in Exhibit Spreadsheet — Mr. Mars was asked by the Board:

"Why was this winery required to pay commercial rates when others were not?"

Mr. Mars responded: "I can't answer that."

This admission of uncertainty — made under oath and in public record — underscores the complete collapse of the County's legal position, and confirms that the unequal treatment of plaintiffs was:

• Not legally justified,

• Not uniformly applied,

• And likely unconstitutional in origin.

## FAILURE OF LEGAL DEFENSE = EVIDENCE OF SYSTEMIC DISCRIMINATION:

The inability of a County Counselor's Office representative to defend its taxation actions at BOTA — the very forum tasked with reviewing fairness in property taxation — establishes a prima facie case of:

- Intentional discrimination,
- Failure to justify unequal treatment,
- And reckless indifference to taxpayer rights.

It further reinforces that:

"The acts complained of herein, when taken in totality, constitute a pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors."

## LEGAL AND FEDERAL VIOLATIONS:

Mr. Mars's official conduct — particularly his failure to advise, investigate, or disclose accurate legal bases for the County's enforcement practices — contributes to violations of:

- K.S.A. 79-1439(a) – Requiring uniform agricultural valuation;
- K.S.A. 79-1476 – Requiring fair, accurate, and publicly defensible property appraisals;
- The Equal Protection Clause of the Fourteenth Amendment;
- 42 U.S.C. § 1983, for participating in actions that deprived plaintiffs of civil rights under color of law.

These actions constitute a violation of rights secured by the Equal Protection Clause and 42 U.S.C. § 1983, and may warrant referral under 28 C.F.R. § 35.170(b) and Executive Order 14063.

The County's enforcement behavior — arbitrary, targeted, and knowingly unequal — constitutes a deprivation of property rights so egregious as to "shock the conscience," violating substantive due process under County of Sacramento v. Lewis, 523 U.S. 833 (1998).

FEDERAL ACCOUNTABILITY & SYSTEMIC FAILURE:

"Plaintiffs have attempted in good faith to report and correct these unlawful practices internally. These filings are made only after Leavenworth County, including its legal advisors, demonstrated a pattern of concealment, retaliation, and institutional silence."

"This petition forms part of a documented federal record of systemic land-use discrimination, and plaintiffs intend to present these facts to the Department of Justice, Office of Inspector General, and appropriate Congressional Oversight bodies, as permitted by 42 U.S.C. § 1983 and the Civil Rights of Institutionalized Persons Act."

## RELIEF REQUESTED:

Plaintiffs respectfully request:

- A declaratory judgment acknowledging that the County's legal justification for the unequal taxation and classification of Z&M Twisted Vines could not be defended — and was not defended — by its own legal representative at BOTA;
- Injunctive relief preventing any future defense of unconstitutional tax policy or zoning enforcement without proper legal and statutory basis;
- An order requiring a county-wide audit and review of all enforcement decisions, particularly where County Counsel failed to meet the minimum legal threshold for equal application;
- And any further relief deemed appropriate by this Court.

## DEFENDANT 23: LEAVENWORTH COUNTY PUBLIC WORKS -Director of Public Works – (Official Capacity Only)

The Leavenworth County Public Works Department is named as a defendant in its official capacity, through its Director, for its direct and enabling role in the improper classification, coordination, and continued enforcement of land use penalties against Z&M Twisted Vines Winery and Vineyard. Public Works participated in systemic abuse of its administrative

discretion, facilitating discriminatory zoning and valuation outcomes, and operating as an active component in the multi-departmental suppression of plaintiffs' constitutional and statutory rights.

## BASIS FOR INCLUSION:

Public Works engaged in acts, omissions, and classification decisions that:
• Directly contributed to plaintiffs being assessed the highest road impact fee in nearly a decade,
• Were made without any traffic impact study, despite Public Works' own internal acknowledgment that Z&M was located in a rural zone exempt from such requirements,
• Enabled Planning and Zoning's imposition of a Special Use Permit (SUP) that was:
• Not legally required under K.S.A. 19-2921,
• Based on incorrect assessments of use and location, and
• Facilitated by misrepresentations about plaintiffs' agricultural activities.

Public Works' collaboration with Planning and Zoning in this matter is not incidental — it is part of a coordinated, targeted policy application against Z&M Twisted Vines, confirmed by:
• Public statements to third parties (including surveyor Joe Herring) that agricultural access roads such as the gravel driveway leading to "Big Vino" were "commercial" solely because of an SUP designation, despite the building's agricultural function and recognition as such by the USDA, Kansas Department of Commerce, and Kansas ABC;
• Silence and administrative passivity when plaintiffs raised concerns about the County's primary driveway being:
• Built on Kansas Turnpike Authority (KTA) land,
• Included in the County's condemnation order decades prior, and
• Improperly used as justification for enforcement actions or classification as a commercial driveway — a designation that remains unresolved despite public record evidence.

## PATTERN OF SELECTIVE APPLICATION AND ADMINISTRATIVE COLLUSION:

The involvement of Public Works must be seen not as an isolated technical department, but as a collaborating party in a multi-agency effort to:
• Reclassify agricultural property into commercial zoning,
• Deny subdivision or split permissions on agricultural land,
• Enforce commercial traffic designations based on unsupported planning assumptions,
• And impose punitive economic burdens on plaintiffs without legal or procedural justification.

"The acts complained of herein, when taken in totality, constitute a pattern of systemic abuse amounting to institutionalized discrimination, rather than isolated administrative errors."

## FEDERAL CONSTITUTIONAL AND REGULATORY VIOLATIONS:

Public Works' participation in this enforcement framework contributes materially to:
• Violations of the Equal Protection Clause of the Fourteenth Amendment, by treating plaintiffs differently than other similarly situated agricultural landowners;
• Violations of Substantive Due Process, as this behavior "shocks the conscience" through its reckless disregard for plaintiffs' property rights and equal standing under Kansas land use law;
• Deprivation of rights under 42 U.S.C. § 1983, through administrative enforcement conducted under color of law and in concert with other County entities.

These actions constitute a violation of rights secured by the Equal Protection Clause and 42 U.S.C. § 1983, and may warrant referral under 28 C.F.R. § 35.170(b) and Executive Order 14063.

## FEDERAL AND STATE LAW VIOLATED:
• K.S.A. 19-2921 – Prohibiting zoning restrictions on agricultural operations;
• K.S.A. 45-215 et seq. – Kansas Open Records Act violations by way of refusal to disclose Public Works' role in zoning determinations;
• K.S.A. 79-1439(a) – Unequal taxation resulting from inflated commercial designation;
• County of Sacramento v. Lewis, 523 U.S. 833 (1998) – Substantive Due Process violation;
• Allegheny Pittsburgh Coal Co. v. County Commission, 488 U.S. 336 (1989) – Taxpayer Equal Protection precedent;
• 42 U.S.C. § 1983 – Civil rights abuse under color of law.

## FEDERAL RECORD STATEMENT:

"This petition forms part of a documented federal record of systemic land-use discrimination, and plaintiffs intend to present these facts to the Department of Justice, Office of Inspector General, and appropriate Congressional Oversight bodies, as permitted by 42 U.S.C. § 1983 and the Civil Rights of Institutionalized Persons Act."

## RELIEF REQUESTED:

Plaintiffs request the following relief as to Leavenworth County Public Works:
• Declaratory judgment that Public Works, by its silence, coordination, and discretionary abuse, contributed to unlawful enforcement of zoning and land-use policy against plaintiffs;
• Injunctive relief prohibiting any future classification of agricultural driveways or traffic designations absent a legal basis and formal study;
• Full release of all documentation, internal emails, and inter-departmental communications related to traffic impact fee justification, driveway classification, and subdivision interference;
• Prohibition on further participation in zoning or subdivision enforcement unless in strict compliance with Kansas law;
• And any additional relief deemed just and proper by this Court to end the systemic abuse described herein.

# EXTRAORDINARY CIRCUMSTANCES, SYSTEMIC COLLAPSE, AND THE MOSAIC OF DISCRIMINATION

This case arises not from a single act of bureaucratic error, but from a sustained and deliberate pattern of abuse spanning five years and multiple layers of government. What began as a farm winery project rooted in Kansas agriculture, veteran discipline, and educational purpose evolved into a systematic assault on the plaintiffs' land, livelihood, and liberty. The record contained herein is not simply a list of violations — it is a mosaic of discrimination, institutional silence, and coordinated retaliation carried out under color of law.

Plaintiffs invoke this Court's authority not merely for relief, but for correction. The conduct at issue includes not only disparate zoning enforcement, unconstitutional tax classification, and the weaponization of permit policy, but also:
• Constructive fraud, through silence and concealment of material facts,

• Deliberate indifference to constitutionally protected status, including veteran, agricultural, and whistleblower rights,
• Bad-faith administration of law, resulting in unequal burdens imposed by public actors acting under discretionary cover,
• Pattern-or-practice civil rights violations, analogous to DOJ enforcement thresholds under Title VII,
• And evidence of institutional retaliation — against plaintiffs who spoke, requested records, and resisted.

This case is supported by binding authority including but not limited to Ex Parte Young (1908), Monell v. NYC Dept. of Social Services (1978), Zubulake v. UBS Warburg, County of Sacramento v. Lewis (1998), and Allegheny Pittsburgh Coal v. County Commission (1989) — each affirming the fundamental rule that government does not get to punish those it governs unequally, nor in silence, nor with impunity.

Plaintiffs further submit that this matter constitutes extraordinary circumstances under the law, warranting:
• Judicial notice under Federal Rule of Evidence 201,
• Preservation orders under Rule 37(e),
• Pattern recognition under 42 U.S.C. § 2000e-6,
• Referral to federal authorities under 28 C.F.R. § 35.170(b) and Executive Order 14063, and
• Constitutional review under 42 U.S.C. § 1983, including potential violations of 18 U.S.C. §§ 241, 242, 1341, 1343, and 1961–1968 (RICO).

The evidence offered is not hypothetical. It includes emails, records, official statements, suppressed open records requests, misused media, manipulated valuations, zoning discrepancies, retaliation timelines, and public statements admitting unconstitutional enforcement. These facts are not anecdotal — they are documented, indexed, and offered in support of what is not merely a lawsuit, but a constitutional record.

Plaintiffs do not seek vengeance. They seek truth, correction, and permanent reform. And they seek it with the full knowledge that this case, if successful, may change the way Kansas governs agriculture, land use, transparency, and rural justice — forever.

# FORCED SALE OF PROPERTY DUE TO CONTINUING GOVERNMENTAL ABUSE

As of June 2025, Plaintiffs have made the difficult decision to list their property, Z&M Twisted Vines — a veteran-owned vineyard, winery, and agritourism farm — for sale at $2.95 million. This decision is not a reflection of economic prosperity, but rather the culmination of five consecutive years of regulatory obstruction, unlawful taxation, and statutory misclassification by Leavenworth County, Kansas.

This sale was compelled not by market strategy or business failure, but by a pattern of abuse and unequal treatment that rendered continued agricultural operations economically and legally unsustainable. Despite repeated attempts by Plaintiffs to resolve classification and taxation issues through administrative and state-level channels, no meaningful relief was ever granted.

Rather than protect agricultural rights as guaranteed by Kansas law, Defendants persistently misclassified agricultural structures and land as commercial, imposed unlawful zoning burdens through Special Use Permit (SUP) demands, and ignored binding state statutes meant to protect family farms and agritourism operations.

The listing of this property for $2.95 million does not justify or validate Leavenworth County's past actions, nor does it diminish the constitutional injuries suffered. Instead, it is direct evidence of a coerced exit from Kansas agriculture by a U.S. Army veteran and his family.

Under Kansas law, the actions of the Defendants violate the following statutory provisions:

- K.S.A. 19-2921: prohibits counties from requiring zoning approval for agricultural uses;
- K.S.A. 79-1476: mandates real property be classified and valued based on actual use (agriculture);
- K.S.A. 79-1412a: requires uniform and equal assessment and appraisal practices statewide;
- Senate Bill 410 and House Bill 2254 (2023-2024): clarify that agritourism and wineries are agricultural uses exempt from commercial classification;
- K.S.A. 2-1433 and related statutes define viticulture and farm wineries as agriculture for all zoning and taxation purposes.

Federal law is similarly violated by the county's conduct, including:

- U.S. Const., Amend. XIV: Equal Protection and Due Process Clauses;
- Kansas Const., Art. 11, Sec. 1: requires uniform taxation;
- 42 U.S.C. § 1983: provides for civil relief when state actors violate constitutional rights under color of law.

## Supporting Case Law:

- Allegheny Pittsburgh Coal Co. v. Webster County, 488 U.S. 336 (1989): A tax assessment scheme that treats similarly situated properties unequally is unconstitutional under the Equal Protection Clause.
- Village of Willowbrook v. Olech, 528 U.S. 562 (2000): A "class-of-one" equal protection claim is valid when a government entity intentionally treats an individual differently from others similarly situated without a rational basis.
- Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978): Municipalities can be held liable under § 1983 for customs or policies that result in constitutional violations.
- Ex parte Young, 209 U.S. 123 (1908): Equitable relief is appropriate when state officials act contrary to federal law or the U.S. Constitution.

Further, the Board of Tax Appeals, in written findings, acknowledged that it lacked a mechanism to address the systemic nature of these misclassifications, thereby reinforcing the necessity of federal judicial intervention.

The property's sale is not evidence of County accuracy — it is the funeral notice of a thriving veteran-owned business that was harassed out of existence by a local government that ignored its own laws, disregarded state statutes, and trampled federal rights.

# FACTUAL BACKGROUND

## A. Plaintiff's Protected Agricultural Operation

- Plaintiffs are the owners and operators of Z&M Twisted Vines, a farm winery and agricultural enterprise lawfully established in Kansas. The operation includes vineyards, grape processing, agritourism, wine production, and direct-to-consumer sales. These are all activities explicitly protected under Kansas law, including:
- K.S.A. 79-1476 – agricultural valuation of land
- K.S.A. 19-2921 – zoning exemption for agriculture
- K.S.A. 74-50,164 – agritourism protections
- Plaintiff's operation qualifies in every respect as a bona fide agricultural enterprise under Kansas and federal standards. Its land, buildings, products, and use of labor all meet statutory thresholds. Plaintiff operates with full licensure and state registration under agricultural and alcoholic beverage regulatory regimes.

## B. Systematic Denial of Agricultural Classification

- Despite the clear agricultural nature of the Plaintiff's operation, Leavenworth County and PVD refused to grant the proper agricultural tax classification and instead imposed commercial valuation rates in excess of $48/sqft on structures used exclusively for vineyard and wine production.
- Other similar Kansas wineries and vineyards — operating at larger scales and hosting larger events — are classified as agricultural. Plaintiff's property is the only vineyard known to be subject to such punitive misclassification and taxation in the State of Kansas.
- This unequal treatment violates Kansas law, the Equal Protection Clause of the Fourteenth Amendment, and Commerce Clause protections for interstate commerce and agricultural consistency.

## C. The Special Use Permit (SUP) Abuse

- Plaintiffs were unlawfully required by Leavenworth County Planning & Zoning to obtain a Special Use Permit (SUP) despite agricultural use being statutorily exempt from such a requirement under K.S.A. 19-2921.
- This SUP cost nearly $10,000, subjected Plaintiffs to arbitrary restrictions not enforced against other farms, and was used to justify commercial taxation and block subdivision requests — despite statutory protections in place.
- The SUP was selectively enforced and ultimately used as a retaliatory and punitive device when Plaintiffs raised legal challenges.

## D. Legislative and Administrative Notice Ignored

48

- From 2021 through 2024, Plaintiff submitted:
- Affidavits under penalty of perjury
- KORA-discovered evidence
- Emails and legal briefs
- Formal complaints
- Legislative testimony (including authorship of House Bill 2254, later folded into Senate Bill 410)
- These were sent to:
- PVD Director David Harper
- Governor Laura Kelly
- Secretary of Agriculture Mike Beam
- Senator Jerry Moran
- BOTA
- The Leavenworth County Commission
- These officials and agencies were placed on actual notice of the violations and failed to act, despite their legal duties under Kansas law and the U.S. Constitution.

## E. Retaliation for Petitioning Government

- After engaging in protected First Amendment activity — including filing legal appeals, submitting public records requests, testifying at the Kansas State Capitol, and requesting agency intervention — Plaintiff was subjected to intensified zoning obstruction, continued commercial over-taxation, and renewed SUP scrutiny.
- This constitutes retaliation in violation of the First Amendment right to petition the government and to seek redress of grievances.

## F. Subdivision Obstruction and Valuation Abuse

- In 2022 and again in 2024, Plaintiff sought to legally subdivide agricultural land for estate planning and family development purposes. These requests were blocked by Leavenworth County officials on the basis that Plaintiff's property did not have "valid access" to a public road.
- At no point prior to these filings was the access issue raised as a barrier. This was a sudden reversal that conveniently aligned with Plaintiff's growing legal and public scrutiny of the County.
- The denial of subdivision rights directly harmed Plaintiff's property value, triggering further over-valuation and tax damage.

## G. Manipulation of Driveway Access (1954–2025)

- In 1954, the State of Kansas condemned land adjacent to Plaintiff's property for highway development, including existing driveway access. Following the condemnation, a new driveway was constructed on Kansas Turnpike Authority (KTA) right-of-way, not on Plaintiff's private land.
- In 2020, Travis from the County Appraiser's Office acknowledged that the County was aware the driveway was built on KTA land and that this should have affected valuation and access classification.

- Despite that knowledge, the County took no action to reclassify the land, reduce its value, or update its zoning status — thereby continuing to overtax Plaintiff and ignore the legal implications of the condemnation history.
- In 2022, when Plaintiff attempted to subdivide his property, County officials used the KTA driveway issue to block subdivision, now arguing Plaintiff lacked legal access to Loring Road — despite knowing for years that the driveway served the property.
- In 2025, in a recorded conversation, Travis again admitted the driveway problem persisted and affected both title and valuation — yet the County refused to adjust the tax burden or recognize the diminished property value caused by lack of access.
- This demonstrates a deliberate pattern: the County invoked the driveway status to block Plaintiff when convenient, but ignored it when calculating tax value — a double standard used to maximize harm and deny Plaintiff both legal rights and financial fairness.

## H. Ongoing Damages and Emotional Harm

- The cumulative effect of the Defendants' misconduct has caused:
- Excessive taxation
- Loss of lawful business income
- Suppression of real estate development
- Costs to comply with unlawful zoning demands
- Legal fees and administrative exhaustion
- Emotional distress and reputational harm
- Plaintiff's attempts to resolve these matters through administrative channels have been stonewalled or ignored. The KORA disclosures he obtained confirm that multiple agencies had knowledge of these facts, failed to act, and knowingly allowed unlawful classification, valuation, and zoning manipulation to continue.

# CAUSES OF ACTION

## COUNT I – Violation of Equal Protection (14th Amendment, 42 U.S.C. § 1983)

(Against All Defendants in Their Official and Individual Capacities)

- Plaintiff realleges all preceding paragraphs.
- Defendants, acting under color of law, denied Plaintiff equal protection by treating Plaintiff's agricultural property differently from similarly situated vineyards, farms, and agritourism operations.
- No rational basis existed for the commercial classification, inflated valuations, or zoning burdens placed uniquely on Plaintiff.
- This unequal treatment violates the Equal Protection Clause of the Fourteenth Amendment and constitutes a civil rights violation under 42 U.S.C. § 1983.

## COUNT II – Violation of Substantive and Procedural Due Process (14th Amendment, 42 U.S.C. § 1983)

(Against All Defendants)

- Plaintiff had a protected property interest in his land, access, valuation, and right to operate under agricultural exemptions.
- Defendants deprived Plaintiff of that interest arbitrarily and capriciously, without lawful justification or proper procedures.
- Plaintiff was denied fair hearings, meaningful administrative redress, and consistent application of legal standards, violating both substantive and procedural due process.

## COUNT III – Retaliation for Exercise of First Amendment Rights (42 U.S.C. § 1983)

(Against County and State Defendants)

- Plaintiff engaged in constitutionally protected conduct, including petitioning the government, testifying before the Kansas legislature, and filing appeals.
- In response, Defendants retaliated by intensifying commercial taxation, denying access, and selectively enforcing regulations to suppress Plaintiff's operation.
- This retaliation for lawful expression and redress-seeking violates the First Amendment and 42 U.S.C. § 1983.

## COUNT IV – Unconstitutional Taking (5th and 14th Amendments, 42 U.S.C. § 1983)

(Against Leavenworth County and PVD)

- By obstructing access and blocking subdivision while continuing to tax Plaintiff as if full access existed, Defendants effected an uncompensated regulatory taking.
- The denial of economically viable use and interference with estate planning constituted a taking in violation of the Takings Clause of the Fifth Amendment, as incorporated through the Fourteenth Amendment.

## COUNT V – Civil Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3))

Against All Named Defendants and other individuals known and unknown acting in concert or under color of law.

- Defendants conspired to obstruct Plaintiff's rights by concealing known facts, selectively enforcing laws, and creating an artificial basis to punish Plaintiff.
- The conspiracy targeted Plaintiff as a private citizen and veteran who publicly challenged unlawful conduct.
- This coordinated suppression violates 42 U.S.C. § 1985(3).

## COUNT VI – Violation of the Commerce Clause (Art. I, § 8, U.S. Constitution)

(Against PVD and Leavenworth County)

- By applying discriminatory tax rates and zoning restrictions to Plaintiff's wine-related products and agritourism business — but not others in interstate commerce — Defendants interfered with commercial consistency across state lines.
- Such localized obstruction violates the Dormant Commerce Clause doctrine.

## COUNT VII – Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968)

(Against All Defendants)

- Defendants, acting individually and as a continuing enterprise, engaged in a pattern of racketeering activity, including:
- Mail fraud and wire fraud (use of electronic communication to deny fair process and conceal state action)
- Deprivation of rights under color of law (systematic misuse of classification/zoning)
- Retaliatory obstruction of lawful petitioning
- Concealment of KORA-evidenced knowledge of unlawful actions
- These actions, taken with continuity and purpose, constitute racketeering activity and entitle Plaintiff to treble damages and attorney's fees under 18 U.S.C. § 1964(c).

## COUNT VIII – Violations of Kansas State Law (K.S.A. 79-1476, 19-2921, 74-50,164)

(Against PVD, BOTA, Kansas Department of Agriculture, and County Defendants)

- Defendants violated Kansas statutes guaranteeing agricultural land classification, zoning exemptions, and agritourism protections.
- These statutes were selectively ignored or misapplied to Plaintiff in direct contradiction to legislative intent.

## COUNT IX – Trespass and Interference with Property Access

(Against Leavenworth County)

- Defendants obstructed Plaintiff's use of property by denying lawful access to Loring Road and leveraging the KTA driveway issue for political gain, despite acknowledging the access problem since at least 2020.
- This denial — while continuing to tax at commercial value — constitutes civil trespass and interference with real property rights.

## COUNT X – Intentional Interference with Business Relations

(Against County and State Officials)

- In addition to the coordinated denial of lawful status and subdivision options, Defendants engaged in conduct that intentionally obstructed Plaintiffs' ability to maintain, develop, and grow their agricultural business — not merely through policy enforcement, but through calculated regulatory manipulation. These acts interfered with third-party economic relationships, land development timelines, and business reinvestment strategies, resulting in permanent loss of reputation, opportunities, and value.
- Defendants' conduct constitutes intentional interference under both common law and constitutional frameworks, and was executed with actual knowledge of Plaintiffs' legal

52

business operations, their USDA farm status, and the State's recognition of Z&M Twisted Vines as a valid agricultural and agritourism entity. Courts have long held that interference with business relations under color of law — particularly when carried out in retaliation for speech or protected classification — may also give rise to equal protection and due process claims.

## COUNT XI – Abuse of Process

(Against County and State Officials)

- Defendants leveraged public processes, including zoning classification hearings, Special Use Permit mechanisms, subdivision denials, and appeals procedures, not for legitimate administrative purpose, but as tools of control, retaliation, and punishment. The abuse was neither incidental nor procedural — it was a strategic hijacking of government infrastructure to inflict harm on a targeted agricultural business.
- These actions satisfy the elements of abuse of process, as the legal mechanisms employed — zoning hearings, denial letters, and SUP enforcement — were used to achieve an end not permitted by law: the continued restriction of Plaintiffs' agricultural use, despite full legal compliance and protective status under Kansas and federal law.
- Abuse of process claims require showing that a lawful process was used for an improper purpose. Plaintiffs allege that the purpose was retaliation, economic sabotage, and the silencing of dissent, all in violation of federal constitutional protections. Such conduct undermines not only individual rights, but the legitimacy of the administrative state.

## COUNT XII – Monell Claim: Failure to Train and Supervise

(Against Leavenworth County and State Agencies)

- The violations committed were not aberrations. They were the predictable outcome of policies, customs, and failures in training within Leavenworth County and affiliated state departments. These institutional failures created an environment in which zoning discrimination, selective taxation, and open records suppression were not only possible — they were inevitable.
- Under Monell v. Dept. of Social Services, 436 U.S. 658 (1978), municipalities and public entities may be held liable where an official policy or custom directly causes the violation of constitutional rights. Here, the failure to properly train staff on:
  - Agricultural exemptions under K.S.A. 19-2921,
  - Equal valuation under K.S.A. 79-1439(a), and
  - Open records compliance under KORA
    — allowed rogue enforcement actions to persist and become normalized.

This deliberate indifference meets the Monell standard and reflects a culture of bureaucratic impunity — where no corrective mechanisms existed to protect against abuse of discretion, targeting of whistleblowers, or unequal application of zoning regulations.

See: City of Canton v. Harris, 489 U.S. 378 (1989) (failure to train may rise to actionable constitutional violation where it evidences deliberate indifference).

## COUNT XIII – Intentional Infliction of Emotional Distress

(Against All Defendants)

- The conduct of Defendants — through continued surveillance, denial of access, public misclassification, suppression of truth, and obstruction of property rights — was outrageous by any standard of decency, and caused Plaintiffs prolonged emotional harm.
- Courts have consistently recognized that intentional abuse of governmental power, particularly when sustained over time and inflicted on private citizens in retaliation for lawful conduct or status, supports a claim for intentional infliction of emotional distress.
- Defendants acted with malice and reckless disregard for the emotional, financial, and reputational well-being of the Zesiger family — targeting not only their land, but their lifestyle, marriage, and community standing. What was taken from them was not just operational capacity, but peace, purpose, and identity.
- These acts were not administrative error. They were systemic humiliation, driven by bureaucratic ego, executed through policy weapons, and carried out with full knowledge of their devastating impact.

## COUNT XIV – Declaratory and Injunctive Relief (28 U.S.C. § 2201)

(Against All Defendants)

- Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201–2202, stating that the actions of the Defendants — including but not limited to the enforcement of zoning restrictions, denial of agricultural classification, obstruction of subdivision, excessive taxation, and retaliatory regulatory conduct — were and continue to be in violation of federal and state constitutional law, civil rights statutes, and well-established land use protections.

Plaintiffs further seek permanent injunctive relief under Federal Rule of Civil Procedure 65, prohibiting Defendants from:

- Continuing any enforcement actions that are unequal, retaliatory, or not grounded in lawful statutory authority;
- Reapplying the Special Use Permit (SUP) designation or commercial zoning to the property at 24305 Loring Road or any related business activities undertaken by Plaintiffs;
- And obstructing or suppressing Plaintiffs' access to public records, equal valuation, or agricultural rights under Kansas or federal law.

This request for declaratory and injunctive relief is essential to:

- Prevent future harm,
- Clarify the constitutional limits of local government authority, and
- Ensure that this case not only remedies the past, but protects others in the future.

Declaratory relief is not requested to affirm harm alone, but to correct the system that enabled it.

## COUNT XV – Preservation of Criminal Referral Rights and Federal Oversight

(Reserved)

- Plaintiffs formally preserve the right to refer the facts and documentary evidence contained within this petition — as well as any additional information obtained through discovery — to the following entities for further criminal investigation or civil rights enforcement:
  - The U.S. Department of Justice – Civil Rights Division, Criminal Section,
  - The U.S. Attorney's Office for the District of Kansas,
  - The Federal Bureau of Investigation (FBI),
  - And any other federal agency with jurisdiction over public corruption, deprivation of rights under color of law, or retaliatory conduct by state or local officials.

The conduct described herein may constitute violations of:

- 18 U.S.C. § 241 – Conspiracy against rights;
- 18 U.S.C. § 242 – Deprivation of rights under color of law;
- 18 U.S.C. § 1341 and § 1343 – Mail and wire fraud in the context of government misrepresentation and retaliatory enforcement;
- 18 U.S.C. § 1961 et seq. – Racketeering activity involving a pattern of abusive, coordinated action among public offices for the purpose of harming protected agricultural operations and suppressing political or economic dissent.

Plaintiffs assert that this count is not a demand for prosecution, but a preservation of legal standing and record notice that the violations outlined may implicate federal criminal statutes and warrant further oversight.

This petition not only seeks civil correction. It flags conduct that, if proven, may rise to criminal culpability. Plaintiffs believe the federal government has a vested interest in preventing this abuse from continuing — or spreading.

# DEFENSES AGAINST DISMISSAL

Plaintiff anticipates that Defendants will move to dismiss this action under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as attempt to invoke sovereign immunity, qualified immunity, and procedural defenses.

Plaintiff addresses and preemptively defeats those arguments below:

## A. Standing and Jurisdiction Are Proper

- Plaintiff has standing under Article III of the U.S. Constitution:
- He suffered a concrete injury (unlawful taxation, zoning denial, reputational damage).
- The injury is fairly traceable to the actions of the Defendants.
- The injury is redressable by declaratory, injunctive, and monetary relief.
- This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for federal constitutional and civil rights claims, and supplemental jurisdiction under 28 U.S.C. § 1367 for related Kansas statutory and common law claims.

## B. Qualified Immunity Does Not Apply

- Qualified immunity does not apply where constitutional rights were clearly established at the time of the violation.
- It has long been established that:
- Equal protection under the law (14th Amendment),
- The right to petition the government (1st Amendment),
- Protection against uncompensated takings (5th Amendment),
- And freedom from retaliatory government conduct,
- are all clearly established constitutional rights.
  - Defendants acted outside the bounds of lawful discretion and knowingly ignored both Kansas statutory law and federally protected rights.

## C. Sovereign Immunity Does Not Apply to Equitable Relief

- Plaintiff seeks injunctive and declaratory relief against state officials in their official capacities under Ex parte Young, 209 U.S. 123 (1908).
- Sovereign immunity does not bar prospective equitable relief to stop ongoing constitutional violations.

## D. Plaintiff Exhausted All Available Administrative Remedies

Over the course of four years, Plaintiff:

- Appealed valuations,
- Filed legal correspondence with PVD, BOTA, and county offices,
- Requested formal corrections under Kansas law,
- Obtained agency records via the Kansas Open Records Act (KORA),
- Participated in public hearings, and
- Testified in support of corrective legislation.

These efforts establish that administrative exhaustion — to the extent required — has been fully satisfied or is excused due to futility and retaliation.

## E. KORA Records Provide Verified Evidence

All factual claims made herein are substantiated through Kansas Open Records Act disclosures. These records include:

- Internal agency communications
- Timeline documentation of statutory knowledge
- Emails, memoranda, and direct statements from county and state employees
- Confirmed acknowledgment of driveway issues, valuation manipulation, and unequal application of law

These verified records defeat any claim that Plaintiff's allegations are conclusory or speculative. They demonstrate a fact pattern sufficient to withstand any motion to dismiss under Ashcroft v. Iqbal, 556 U.S. 662 (2009) or Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

### F. Plaintiff's Claims Are Not Time-Barred

The violations alleged include both ongoing and continuing harm, and some accrued within the applicable limitations periods for:

- Civil rights violations (2 years in Kansas),
- Takings and RICO claims (4 years under federal law),
- and state law claims related to trespass, abuse of process, and interference.

In addition, the discovery rule applies: Plaintiff obtained key evidence via KORA within the past 24 months that established the full scope of the conspiracy and concealment — tolling any limitations period as needed.

### G. Rule 12(b)(6) Dismissal Must Be Denied

Federal pleading rules require only that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." (Fed. R. Civ. P. 8(a)).

This complaint presents fifteen separate legal theories, each supported by facts, statutes, and specific governmental actions. The pleading easily meets and exceeds the minimum threshold under federal law.

### H. The Complaint Cannot Be Sealed or Redacted

All factual allegations are supported by documents and emails obtained under the Kansas Open Records Act (KORA).

Because the materials are already part of the public record, no portion of this complaint may be sealed, and any effort to limit public access would violate the Kansas Open Records Act and federal principles of transparency in judicial proceedings.

## Preemptive Motion to Dismiss Arguments 1-35

### 1. Lack of Subject-Matter Jurisdiction (Rule 12(b)(1))
**Their Argument:**
Federal court has no jurisdiction because zoning, taxation, and administrative remedies are state issues.
**Your Statutory and Constitutional Basis:**
- 28 U.S. Code § 1331 – Federal Question Jurisdiction
- 28 U.S. Code § 1343 – Civil Rights Jurisdiction
- 42 U.S. Code § 1983 – Civil rights violations under color of state law
- U.S. Constitution – 14th Amendment (Due Process, Equal Protection)
**Key Case Law:**
- Bell v. Hood, 327 U.S. 678 (1946): Federal courts have jurisdiction to hear claims that arise under the Constitution, even if the claims ultimately fail.

- Ex parte Young, 209 U.S. 123 (1908): Allows suits in federal court for prospective relief against state actors violating federal law.

**Application to Your Case:**
You allege systematic constitutional violations, including unequal taxation (14th Amendment), retaliation for speech (1st Amendment), denial of due process, and unlawful denial of public services. These are not state regulatory disputes—they are federal civil rights violations. The County's abuse of local rules is the method, but the injury is constitutional. Therefore, jurisdiction under § 1331 and § 1343 is properly invoked.

## 2. Qualified Immunity for County Officials
**Their Argument:**
Officials acted in their discretionary capacity and are protected by qualified immunity.
**Your Statutory and Constitutional Basis:**
- 42 U.S. Code § 1983 – No immunity for knowingly violating constitutional rights
- U.S. Constitution – 14th Amendment
- Harlow v. Fitzgerald, 457 U.S. 800 (1982)

**Key Case Law:**
- Hope v. Pelzer, 536 U.S. 730 (2002): Officials are not entitled to qualified immunity where their conduct violates clearly established rights.
- Owen v. City of Independence, 445 U.S. 622 (1980): Municipalities and officials in official capacity are not immune from suit under § 1983.

**Application to Your Case:**
The county's treatment of your farm violated clearly established rights:
- Unequal taxation without justification
- Requiring a Special Use Permit where others were exempt
- Denying KORA requests
- Refusing service by sheriff's department

These are not "reasonable mistakes"—they are deliberate acts against constitutional protections. Qualified immunity is categorically inapplicable.

## 3. Improper Party / No Personal Involvement
**Their Argument:**
PVD, BOTA, and some officials were not directly involved in the alleged harm.
**Your Statutory and Procedural Basis:**
- 42 U.S.C. § 1986 – Action for neglect to prevent civil rights violations
- Rule 20(a)(2) – Permissive joinder of defendants who acted in concert or in the same transaction
- Monell v. Department of Social Services, 436 U.S. 658 (1978)

**Key Case Law:**
- Rizzo v. Goode, 423 U.S. 362 (1976): Liability attaches when supervisory officials permit or fail to stop rights violations.
- Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971): Federal agents and policymakers can be held personally liable.

**Application to Your Case:**
- PVD was alerted in writing and failed to investigate.
- BOTA acknowledged concerns but allowed the injustice to continue.
- Each county commissioner received emails or attended meetings where these issues were raised.
- By choosing inaction, each became complicit in the ongoing violation of rights.

Therefore, they are properly joined and personally liable under § 1983, § 1986, and Monell supervisory liability.

## 4. Redundancy or Misjoinder of Parties

**Their Argument:**
You've named too many parties, and some are redundant or improperly joined.

**Your Statutory and Procedural Basis:**
- Federal Rule of Civil Procedure 20(a)(2) – Allows multiple defendants if:
  1. The claim arises out of the same transaction, occurrence, or series of transactions; and
  2. There is a question of law or fact common to all defendants.

**Key Case Law:**
- Mosley v. General Motors Corp., 497 F.2d 1330 (8th Cir. 1974) – Joinder is appropriate where the acts are part of a "systematic pattern."
- Hagans v. Lavine, 415 U.S. 528 (1974) – Federal courts should avoid dismissing claims where related facts and law apply across multiple parties.

**Application to Your Case:**
All parties named are tied to the same continuous pattern of discrimination, denial of public services, improper taxation, and regulatory abuse. The Commissioners, Clerk, Appraiser, PVD, and BOTA either:
- Actively engaged in the abuse, or
- Were notified and failed to intervene.

Dismissal of any party would sever the chain of events necessary to establish causation, motive, and conspiracy. Misjoinder does not apply; this is a coordinated operation of harm.

## 5. Failure to Exhaust Administrative Remedies

**Their Argument:**
You failed to complete the BOTA or District Court process before filing federally.

**Your Legal Basis:**
- 42 U.S.C. § 1983 – Does not require exhaustion of state remedies.
- Patsy v. Board of Regents, 457 U.S. 496 (1982) – Exhaustion is not required in civil rights suits under § 1983.

**Key Case Law:**
- Steffel v. Thompson, 415 U.S. 452 (1974): Courts may intervene when state remedies are inadequate.
- Monroe v. Pape, 365 U.S. 167 (1961): Federal courts are the primary guardians of constitutional rights, not fallback options.

**Application to Your Case:**
You:
- Filed with BOTA (received no resolution or investigation).
- Sought relief through District Court (Judge Bryant refused to act impartially).
- Attempted resolution through elected officials, PVD, and KORA.

After exhausting every available channel and being stonewalled at each, your only remedy was federal. You did everything required—and more.

## 6. Procedural Deficiency (Improper Service)

**Their Argument:**
Sheriff's office didn't serve all parties; therefore, claims should be dismissed.

**Your Legal Basis:**

- FRCP Rule 4(e) – Allows service via authorized process servers in accordance with state law.
- Kansas Statute 60-303(d) – Permits service via private server when sheriff fails or declines to serve.

**Key Case Law:**
- National Development Co. v. Triad Holding Corp., 930 F.2d 253 (2d Cir. 1991): Minor procedural issues with service do not void jurisdiction where the defendant had notice and opportunity to respond.
- United States v. Ayer, 857 F.2d 881 (1st Cir. 1988): Substantial compliance with service is sufficient when defendants are not prejudiced.

**Application to Your Case:**
The sheriff's department refused to serve multiple named parties (Misty Brown, Clerk). You:
- Documented their refusal,
- Hired a certified private process server,
- Scheduled timely and proper service.

The defendants will receive valid service and cannot claim prejudice. This is a red herring tactic—it won't hold.

## 7. No Custom or Policy (Monell Defense)

**Their Argument:**
The County has no official policy discriminating against you; actions were isolated.

**Your Legal Basis:**
- 42 U.S.C. § 1983
- Monell v. Department of Social Services, 436 U.S. 658 (1978): A municipality may be sued when a "policy or custom" leads to a constitutional violation.

**Key Case Law:**
- Pembaur v. City of Cincinnati, 475 U.S. 469 (1986): A single decision by an official with final authority can establish liability.
- City of Canton v. Harris, 489 U.S. 378 (1989): Repeated inaction by policymakers can establish custom through deliberate indifference.

**Application to Your Case:**
- You were required to get a Special Use Permit no one else had to obtain.
- You were taxed at 15x the rate of other ag land.
- You were repeatedly denied public records and equal treatment.

All of this occurred under successive commissioners, suggesting a deeply rooted policy or tolerated custom. Monell applies directly.

## 8. No Personal Involvement

**Their Argument:**
Some defendants weren't personally involved and can't be held liable.

**Your Legal Basis:**
- 42 U.S.C. §§ 1983, 1986 – Liability attaches where an official:
  - Participates directly,
  - Fails to act after being notified,
  - Encourages or approves of the misconduct.

**Key Case Law:**
- Rizzo v. Goode, 423 U.S. 362 (1976): Supervisory officials may be liable when they permit or ignore known constitutional violations.
- Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978): Direct causation under § 1983 includes failure to prevent harm.

**Application to Your Case:**

You CC'd officials, emailed elected leaders, filed appeals, and addressed county boards in writing and in person.

- Commissioners and PVD were alerted, yet took no action.
- BOTA acknowledged issues but refused to intervene.
- Public officials who knew and did nothing are liable under §§ 1983 and 1986.

No one in this suit is an accidental name. Each played a role—by action or omission.

## 9. Discretionary Function Exception (State Agencies & Officers)

**Their Argument:**
PVD, BOTA, and other state actors were exercising discretionary judgment, not violating rights.

**Your Legal Basis:**
- 42 U.S.C. § 1983 applies regardless of whether the act was discretionary if it resulted in a constitutional violation.
- The Discretionary Function Doctrine under state tort law does not bar federal civil rights claims.

**Key Case Law:**
- Scheuer v. Rhodes, 416 U.S. 232 (1974): Discretionary acts are not immune when they involve abuse of power or violate the Constitution.
- Harlow v. Fitzgerald, 457 U.S. 800 (1982): Even discretionary functions are not shielded if rights are clearly established.

**Application to Your Case:**
PVD and BOTA failed to act after receiving notice of discrimination and statute violations.
- They were not using discretion—they were neglecting a duty.
- Inaction in the face of civil rights violations is not protected discretion—it's complicity.

## 10. "We Fixed It" Defense

**Their Argument:**
Any errors were corrected or are no longer occurring—so the issue is moot.

**Your Legal Basis:**
- Constitutional injuries that have occurred are still compensable, even if the policy ends.
- Declaratory and injunctive relief are valid when past harm exists and future harm is likely.

**Key Case Law:**
- City of Los Angeles v. Lyons, 461 U.S. 95 (1983): A pattern of harm creates standing—even if the practice has technically ceased.
- Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000): Voluntary cessation of wrongdoing does not moot a case unless it's absolutely clear it won't recur.

**Application to Your Case:**
- You've faced years of injury, including lost income, property devaluation, and reputational harm.
- No actual corrective action has been taken. Even if there were, the threat of recurrence is high given the history of retaliation and stonewalling.

Mootness doesn't apply. The injury is real, ongoing, and well-documented.

## 11. No Retaliation Claim

**Their Argument:**
County officials did not retaliate; any enforcement was neutral and lawful.

**Your Legal Basis:**

- Retaliation under § 1983 includes:
  - Adverse action,
  - Taken in response to protected conduct (e.g., free speech, legal activity),
  - Causing a chilling effect or concrete harm.

**Key Case Law:**
- Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977): If protected speech motivated adverse action, retaliation is actionable.
- Perry v. Sindermann, 408 U.S. 593 (1972): The government may not deny a benefit in retaliation for exercising a constitutional right.

**Application to Your Case:**
- After helping write SB 410 and publicly challenging Leavenworth County's practices, you faced:
  - Increased scrutiny and SUP enforcement,
  - Targeted taxation well above neighbors,
  - Deliberate denial of KORA requests.

These are clear retaliatory actions tied directly to your protected activities as a citizen, business owner, and legislative contributor.

## 12. RICO Doesn't Apply

**Their Argument:**
RICO is for organized crime, not government entities or regulatory issues.

**Your Legal Basis:**
- 18 U.S.C. § 1961 et seq. – RICO applies when a "pattern of racketeering activity" exists involving two or more predicate acts.
- Predicate acts can include:
  - Mail fraud,
  - Wire fraud,
  - Extortion under color of law.

**Key Case Law:**
- Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985): RICO is not limited to mobsters—corporations and public officials can be liable.
- United States v. Angelilli, 660 F.2d 23 (2d Cir. 1981): RICO can apply to public officials abusing power through fraudulent schemes.

**Application to Your Case:**
The pattern of:
- Overcharging and taxing your ag land beyond lawful limits,
- Denying you equal access to permits and records,
- Mailing false assessments and notices (mail fraud),
- Using email to coordinate and sustain discrimination (wire fraud),

…constitutes a pattern of racketeering behavior. It's not about the title "organized crime"—it's about organized abuse for personal or institutional gain. RICO absolutely applies.

## 13. Laches or Delay Defense

**Their Argument:**
You waited too long to file and are now barred due to unreasonable delay.

**Your Legal Basis:**
- Laches is an equitable doctrine, not applicable to federal civil rights claims unless there's clear, undue delay causing prejudice.
- The statute of limitations governs timeliness—laches is rarely accepted in § 1983 claims.

**Key Case Law:**

- Brown v. County of Genesee, 872 F.2d 169 (6th Cir. 1989): Laches does not apply in § 1983 claims absent extreme circumstances.
- United States v. Popovich, 820 F.2d 134 (5th Cir. 1987): A party must show prejudice caused by delay—not just delay itself.

**Application to Your Case:**
- You acted repeatedly and continuously to address the problem via:
  - District court,
  - BOTA filings,
  - KORA requests,
  - Correspondence with public officials.

## 14. Frivolous or Malicious Filing

**Their Argument:**
This is a frivolous lawsuit filed out of anger, not law, and should be dismissed under Rule 12 or Rule 11.

**Your Legal Basis:**
- Federal Rule of Civil Procedure 11(b) penalizes only filings with no legal or factual basis.
- Civil rights cases must be liberally construed when filed pro se, especially when involving public accountability.

**Key Case Law:**
- Neitzke v. Williams, 490 U.S. 319 (1989): A claim is not frivolous just because it seems unlikely to succeed.
- Haines v. Kerner, 404 U.S. 519 (1972): Pro se pleadings must be held to less stringent standards.

**Application to Your Case:**
This petition includes:
- Hundreds of pages of exhibits,
- Statutory citations,
- Affidavits,
- Recorded administrative failures.

It's not "frivolous"—it's a federal civil rights case rooted in fact and law. Every single claim is supported by evidence. Frivolous doesn't apply—what's frivolous is the government's conduct.

## 15. Political Question Doctrine

**Their Argument:**
This is a political issue, not a legal one; federal courts should stay out.

**Your Legal Basis:**
- Federal courts do not abstain from cases involving constitutional rights, even if politics are involved.
- This is about civil rights violations, not partisan politics or discretionary policy.

**Key Case Law:**
- Baker v. Carr, 369 U.S. 186 (1962): The political question doctrine applies only when there's a lack of judicially manageable standards.
- Powell v. McCormack, 395 U.S. 486 (1969): Even highly political issues can be justiciable when rights are at stake.

**Application to Your Case:**
Your case is not about politics—it's about:
- Unequal taxation,
- Discriminatory permit enforcement,

- Suppression of access to public documents.

Courts routinely hear zoning and tax disputes with constitutional dimensions. The political question doctrine is a smokescreen—nothing more.

## 16. Statute of Limitations

**Their Argument:**

Too much time has passed—your claims are barred by the statute of limitations.

**Your Legal Basis:**
- In Kansas, the statute of limitations for § 1983 claims is two years (borrowed from state personal injury law).
- Continuing violation doctrine tolls the statute where unlawful actions persist over time.

**Key Case Law:**
- Heard v. Sheahan, 253 F.3d 316 (7th Cir. 2001): Continuing harms restart the clock for limitations purposes.
- Green v. Ten Eyck, 572 F.3d 123 (2d Cir. 2009): Limitations are tolled when the plaintiff is actively pursuing remedies.

**Application to Your Case:**

You've:
- Been denied equal access repeatedly up to 2025,
- Been taxed at unfair rates every single year, and
- Filed KORA and administrative requests with no resolution.

The harm is ongoing, documented, and unresolved. Statute of limitations is irrelevant here.

## 17. Lack of Standing

**Their Argument:**

You haven't shown direct injury or a personal stake—so you lack standing.

**Your Legal Basis:**
- Article III standing requires:
  1. Injury in fact (concrete and particularized),
  2. Causation (traceable to defendant),
  3. Redressability (court can fix it).

**Key Case Law:**
- Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992): Standing exists if harm is real and personal.
- Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000): Economic and reputational harms confer standing.

**Application to Your Case:**

You've suffered:
- Economic loss from denied ag classification,
- Damage to your business and reputation,
- Systematic targeting and suppression by public officials.

This isn't abstract. It's real harm, caused by real people, which this court can fix. You have standing.

## 18. Shotgun Pleading / Incoherent Complaint

**Their Argument:**

Your complaint is too broad, too confusing, or too detailed—it's a "shotgun" pleading.

**Your Legal Basis:**

64

- Rule 8(a)(2) only requires a "short and plain statement" showing entitlement to relief.
- Pro se litigants are granted more flexibility in format and structure.

**Key Case Law:**
- Johnson v. City of Shelby, 574 U.S. 10 (2014): Dismissal for form alone is improper where the facts state a claim.
- Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002): Complaints need not contain detailed legal theories, just facts.

**Application to Your Case:**
Your complaint is:
- Structured into sections by claim and defendant,
- Tied to evidence,
- Legally supported.

It's long because the abuse was long. It's detailed because the facts demand it. It's not a shotgun—it's a sniper shot.

## 19. Absolute Immunity (Legislative or Judicial Acts)

**Their Argument:**
Officials are immune from suit because their actions were legislative or judicial in nature.

**Your Legal Basis:**
- Absolute immunity applies only when officials are acting within legitimate legislative or judicial roles—not when enforcing policy or administrative abuse.

**Key Case Law:**
- Owen v. City of Independence, 445 U.S. 622 (1980): Local governments have no immunity from § 1983 claims.
- Forrester v. White, 484 U.S. 219 (1988): Administrative acts by judges are not protected by judicial immunity.

**Application to Your Case:**
The county commissioners and BOTA officials were not legislating—they were:
- Enforcing SUPs unequally,
- Ignoring public record laws,
- Engaging in discriminatory taxation.

These were administrative and enforcement actions. Immunity doesn't apply.

## 20. Failure to State a Claim (Rule 12(b)(6))

**Their Argument:**
Even if everything you said is true, there's still no legal claim.

**Your Legal Basis:**
- Rule 12(b)(6) tests legal plausibility—not whether you'll win.
- You only need to show plausible entitlement to relief.

**Key Case Law:**
- Ashcroft v. Iqbal, 556 U.S. 662 (2009): A complaint must contain sufficient factual matter to state a plausible claim.
- Bell Atlantic v. Twombly, 550 U.S. 544 (2007): Plausibility—not probability—is the standard.

**Application to Your Case:**
You've:
- Alleged unconstitutional treatment,
- Named individual actors,
- Provided documentary proof,
- Identified clear harm.

This complaint doesn't just state a claim—it states multiple viable claims under § 1983, § 1985, RICO, and constitutional law.

## 21. First Amendment Retaliation & Chilling Effect

**Their Argument:**
This is purely administrative. No speech or expression was restricted.

**Your Legal Basis:**
- U.S. Const. Amend. I
- 42 U.S.C. § 1983 for retaliation against protected expression
- You have a right to petition the government, criticize officials, and participate in public legislative processes.

**Key Case Law:**
- Board of County Commissioners v. Umbehr, 518 U.S. 668 (1996): First Amendment protects private contractors from retaliation by public officials.
- Rankin v. McPherson, 483 U.S. 378 (1987): Retaliation for speech—even by public employers—is actionable under § 1983.

**Application to Your Case:**
After supporting SB 410, speaking out publicly, and criticizing Leavenworth County zoning policies, you were:
- Burdened with unnecessary SUP requirements,
- Repeatedly denied fair treatment,
- Subjected to aggressive and unequal enforcement.

These were direct responses to your speech and civic engagement—a textbook chilling effect in violation of the First Amendment.

## 22. Procedural Due Process Violation (Property Classification & Taxation)

**Their Argument:**
You were given notice and had opportunities to appeal—no due process was denied.

**Your Legal Basis:**
- U.S. Const. Amend. XIV – Procedural Due Process
- 42 U.S.C. § 1983 – Used to enforce procedural guarantees
- Property tax classification directly affects protected property interests.

**Key Case Law:**
- Mathews v. Eldridge, 424 U.S. 319 (1976): Procedural due process requires notice and meaningful opportunity to be heard.
- Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982): State-created rights (like ag tax status) are protected by procedural due process.

**Application to Your Case:**
- You were never given a meaningful forum to contest your classification.
- BOTA stalled or ignored your filings.
- PVD refused to intervene despite knowing of systematic abuse.

This is a clear violation of procedural due process, denying you the right to protect your property interest through lawful channels.

## 23. Substantive Due Process (Abuse of Government Power)

**Their Argument:**
Government has wide latitude to regulate land use and taxation.

**Your Legal Basis:**
- U.S. Const. Amend. XIV – Substantive Due Process bars arbitrary, irrational, or abusive governmental actions.

- Applies when the state deprives a person of liberty or property in a way that "shocks the conscience."

**Key Case Law:**
- County of Sacramento v. Lewis, 523 U.S. 833 (1998): Substantive due process prohibits government conduct that is arbitrary and oppressive.
- Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985): Property interests are protected by more than mere formality.

**Application to Your Case:**
- Imposing $48/sq ft tax on ag land while others pay $3.25 is not just unequal—it is conscience-shocking.
- Denying services, singling you out for regulatory burdens, and refusing investigation or remedy crosses from negligence into oppression.

This is more than regulatory discretion—it's abuse of power under color of law.

## 24. Selective Enforcement / Equal Protection Violation

**Their Argument:**
You were treated no differently than others similarly situated.

**Your Legal Basis:**
- U.S. Const. Amend. XIV – Equal Protection Clause
- Selective enforcement based on animus or arbitrary distinction violates equal protection even without racial or class-based targeting.

**Key Case Law:**
- Village of Willowbrook v. Olech, 528 U.S. 562 (2000): Equal protection applies where government treats a "class of one" differently without rational basis.
- Allegheny Pittsburgh Coal Co. v. County Comm'n, 488 U.S. 336 (1989): Extreme disparities in taxation without justification violate Equal Protection.

**Application to Your Case:**
- Neighboring vineyards and farms were not required to obtain SUPs or pay inflated taxes.
- You alone were targeted, denied equal treatment, and discriminated against without a rational basis.

This isn't policy—it's persecution. Equal protection squarely applies.

## 25. Access-to-Court Violation (Right to Petition the Government)

**Their Argument:**
You had access to administrative and judicial forums and chose to go federal.

**Your Legal Basis:**
- U.S. Const. Amend. I (right to petition)
- 42 U.S.C. § 1983 (remedy for obstruction of access to courts or suppression of remedies)
- Government may not interfere with your ability to seek relief through lawful means.

**Key Case Law:**
- Christopher v. Harbury, 536 U.S. 403 (2002): Denial of meaningful access to court is a standalone constitutional injury.
- Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983): Blocking access to the courts by official misconduct violates the First and Fourteenth Amendments.

**Application to Your Case:**
- Leavenworth County Sheriff refused to serve named parties.
- County staff withheld public records necessary to support your case.
- BOTA delayed or refused engagement.

This is a pattern of obstruction designed to prevent your petition from ever reaching a judge—precisely the harm this doctrine addresses.

## 26. Regulatory Takings Without Just Compensation (5th & 14th Amendments)
**Their Argument:**
This isn't a takings case—just regulatory enforcement.
**Your Legal Basis:**
- U.S. Const. Amend. V (Takings Clause), applied to states via Amend. XIV
- Government actions that restrict the use or value of property can be "regulatory takings" if they go too far.

**Key Case Law:**
- Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992): A regulation that deprives land of all economic value is a taking.
- Penn Central Transp. Co. v. NYC, 438 U.S. 104 (1978): Evaluates takings based on economic impact and interference with investment-backed expectations.

**Application to Your Case:**
- You were forced to pay tens of thousands in unjustified SUP fees.
- Your vineyard land was taxed as commercial property at rates 10–15x those of surrounding ag land.
- You were denied access to your own driveway via state mismanagement.

These actions amount to a regulatory taking without compensation, triggering Fifth Amendment protections.

## 27. Government Misconduct Doctrine / Bad Faith Conduct
**Their Argument:**
This was legitimate enforcement—not malicious or improper.
**Your Legal Basis:**
- While not always formalized as a statute, courts have inherent authority to sanction bad-faith government conduct that obstructs justice or civil rights.

**Key Case Law:**
- Chambers v. NASCO, Inc., 501 U.S. 32 (1991): Courts have inherent power to address misconduct and protect the integrity of proceedings.
- Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944): Misuse of the legal system by officials warrants strong judicial response.

**Application to Your Case:**
You've documented:
- Intentional delays,
- Refusals to serve process,
- Selective enforcement,
- Suppression of evidence (KORA denials).

This isn't mere disagreement. It's bad faith governance, weaponized to suppress dissent and economic freedom. Courts have a duty to intervene.

## 28. Liberty Interest / "Stigma-Plus" Doctrine
**Their Argument:**
No liberty interest is implicated—you're just a business complaining.
**Your Legal Basis:**
- The Constitution protects not just physical liberty, but reputation and livelihood where the state acts with stigma and consequence.

**Key Case Law:**

- Paul v. Davis, 424 U.S. 693 (1976): Liberty interest is implicated when stigma is coupled with tangible harm.
- Wisconsin v. Constantineau, 400 U.S. 433 (1971): Publicly labeling or targeting someone with consequences violates liberty interests.

**Application to Your Case:**
Leavenworth County:
- Labeled you a non-agricultural "commercial entity" publicly,
- Denied your legitimate farm status despite visible, documented evidence,
- Created reputational harm that affected partnerships, sales, and local political standing.

This is stigma-plus: a reputational hit with economic penalties. It falls squarely under liberty protections.

## 29. State-Created Danger Doctrine
**Their Argument:**
Nothing the county did created any danger or threat to your safety or property.
**Your Legal Basis:**
- Though generally applied in physical harm cases, this doctrine applies where the government affirmatively increases danger to a person or their property by their actions.

**Key Case Law:**
- DeShaney v. Winnebago, 489 U.S. 189 (1989): State not liable for inaction—but can be liable when it creates or worsens danger.
- Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998): Exposure to retaliation or economic harm from state conduct can trigger protection.

**Application to Your Case:**
- You were forced to operate your vineyard under ambiguous, punitive restrictions,
- Denied driveway access in an act of negligence that left your business vulnerable,
- Targeted publicly, increasing reputational and economic exposure.

The County didn't just fail to protect—they created the danger by manipulating zoning and access against you.

## 30. Economic Liberty as a Protected Constitutional Right
**Their Argument:**
Economic harm isn't constitutionally protected unless tied to race, religion, or class.
**Your Legal Basis:**
- The U.S. Constitution protects the right to earn a living free from irrational or discriminatory interference—particularly by local government.

**Key Case Law:**
- Meyer v. Nebraska, 262 U.S. 390 (1923): The right to pursue a chosen occupation is protected liberty.
- City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985): Economic classifications still require rational basis review.

**Application to Your Case:**
Your ability to:
- Operate as a licensed vineyard,
- Sell agricultural wine and cider products,
- Access customers and markets—

…was repeatedly and irrationally suppressed by Leavenworth County. Their actions constitute a violation of your economic liberty, actionable under the 14th Amendment.

## 31. Constructive Fraud / Abuse of Discretion as De Facto Misrepresentation

**Their Argument:**
No fraud occurred—this is a disagreement over zoning and tax policy.

**Your Legal Basis:**
- Constructive fraud arises not from intent, but breach of public duty or misuse of discretion resulting in harm.
- Often used in administrative law to challenge systematic concealment or silence when disclosure is required.

**Key Case Law:**
- Silver v. United States Postal Service, 951 F.2d 1033 (9th Cir. 1991): Constructive fraud includes deliberate withholding of material facts by public actors.
- United States v. Buck, 804 F.2d 239 (2d Cir. 1986): Constructive fraud exists where power is used contrary to duty.

**Application to Your Case:**
Leavenworth County and PVD:
- Withheld material facts from BOTA and from you,
- Refused to admit known statutory conflicts or evidence of tax disparity,
- Failed to disclose known inconsistencies in SUP enforcement across the county.

That's not discretion—it's constructive fraud, and it precludes dismissal under theories of immunity or good faith.

## 32. Estoppel Against the Government (When Public Trust is Broken)

**Their Argument:**
You can't estop the government—only private parties.

**Your Legal Basis:**
- While courts are cautious, estoppel may apply against the government where its conduct is "affirmative, egregious, and inequitable."

**Key Case Law:**
- Heckler v. Community Health Services, 467 U.S. 51 (1984): Estoppel may lie where government misconduct causes serious injustice and does not unduly harm public interest.
- United States v. Georgia-Pacific Co., 421 F.2d 92 (9th Cir. 1970): Courts may estop the government where it acts in bad faith or violates statutory duties.

**Application to Your Case:**
- You relied in good faith on Kansas ag statutes and your farm winery status.
- You were blindsided by inconsistent application, hidden regulatory traps, and denial of services others received.

When the government plays bait-and-switch with citizens who follow the law, estoppel principles attach—even to public entities.

## 33. Pattern and Practice of Discrimination (Title VII Analog, Applied via Equal Protection)

**Their Argument:**
There's no class-based discrimination, so Equal Protection doesn't apply.

**Your Legal Basis:**
- The "class of one" doctrine allows Equal Protection claims even without membership in a suspect class—especially where selective and repeated targeting occurs.

**Key Case Law:**

- Village of Willowbrook v. Olech, 528 U.S. 562 (2000): Equal Protection applies to individuals singled out without rational basis.
- Yick Wo v. Hopkins, 118 U.S. 356 (1886): Facial neutrality can mask discriminatory application.

**Application to Your Case:**
You've demonstrated a pattern and practice of:
- Disparate enforcement of SUPs,
- Inflated valuations,
- KORA denials and obstruction,
- Refusals to serve and stonewalling.

This is not random. It is a sustained campaign of disparate treatment, and Equal Protection remedies apply.

## 34. Federal Supremacy / Preemption of Local Obstruction
**Their Argument:**
Local regulations and state agency discretion control the process.
**Your Legal Basis:**
- Federal constitutional rights—speech, due process, equal protection—override local law, and cannot be abridged by counties or state agencies.

**Key Case Law:**
- McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819): State law cannot interfere with federal constitutional structures.
- Haywood v. Drown, 556 U.S. 729 (2009): State rules cannot restrict access to federal rights or remedies.

**Application to Your Case:**
- Kansas laws regarding agriculture, property tax, and winery operations are subordinate to federal constitutional protections.
- County commissioners and state actors cannot rewrite the 14th Amendment through local interpretation.

Federal law governs here—and federal court is the right venue.

## 35. Municipal Liability for Failure to Train or Supervise (Monell Doctrine Extension)
**Their Argument:**
Even if there were violations, they were isolated or due to individual error.
**Your Legal Basis:**
- Municipal liability attaches when constitutional harm results from failure to train, supervise, or control known misconduct.

**Key Case Law:**
- City of Canton v. Harris, 489 U.S. 378 (1989): A city is liable if failure to train employees causes constitutional injury.
- Connick v. Thompson, 563 U.S. 51 (2011): A pattern of rights violations may prove deliberate indifference by leadership.

**Application to Your Case:**
Leavenworth County:
- Allowed appraisers and zoning officials to violate statutory law unchecked,
- Ignored repeated red flags from KORA requests, BOTA feedback, and your formal notices,
- Created no structure for legal compliance in agricultural regulation.

This is institutional failure, not personal accident—and Monell doctrine makes the county liable.

# NOTICE OF REFERRAL AND ONGOING INVESTIGATORY INTENT

Plaintiffs hereby give formal notice that this petition, along with supporting exhibits and referenced communications, will be submitted to multiple federal oversight bodies for independent review and monitoring.

Specifically, this complaint — which alleges coordinated acts of constitutional violations, discriminatory enforcement of land-use laws, open records suppression, and abuse of authority under color of law — will be referred to:

• The United States Department of Justice (DOJ),

• The DOJ Civil Rights Division, Special Litigation Section,

• The DOJ Office of the Inspector General (OIG),

• The United States Attorney for the District of Kansas,

• And, where appropriate, to the Federal Bureau of Investigation (FBI) for assessment of any violations that may rise to the level of federal criminal conduct.

Additionally, plaintiffs are continuing to pursue access to public records under the Kansas Open Records Act (K.S.A. 45-215 et seq.), and reserve the right to:

1. Amend this petition as new documents, internal communications, or public records become available;

2. Name additional defendants, both individual and institutional, based on further discovery;

3. Pursue formal criminal complaints or referrals if evidence obtained through public disclosures or cooperation suggests violations of state or federal criminal law.

**Plaintiffs assert this right under:**

• Federal Rule of Civil Procedure 15(a) (Right to amend),

• 42 U.S.C. § 1983 (Civil rights violations under color of law),

• 28 U.S.C. § 535(a) (Authorization to investigate crimes involving government officers),

• And the DOJ's Guidelines for Civil Rights and Institutional Abuse Investigations.

This petition is not a closing document. It is a foundation — part of a federal public record of wrongdoing that may evolve, expand, and continue into criminal, civil, and administrative proceedings as new evidence is uncovered.

No defendant, named or unnamed, should assume finality from this petition. Plaintiffs will continue to pursue the truth, with or without the cooperation of the institutions named herein.

# INVITATION TO COOPERATION AND WHISTLEBLOWER STATEMENT

Plaintiffs hereby acknowledge that within the scope of this action, there are likely individuals — including public employees, past or present — who possess firsthand knowledge of, or were directly or indirectly involved in, the unlawful acts and omissions described herein.

Plaintiffs recognize that not every individual named, mentioned, or affected by this petition acted with malicious intent. In some cases, participation in the systemic abuses outlined herein may have occurred under duress, direction, misinformation, or administrative coercion.

Accordingly, plaintiffs state affirmatively and on record:

If any employee, official, contractor, or witness possessing information related to the actions described herein chooses to come forward, share truthful information, or provide documents that aid in the restoration of justice and truth — we welcome your cooperation.

Plaintiffs will distinguish between those who actively orchestrated harm and those who may have been caught in the machinery of administrative silence or departmental hierarchy. We offer this statement not as legal immunity — which we cannot provide — but as a reflection of our desire to build a complete and honest record, not a vengeful one.

Those who speak the truth now may be remembered as part of the solution — not the problem.

This petition, in part, is intended to disrupt the longstanding culture of fear, silence, and retaliation that has governed too many public offices for too long. Any individual who provides truthful assistance, supporting documentation, or firsthand confirmation will be treated with dignity, fairness, and, where appropriate, leniency in both tone and remedy.

# JURY DEMAND

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, and the guarantees secured by the Seventh Amendment to the United States Constitution, Plaintiffs hereby demand a trial by jury on all issues so triable, including but not limited to all claims arising under:

- 42 U.S.C. §§ 1983 and 1985 (civil rights violations and conspiracy),
- 18 U.S.C. §§ 1961–1968 (RICO),
- 28 U.S.C. §§ 2201–2202 (declaratory and injunctive relief),
- And relevant state constitutional and statutory causes of action joined under 28 U.S.C. § 1367(a).

This demand is not made lightly. It reflects Plaintiffs' unwavering belief that the gravity, duration, and constitutional magnitude of the violations described herein deserve not only judicial scrutiny, but the judgment of a jury of their peers — Kansas citizens who understand the value of land, of liberty, of transparency, and of fairness in government.

Plaintiffs further assert that this action involves fundamental rights, including:

- The right to equal protection under the law,
- The right to be free from government retaliation,
- The right to due process before deprivation of property,
- And the right to seek redress in a public court of law.

These are not abstract legal interests. They are core liberties, historically and rightfully subject to the protection of a civil jury.

Plaintiffs request that this matter be heard not in the shadows of administrative discretion, but in the full light of a jury trial — where the truth may speak, where the weight of abuse can be measured, and where the conduct of those in power will be evaluated by the citizens they are sworn to serve.

To the extent any Defendant challenges the applicability of jury trial rights in this matter, Plaintiffs respectfully request an evidentiary hearing and full judicial analysis under Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989) and Curtis v. Loether, 415 U.S. 189 (1974), which affirm that civil rights claims and damages under Title 42 and the U.S. Constitution are historically triable to a jury.

# PUBLIC RECORD PRESERVATION AND NON-SEALING STATEMENT

This Complaint is based upon documents, evidence, and communications obtained by the Plaintiff through the Kansas Open Records Act (KORA).

All supporting materials are part of the public record and were acquired lawfully. As such:

- No part of this Complaint may be sealed, redacted, or withheld from public view;
- Any request to seal or limit public access would violate Plaintiff's rights under both Kansas law and the First Amendment's guarantee of public access to judicial proceedings;
- Plaintiff expressly preserves the right to publish, present, or distribute any factual content derived from KORA responses, deposition testimony, or agency correspondence obtained in relation to this matter.

## REQUEST FOR PRESERVATION OF PUBLIC AND PRIVATE RECORDS (INCLUDING ELECTRONIC COMMUNICATIONS AND PERSONAL DEVICES)

Plaintiffs hereby submit this formal request for immediate and full preservation of all records, data, documents, communications, metadata, and digital files — regardless of format or device — related to the facts, events, and allegations contained in this petition.

## NOTICE ALREADY GIVEN:

Plaintiffs have repeatedly issued formal Kansas Open Records Act (KORA) requests to Leavenworth County, its departments, and legal officers, including Misty Brown, the County Counselor and designated KORA custodian. These lawful requests have specifically:
• Identified categories of documents and communications sought;
• Referenced the factual basis for legal interest;
• And included express instructions to preserve records relevant to this matter.

To date, Ms. Brown and Leavenworth County have refused to acknowledge these preservation demands or comply with standard government transparency protocol.

## CONCERN OF SPOLIATION:

Given the County's continued refusal to comply with KORA requests, its failure to acknowledge preservation demands, and the institutional pattern of nondisclosure described in this filing, plaintiffs are now concerned that Leavenworth County and its agents may have begun to purge or destroy public records relevant to this case.

This concern is heightened by:
• The County's refusal to produce time-sensitive records despite multiple KORA filings;
• Prior usage by County officials of personal cell phones, iPhones, Androids, and messaging applications (e.g., SMS, WhatsApp, Signal, Facebook Messenger, etc.) to conduct County business — see Exhibits Spreadsheet;
• And the systemic nature of the abuse detailed in this petition.

## SCOPE OF PRESERVATION REQUESTED:

Plaintiffs respectfully request that the Court order all named defendants — in their official capacities — and their departments and agents to immediately preserve:
1. All electronic and physical records relating to zoning, taxation, permits, open records requests, email correspondence, and communications involving Z&M Twisted Vines, Bryan Zesiger, or Dr. Gina Montalbano Zesiger;
2. All communications conducted on personal devices, including text messages, multimedia messages, and encrypted or third-party platforms, if they pertain to County business;
3. All documents, emails, or meeting notes referencing this litigation, plaintiffs, or the subject property;
4. All metadata and communication logs stored on County servers, cloud services, or employee devices.
**This preservation request applies to:**
• County-issued devices (phones, tablets, laptops),
• Privately owned devices used for government work, and
• Any cloud-based accounts or messaging apps used by defendants in their public roles.

## LEGAL BASIS FOR PRESERVATION:

This preservation request is supported by:
• Federal Rule of Civil Procedure 37(e) – Governing failure to preserve electronically stored information (ESI);
• Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003) – Establishing duty to preserve upon reasonable anticipation of litigation;
• Silvestri v. Gen. Motors Corp., 271 F.3d 583 (4th Cir. 2001) – Finding spoliation where a party failed to preserve evidence despite knowledge of likely litigation;
• K.S.A. 45-220 – State-level access to public records and duties of government agencies to respond in good faith;
• K.S.A. 45-217(g) – Definition of "public record" includes all devices, platforms, and materials regardless of format, including those on private devices if used in public business.

## REQUEST FOR JUDICIAL NOTICE AND ENTRY OF ORDER:

Plaintiffs respectfully request that the Court:
1. Enter an immediate preservation order applying to all named defendants, departments, and related agents;

75

2. Clarify that spoliation sanctions, including adverse inferences, monetary penalties, and default judgment, will be available upon a showing of intentional destruction;
3. Order defendants to acknowledge in writing within 14 days that they have instructed their personnel to preserve all materials described herein;
4. Take judicial notice that failure to preserve materials — particularly after this lawsuit and prior KORA requests — will be considered knowing and willful conduct.

## FINAL NOTICE:

Plaintiffs hereby put all parties, agencies, and public employees on formal notice that destruction of relevant records, including those on private devices, will be viewed as spoliation and may constitute obstruction of justice under both state and federal law.

This litigation is active, ongoing, and being referred to multiple oversight bodies. Preservation is not optional. It is a legal obligation under the rules of civil procedure and the public's right to truth.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bryan C. Zesiger, acting Pro Se, and Dr. Gina Montalbano, acting Pro Se, respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and grant the following relief:

(But let the record show, this is not a prayer. This is a reckoning.)

WHEREFORE, having been forced to endure five years of systematic abuse, targeted enforcement, reputational harm, economic sabotage, bureaucratic obstruction, open records violations, and willful indifference to constitutional law, Plaintiffs respectfully submit that no relief can ever fully restore the time, peace, and opportunity that has been taken from them.

However, the following remedies are not requested as favors — they are owed. They are not gestures — they are instruments of correction. They are not damages — they are justice in legal currency.

Accordingly, Plaintiffs demand that this Court grant the following relief:
1. A formal judicial declaration that the actions of Leavenworth County, its officials, agencies, departments, and named individuals constituted violations of:
• The Equal Protection Clause of the Fourteenth Amendment;
• Substantive and Procedural Due Process;
• The Kansas Constitution;
• K.S.A. 19-2921, K.S.A. 79-1439(a), KORA (K.S.A. 45-215 et seq.);
• And federal rights secured under 42 U.S.C. § 1983 and related enforcement statutes.

2. Immediate dissolution of any and all Special Use Permits (SUPs), zoning restrictions, or commercial designations improperly applied to Plaintiffs' property, including full removal from any Leavenworth County records or systems which reflect commercial, non-agricultural, or restricted designations, and an injunction barring future reclassification or enforcement absent judicial review.

3. A court-ordered public acknowledgment, issued jointly by the Governor of Kansas, the Leavenworth County Commission, and all relevant agencies, recognizing that Z&M Twisted Vines Winery and Vineyard:
• Operated at all times as a legally protected agricultural entity;
• Was subjected to unlawful and unequal treatment;
• And that the plaintiffs acted in full compliance with federal and state law.

4. Referral of the complete record of this case to the following federal oversight bodies for further investigation and civil rights enforcement:
• The Department of Justice Civil Rights Division;
• The DOJ Office of Inspector General;
• The United States Attorney for the District of Kansas;
• And, where appropriate, to the Federal Bureau of Investigation (FBI).

5. Judicial findings sufficient to support criminal referral in the event that further discovery or depositions reveal intentional spoliation of evidence, abuse of power, or other criminal conduct under federal law, including obstruction, deprivation of rights under color of law, or coordinated retaliation against whistleblowers.
6. An injunction requiring Leavenworth County to conduct a full internal audit, including public reporting of all:
• SUP enforcement decisions for the last 10 years;
• Agricultural designations and tax valuations;
• Open records requests and responses;
• And communications between departments regarding land use policy.

7. An order preserving all existing physical and digital evidence — including emails, text messages, personal device communications, server data, zoning files, taxation records, and any materials related to this litigation — pending judicial oversight or DOJ inspection.

8. Public notice publication at the County's expense, in regional and statewide news outlets, acknowledging the outcome of this case and affirming new zoning and tax enforcement policies that comply with federal law and constitutional protections.

9. An invitation for global or structured settlement, in lieu of extended litigation and public exposure, should the named defendants and agencies elect to acknowledge their liability and enter into meaningful negotiations. Plaintiffs remain open to receiving and reviewing such proposals, but any resolution must be commensurate with:
• The emotional, reputational, and economic harm sustained;
• The years of delay, suppression, and institutional indifference;
• And the need to restore, not just to compensate.

10. Such other relief as this Court deems just and proper — not merely to make Plaintiffs whole, but to ensure that what happened in Leavenworth County can never happen again to another farmer, another veteran, another citizen of the United States of America.

"This petition is not filed in vengeance, but in truth.
Not in anger, but in duty.
Let this record show: the people named herein were warned.
The Constitution is not a suggestion.
And justice — like the soil beneath our feet — will not stay buried."

— Bryan Zesiger
Veteran, Farmer, Husband, Plaintiff

## SIGNATURE BLOCK

Respectfully submitted this ___ day of _____ , 2025.

By: /s/ Bryan C. Zesiger

Bryan C. Zesiger

Pro Se Plaintiff

24305 Loring Rd

Lawrence, KS 66044

(719) 244-3048

zmtwistedvines@gmail.com


Respectfully submitted this ___ day of _____ , 2025.

By: /s/ Dr. Gina Montalbano

Dr. Gina Montalbano

Pro Se Plaintiff

24305 Loring Rd

Lawrence, KS 66044

(816) 814-0693

zmtwistedvines@gmail.com


## Exhibit Guide with Summaries

**Exhibit Index Disclaimer and Methodology Statement:**

Plaintiff respectfully notifies the Court and all parties that the exhibit numbering used in this petition is non-sequential by design and reflects the evolving nature of the investigation and discovery process, including voluminous and time-sensitive disclosures obtained through the Kansas Open Records Act (KORA), K.S.A. 45-215 et seq. Exhibits have been compiled as they were discovered, processed, and organized.

This approach is consistent with best practices employed by respected civil rights and complex litigation law firms, including Hadsell Stormer Renick & Dai LLP, a nationally recognized firm in civil rights, government accountability, and RICO litigation. Their litigation teams often annotate and organize exhibits based on issue clusters, timeframes, and investigative themes rather than fixed numeric sequences, especially when working with large volumes of public records and evolving fact patterns.

Plaintiff anticipates continued production of relevant material under ongoing KORA requests, some of which remain delayed or denied by government entities. These actions are the subject of parallel legal proceedings. Therefore, pursuant to Federal Rule of Civil Procedure 26(e), Plaintiff reserves the right to supplement the exhibit list with additional materials once those records are released, and such supplementation will be timely disclosed to the Court and all parties.

No prejudice or inference should be drawn from the non-linear exhibit numbering, as it is a reasonable and transparent response to an active, obstruction-prone discovery process involving state and county officials who, in several instances, have failed to comply with open records laws.