## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRYAN C. ZESIGER and GINA
MONTALBANO aka GINA
MONTABLANO ZESIGER,

        *Plaintiff*,

v.

                                     Case No. 25-2354-EFM-RES

LAURA KELLY, GOVERNOR OF THE
STATE OF KANSAS, et al.,

        *Defendants*.

## MEMORANDUM AND ORDER

Pro se Plaintiffs Bryan C. Zesiger and Gina Montalbano bring this civil rights lawsuit pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief, as well as compensatory and punitive damages. They assert 14 claims against 28 Defendants alleging that Defendants infringed upon their constitutional and statutory rights by classifying their winery as commercial, instead of agricultural, and by imposing a special use permit ("SUP") upon the property. Before the Court are the State Defendants' Motion to Dismiss (Doc. 88), the County Defendants' Motion to Dismiss (Doc. 89), and Senator Jerry Moran's Motion to Dismiss (Doc. 103). In addition, Plaintiffs' (1) Motion to Change Venue (Doc. 96), and (2) Supplemental Motion to Transfer Venue (Doc. 105) are before the Court. For the reasons stated below, the Court grants Defendants' motions and denies as moot Plaintiffs' motions.

## I.    Factual and Procedural Background[1]

Plaintiffs filed a 79-page Complaint, asserting 14 causes of action, against 28 Defendants. Plaintiffs attached approximately 430 "exhibits," totaling almost 1,000 pages. They allege that they built Z&M Twisted Vines Winery and Vineyard ("Z&M") into a thriving agricultural business. Plaintiffs allege that a portion of their vineyard was misclassified as commercial property, instead of agricultural, and thus they were subject to unequal, discriminatory taxation from other similarly situated businesses. In addition, Plaintiffs allege that Defendants unconstitutionally required and imposed a SUP on them that restricted their hours and stifled their ability to compete in the Kansas wine market.

Plaintiffs assert 14 claims including: (1) violation of their Fourteenth Amendment right to equal protection; (2) violation of their substantive and procedural due process rights under the Fourteenth Amendment; (3) First Amendment retaliation under § 1983; (4) a taking in violation of the Fifth and Fourteenth Amendments; (5) conspiracy to violate civil rights under § 1985(3); (6) violation of the commerce clause; (7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (8) violations of Kansas state law and statutes; (9) trespass and interference with property under Kansas law; (10) intentional interference with business relations; (11) abuse of process; (12) a *Monell* claim for failure to train and supervise; (13) intentional infliction of emotional distress; and (14) declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.[2]

Plaintiffs seek a declaration that the Leavenworth County's actions violated the United States and Kansas Constitutions, as well as Kansas statutes. They also request an "[i]mmediate

---

[1] The facts in this section are taken from Plaintiffs' Complaint unless otherwise cited.

[2] Plaintiffs include a fifteenth claim, but this claim states that it is for "preservation of criminal referral rights and federal oversight." This claim is not a valid cause of action.

dissolution of any and all SUPs, zoning restrictions, or commercial designations improperly applied to Plaintiffs' property." In addition, Plaintiffs state that they seek a court-ordered public acknowledgment, issued jointly by the Governor of Kansas, the Leavenworth County Commission, and all relevant agencies, recognizing that Z&M operated at all times as a legally protected agricultural entity; was subjected to unlawful and unequal treatment; and that Plaintiffs acted in full compliance with federal and state law. Plaintiffs also seek compensatory and punitive damages.

All Defendants filed Motions to Dismiss. In addition, Plaintiffs filed two motions seeking to change or transfer venue from the District of Kansas. The Court will address Defendants' motions, and because they are dispositive, the Court will only briefly discuss Plaintiffs' motions.

## II.    Legal Standard

### A.    Motion to Dismiss Under Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject-matter jurisdiction.[3] Federal courts are courts of limited jurisdiction, and a presumption exists against exercising jurisdiction over a case.[4] Thus, the Court may exercise jurisdiction only when specifically authorized to do so and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction.[5] The party asserting jurisdiction has the burden of establishing subject matter jurisdiction.[6]

---

[3] Fed. R. Civ. P. 12(b)(1).

[4] *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (citations omitted).

[5] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

[6] *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

**B.      Motion to Dismiss Under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[8] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[10] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[13]

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678–79.

[12] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

## C.    Construing Pro Se Complaints

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[14] A pro se litigant is entitled to a liberal construction of his pleadings.[15] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[16] It is not, however, the proper role of a district court to "assume the role of advocate for the pro se litigant."[17]

### III.    Analysis

### A.    The State Defendants' Motion to Dismiss (Doc. 88)

All State Defendants seek dismissal. The State Defendants include: (1) Governor of Kansas Laura Kelly; (2) Kansas Department of Agriculture ("KDA") Secretary Mike Beam; (3) the KDA; (4) the Kansas Board of Tax Appeals ("BOTA"); (5) Kenny Titus, former chief legal counsel to the KDA and current Kansas senator; (6) Kansas Department of Revenue-Property Valuation Division ("PVD"); (7) David Harper, former director of PVD; (8) Debbie Beavers, director of the Kansas Alcoholic Beverage Control ("ABC"); (9) the ABC; (10) the Kansas Department of Commerce ("KDOC"); (11) the Lieutenant Governor of Kansas (who also serves as director of KDOC);[18] (12) Senator Caryn Tyson; (13) Former Senator Jeff Pittman; (14) Representative Lance

---

[14] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[15] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17] *Id.*

[18] The Lieutenant Governor is David Toland, but Plaintiffs do not specifically name him and refer to his title. The Lieutenant Governor also serves as the Secretary of KDOC.

Neeley; (15) Representative Ken Corbet; and (16) Former Senator Tom Holland. Plaintiffs allege that all State Defendants are sued in their official capacity.

Defendants assert several reasons as to why dismissal against them is proper. These include that (1) the State and its officials sued in their official capacities are not "persons" under § 1983; (2) the State and its officials sued in their official capacities are entitled to Eleventh Amendment immunity; (3) none of the named State officials possess the power or authority to carry out the requested injunctive relief; (4) the *Rooker-Feldman* doctrine bars Plaintiffs' claims because their Complaint is a collateral attack on a final, unappealed judgment from BOTA; (5) Plaintiffs' Complaint fails to comply with Fed. R. Civ. P. 8; and (6) the claims are time-barred. The Court will only address Defendants' first three arguments as they are dispositive. Because the first three arguments all relate to each other, the Court will discuss them in tandem.

1.     *Whether Eleventh Amendment Immunity Bars Plaintiffs' Claims against the State and its Officials*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[19] Generally, the Eleventh Amendment bars suits against states and their agencies based on sovereign immunity.[20] "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity."[21] "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction."[22] "The exception established

---

[19] U.S. Const. Amend. XI.

[20] *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015).

[21] *Williams v. Utah Dep't of Corrs.*, 928 F.3d 1209, 1212 (10th Cir. 2019).

[22] *Id.* at 1212 (alterations, quotations marks, and citation omitted).

in *Ex parte Young*, for official capacity actions against state officers seeking only prospective relief, 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought.'"[23]

Furthermore, an official capacity suit is akin to a claim "against an entity of which an officer is an agent."[24] The Eleventh Amendment "generally bars suits brought by individuals against state officials acting in their official capacities."[25] And "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[26]

Plaintiffs' claims against the State Defendants are against either state agencies or state officials named in their official capacities.[27] Because Plaintiffs cannot bring a claim under the Eleventh Amendment or § 1983 against state agencies or state officials acting in their official capacities, their claims are impermissible.

To the extent Plaintiffs attempt to invoke the *Ex parte Young* exception with regard to their claims against state officials, their attempt fails. The *Ex parte Young* exception to Eleventh Amendment immunity allows individuals to sue state officers in their official capacities if the suit seeks "prospective relief for an ongoing violation of federal law."[28] The *Ex parte Young* exception,

---

[23] *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 953 F. Supp. 2d 1176, 1185 (D. Kan. 2013) (quoting *Higganbotham v. Oklahoma ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003)); *see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

[24] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).

[25] *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001).

[26] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Hull v. State of N.M. Tax'n & Rev. Dep'ts Motor Vehicle Div.*, 179 F. App'x 445, 446 (10th Cir. 2006) ("It is well established that arms of the state, or state officials acting in their official capacities, are not 'persons' within the meaning of § 1983 and therefore are immune from § 1983 damages suits.").

[27] As noted above, Plaintiffs named the following state entities of KDA, BOTA, PVD, ABC, and KDOC as Defendants. In addition, Plaintiff named the following state officials in their official capacities: Governor Kelly, KDA Secretary Mike Beam, Kenny Titus, David Harper, Debbie Beavers, the Lieutenant Governor, Caryn Tyson, Jeff Pittman, Lance Neeley, Ken Corbet, and Tom Holland.

[28] *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). As noted above, however, this exception is inapplicable to a suit against the State and/or state

however, also has limitations.[29] Specifically, "the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment."[30]

Plaintiffs state in their Complaint that they seek the following relief from the State Defendants:

> A court-ordered public acknowledgment, issued jointly by the Governor of Kansas, the Leavenworth County Commission, and all relevant agencies, recognizing that Z&M Twisted Vines Winery and Vineyard: Operated at all times as a legally protected agricultural entity; Was subjected to unlawful and unequal treatment; And that the plaintiffs acted in full compliance with federal and state law.

And in their response to Defendants' Motion, they state that they seek the prospective relief "to ensure that statutes such as HB 2254/SB 410, and federal agricultural protections under 7 U.S.C. § 1621–1622, are uniformly enforced rather than disregarded at the county level." None of the named State Defendants have the power to provide Plaintiffs with this alleged prospective relief. Furthermore, it appears as though the relief Plaintiffs truly seek is a reclassification of their property, and none of the named State Defendants have the power to reclassify Plaintiffs' property either. Thus, the *Ex parte Young* exception is inapplicable here, and the Eleventh Amendment bars Plaintiffs' suit.

In sum, the Court finds that the State and its officials sued in their official capacities are not "persons" under § 1983; (2) the State and its officials sued in their official capacities are entitled to Eleventh Amendment immunity; (3) and none of the named State officials possess the power or authority to carry out the requested injunctive relief, and thus the *Ex parte Young*

---

agencies. *See Martin Marietta Materials,* 953 F. Supp. 2d at 1185. Instead, it is only applicable if the suit is against a state officer, sued in his or her official capacity, and seeking prospective relief. *Id.*

[29] *Klein v. Univ. of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997).

[30] *Id.* (citing *Ex parte Young*, 209 U.S. at 157); *see also Free Speech Coal.*, 119 F.4th at 736 ("Though the official need not have a special connection to the unconstitutional act or conduct, they must have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.") (alterations, internal quotation marks, and citations omitted)).

exception to Eleventh Amendment immunity is inapplicable. Accordingly, Plaintiffs' Complaint against the State Defendants must be dismissed for lack of subject matter jurisdiction.

**B.    The County Defendants' Motion to Dismiss (Doc. 89)**

All County Defendants seek dismissal of Plaintiffs' Complaint. These Defendants include: (1) the Board of County Commissioners of Leavenworth County ("BOCC"); (2) Misty Brown (county counselor and custodian of records for Leavenworth County), in her official capacity; (3) David Van Parys (former county counselor for Leavenworth County), in his individual and official capacity; (4) the Leavenworth County Appraisers Office; (5) Bob Webber (county appraiser), in his individual and official capacity; (6) Travis Huntsinger (deputy appraiser), in his individual and official capacity; (7) John Jacobson (director of planning and zoning), in his official capacity; (8) Krystal Voth (director of planning and zoning), in her individual and official capacity; (9) Doug Smith (Leavenworth county commissioner), in his individual and official capacity; (10) Roger Mars (legal representative for the Leavenworth County Counselor's Office), in his official capacity; and (11) the Leavenworth County Public Works Department.

Defendants assert numerous reasons for dismissal. The Court will not address all of Defendants' arguments but instead will only address several of Defendants' meritorious ones.

*1.    Whether Counts I, II, III, IV, VI, and XIV are time-barred*

Defendants assert that Plaintiffs' § 1983 claims are time-barred. These claims include (1) violation of equal protection under the Fourteenth Amendment (Count I); violation of substantive/procedural due process under the Fourteenth Amendment (Count II); retaliation for the exercise of First Amendment rights (Count III); unlawful taking in violation of the Fifth and Fourteenth Amendments (Count IV); violation of the commerce clause (Count VI); and

declaratory and injunctive relief (Count XIV). The Court sets forth the following additional factual and background in determining whether these claims are time-barred.

Plaintiffs are the owners of Z&M. Z&M previously filed a lawsuit in Leavenworth County District Court on October 3, 2022 (the "Leavenworth Action").[31] In that case, Z&M filed suit against the Leavenworth County BOCC, the Leavenworth Planning Commission, and Voth. Z&M sought a declaratory ruling that the Leavenworth County Zoning Regulations did not apply to Z&M's agricultural use of their property, that the regulation violated K.S.A. § 19-2921, and an order dissolving the SUP.

Defendants contend that all the § 1983 claims in this case center around the "same core nucleus of facts: Leavenworth County, purportedly in error, classified Plaintiff's property as commercial, rather than agricultural, and then required Plaintiffs to obtain a special use permit ("SUP") to operate, which included various restrictions." Indeed, Plaintiffs' claims do revolve around the contention that they were harmed due to Defendants' act of classifying a portion of Z&M (their winery) as commercial, instead of agricultural. In addition, their claims revolve around the imposition of a SUP on their property.

In § 1983 actions, "[t]he forum state's statute of limitations for personal injury actions governs civil rights claims."[32] In Kansas, the statute of limitations is two years.[33] Defendants argue that because the § 1983 constitutional claims in this case all center around the County's actions of imposing a SUP and classifying a portion of Plaintiffs' property (Z&M Winery) as commercial

---

[31] Defendants ask the Court to take judicial notice of a previous lawsuit and include a copy of the Petition and Order of Dismissal in Case No. LV 2022CV256. The Court takes judicial notice of these documents. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (noting that generally a court may take judicial notice of pleadings in prior cases or public records from other proceedings without converting a motion to dismiss to one for summary judgment).

[32] *Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006).

[33] *Id.* (citing K.S.A. § 60-513(a)).

-10-

rather than agricultural, it is appropriate to consider the timing of when the SUP was imposed. The Court agrees.

As noted above, the Leavenworth Action was filed on October 3, 2022, and it challenged the imposition of the SUP and the classification of Z&M's property as agricultural. Even if the Court takes the date the Leavenworth Action was filed as the date Plaintiffs' claims accrued, Plaintiffs' claims are time-barred. They are time-barred because Plaintiffs' claims accrued on or before October 3, 2022,[34] and this lawsuit was filed on July 1, 2025—well past the two-year statute of limitations which would have expired no later than October 3, 2024. Thus, Plaintiffs' constitutional claims brought under § 1983 are barred by the two-year statute of limitations.

### 2. Whether Plaintiffs Fail to Allege a RICO Claim (Count VII)

Plaintiffs' Count VII alleges a claim under RICO against all Defendants. To adequately state a RICO claim, "a plaintiff must set forth 'four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[35] "Racketeering activity is frequently described as a 'predicate act' or 'predicate acts' which consist of certain federal and state crimes identified in 18 U.S.C. § 1961(1), including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and violation of the Travel Act, 18 U.S.C. § 1952."[36] To establish a racketeering pattern, "plaintiffs must allege at least two predicate acts."[37]

---

[34] Defendants acknowledge that Plaintiffs do not set forth the date the SUP was issued in their Complaint. Yet, the Court takes judicial notice of the previous lawsuit. The Leavenworth Action was filed on October 3 which challenged the validity of the SUP, and the SUP was clearly imposed prior to that date.

[35] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005) (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)).

[36] *Series 17-03-615 v. Teva Pharms. USA, Inc.*, 785 F. Supp. 3d 904, 945 (D. Kan. 2025).

[37] *Id.* (citing 18 U.S.C. § 1961(5)).

Here, Plaintiffs fail to adequately allege facts suggesting that Defendants were an enterprise. In addition, Plaintiffs fail to allege racketeering activity. Although Plaintiffs state that Defendants engaged in mail fraud and wire fraud, this allegation is conclusory, and Plaintiffs fail to set forth any underlying facts supporting any instances of mail or wire fraud. Thus, Plaintiffs do not allege at least two predicate acts that constitute racketeering activity. Accordingly, the Court dismisses this claim.

   3.     *Whether Plaintiffs' § 1983 Claims Against Individual Leavenworth County Defendants, Sued in Their Individual Capacities, should be Dismissed on Qualified Immunity Grounds*

Although the Court previously found that Plaintiffs' § 1983 claims were barred by the statute of limitations, it will additionally address Defendants' qualified immunity argument. Plaintiffs assert three § 1983 claims (Counts I, II, and III) against Defendants Van Parys, Webber, Huntsinger, and Voth, in their individual capacities.[38] Defendants contend that even if these claims are not otherwise barred, they should be dismissed against Van Parys, Webber, Huntsinger, and Voth due to qualified immunity.

It is well established that "[i]ndividual defendants named in a § 1983 action may raise a defense of qualified immunity."[39] "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[40] When the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show: "(1)

---

[38] An individual capacity claim was also raised against Defendant Smith, but Defendant asserts a different basis for dismissal—absolute immunity. The Court will not address absolute immunity as the claims against Smith are barred by the statute of limitations. Furthermore, the statute of limitations bars all the individual capacity § 1983 claims against Defendants Van Parys, Webber, Huntsinger, and Voth. The Court simply addresses qualified immunity as an additional basis for dismissal.

[39] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[40] *Id.* (quotation marks and citations omitted).

that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[41] The Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[42] "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[43]

In addition, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[44] "Allegations of 'personal participation in the specific constitutional violation complained of [are] essential,' because § 1983 imposes liability for a defendant's 'own individual actions.'"[45] And "[a] complaint must make clear exactly who is alleged to have done what to whom."[46]

In this case, Plaintiffs' allegations of personal involvement by Defendants Van Parys, Webber, Huntsinger, and Voth are lacking. Plaintiffs allege that (1) Van Parys was the chief legal advisor to Leavenworth County, (2) Webber was Leavenworth County Appraiser, (3) Huntsinger was the Leavenworth Deputy Appraiser, and (4) Voth was the Director of Planning and Zoning. Plaintiffs broadly allege that these Defendants violated the equal protection clause of the Fourteenth Amendment by imposing a SUP on Z&M.

---

[41] *Id.* (citation omitted).

[42] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[43] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted).

[44] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

[45] *Fullen v. City of Salina*, 2021 WL 4476780, at *9 (D. Kan. Sept. 30, 2021) (first citing *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) and then citing *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013)).

[46] *Williams v. Dalton*, 2022 WL 1184473, at *6 (D. Kan. Apr. 21, 2022) (quoting *Robbins*, 519 F.3d at 1250).

Defendants contend that none of these individuals were personally involved in the imposition of the SUP. Defendants direct the Court to K.S.A. § 12-755(a) which provides that "[t]he governing body may adopt zoning regulations."[47] In addition, K.S.A. § 12-757 sets forth the procedure for implementing zoning regulations, *i.e*, a SUP,[48] which requires a majority vote by the governing body.[49] Defendants contend that because there are no allegations that these Defendants are on the Leavenworth Board of County Commissioners, they did not have the authority to vote on or issue the SUP, or the right to force any decision on the Board. Thus, Defendants did not personally participate in any alleged constitutional violation and are entitled to qualified immunity. The Court agrees. Because Plaintiffs fail to adequately allege personal participation by these Defendants, Plaintiffs fail to adequately allege that these Defendants violated Plaintiffs' constitutional rights. Thus, qualified immunity provides an additional basis for the dismissal of these claims against Defendants Van Parys, Webber, Huntsinger, and Voth.

4.      *Whether the Court Lacks Subject Matter Jurisdiction over Plaintiffs' State Law Claims (Counts VIII, IX, X, XI, and XIII) because Plaintiffs did not Comply with the Kansas Tort Claims Act ("KTCA")*

Plaintiffs' state law claims include: (1) violations of Kansas statutes (Count VIII); (2) trespass and interference with property access (Count IX); (3) intentional interference with business relations (Count X); (4) abuse of process (Count XI); and (5) intentional infliction of emotional distress (Count XIII). Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's state law claims because Plaintiffs did not comply with the KTCA.

---

[47] K.S.A. § 12-755(a).

[48] *See* K.S.A. § 12-757(a)–(h).

[49] *Id.* § 12-757(d).

-14-

Pursuant to K.S.A. § 12-105b(d), "[a]ny person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice . . . before commencing such action." "[N]o action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first."[50] "Compliance with this provision is jurisdictional in nature under Kansas law, such that '[i]f the statutory requirements are not met, the court cannot acquire jurisdiction' over the municipality or the employee on the claim."[51]

Plaintiffs bear the burden to establish jurisdiction.[52] They fail to do so. Plaintiffs do not allege in their Complaint that they provided notice under K.S.A. § 12-105b(d) prior to asserting the state law claims in this lawsuit. In addition, in Plaintiffs' response, they assert that state procedural rules cannot bar their federal claims. Plaintiffs' argument misses the mark as Defendants state that the Court lacks subject matter jurisdiction over Plaintiffs' state law claims— not federal—because of Plaintiffs' failure to give written notice under K.S.A. § 12-105b(d). Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' state law claims (Counts VIII, IX, X, XI, and XIII) because Plaintiffs did not comply with the KTCA. Thus, these claims are dismissed without prejudice.[53]

---

[50] K.S.A. § 12-105b(d).

[51] *Shrum v. Cooke*, 2021 WL 3051891, at *6 (D. Kan. 2021) (quoting *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 280 Kan. 869, 127 P.3d 319, 325 (2006)); *see also Farmers Bank & Tr. v. Homestead Cmty. Dev.*, 58 Kan. App. 2d 877, 476 P.3d 1, 14 (2020) ("Failure to file the notice deprives the district court of subject matter jurisdiction over the claim.") (citation omitted).

[52] *Humes v. Cummings*, 2018 WL 4600717, at *4 (D. Kan. Sept. 25, 2018).

[53] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, . . .  the dismissal must be without prejudice.").

### 5.      *Whether Plaintiffs State a Viable Conspiracy Claim (Count V)*

Defendants contend that this claim should be dismissed because Plaintiffs do not adequately allege a civil conspiracy claim under § 1983 because they only set forth conclusory allegations.[54] To state a conspiracy claim under § 1983, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."[55] In addition, a plaintiff must allege that the agreement or concerted action between the defendants violated the plaintiff's constitutional rights.[56] "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."[57] Here, Plaintiffs simply allege that Defendants conspired to obstruct Plaintiffs' rights by concealing known facts, selectively enforcing laws, and creating an artificial basis to punish Plaintiffs. These allegations are insufficient to state a valid claim. Thus, the Court dismisses this claim.

### 6.      *Whether Plaintiffs State a Viable Monell Liability Claim (Count XII)*

In Plaintiffs' Complaint, they state in Count XII that they bring a "Monell Claim: Failure to Train and Supervise" against Leavenworth County and State Agencies.[58] Section 1983 municipal liability cannot be premised on a theory of *respondeat superior*.[59] Instead, to establish municipal liability under § 1983, "a plaintiff must show 1) the existence of a municipal policy or

---

[54] Plaintiffs reference § 1985(3) in Count V and allege a "civil conspiracy to violate civil rights." To the extent Plaintiffs attempt to bring a § 1985(3) claim, their claim fails because a § 1985(3) cause of action requires a demonstration of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). There are no allegations of racial or class-based animus.

[55] *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

[56] *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1060 (D. Kan. 2021).

[57] *Tonkovich*, 159 F.3d at 533 (quotation marks and citation omitted).

[58] The Court previously found that it lacks subject matter jurisdiction over the State Defendants.

[59] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 402–03 (1997); *see also Monell*, 436 U.S. at 689.

custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."[60] However, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[61]

In addition, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[62] To adequately allege a municipal liability claim based on a failure to train, "a plaintiff must allege facts that raise a plausible inference that the municipality acted with deliberate indifference."[63] "Ordinarily, a plaintiff must prove a pattern of untrained employees' constitutional violations to show deliberate indifference."[64] A single-incident failure-to-train municipal liability claim is only available "in a narrow range of circumstances where a violation of federal rights may be a highly predictable consequence of a failure" to train.[65]

Here, Plaintiffs' *Monell* claim fails because all of Plaintiffs' constitutional claims have been dismissed for various reasons, and thus there are no underlying constitutional violations for which *Monell* liability to attach. Furthermore, Plaintiffs' allegations are conclusory and insufficient. Plaintiffs simply state that there was a failure to properly train staff on agricultural exemptions and equal valuation, and they do not adequately state a failure to train claim. Accordingly, Plaintiffs fail to state a claim, and the Court dismisses it.

---

[60] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

[61] *Hinton*, 997 F.2d at 782 (citations omitted).

[62] *Zorn v. City of Marion*, 774 F. Supp. 3d 1279, 1332 (D. Kan. 2025) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[63] *Id.* (citing *Bryson*, 627 F.3d at 788).

[64] *Id.* (quoting *George ex rel. Bradshaw v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022)).

[65] *Valdez v. Macdonald*, 66 F.4th 796, 815 (10th Cir. 2023) (alterations, quotation marks, and citation omitted).

7. *Summary*

In sum, Counts I, II, III, IV, VI, and XIV are barred by the statute of limitations. In addition, Van Parys, Webber, Huntsinger, and Voth are entitled to qualified immunity as to the claims asserted against them in their individual capacity (Counts I, II, and III). Plaintiffs also fail to state a claim in Counts V, VII, and XII. Finally, the Court lacks subject matter jurisdiction over Plaintiffs' state law claims (Counts VIII, IX, X, XI, and XIII) for Plaintiffs' failure to comply with the KTCA. Accordingly, the Court grants the County Defendants' Motion to Dismiss, and all claims are dismissed.

**C.    Senator Jerry Moran's Motion to Dismiss (Doc. 103)**

Defendant Senator Moran seeks dismissal under Federal Rules 12(b)(1) and 12(b)(6) asserting that Plaintiffs' claims are so insubstantial, implausible, and devoid of merit that the claims do not present a federal case or controversy. Plaintiffs allege that Senator Moran failed to respond, failed to act, and deliberately ignored Plaintiffs' correspondence about the alleged constitutional violations inflicted upon them. They claim that he had a duty to acknowledge and refer their alleged constitutional claims to the proper oversight bodies. They bring these claims against Senator Moran in his official capacity.

In response to Defendant Moran's Motion to Dismiss, Plaintiffs filed a response in which they state that they do not oppose the dismissal of the claims against Senator Moran provided that (1) the dismissal is without prejudice, (2) the dismissal does not preclude Plaintiffs from seeking Senator Moran's testimony or documents in discovery, and (3) the dismissal does not affect Plaintiffs' claims against the Kansas Defendants or their pending Motion to Transfer Venue.

Because Plaintiffs do not oppose Defendant Moran's Motion to Dismiss, and because sovereign immunity bars Plaintiffs' claims against Senator Moran,[66] Plaintiffs' claims are dismissed for lack of subject matter jurisdiction. Furthermore, although Plaintiffs cannot condition the Court's dismissal on their terms, the Court will briefly address Plaintiffs' contentions. First, the dismissal will be without prejudice.[67] Second, Plaintiffs must follow appropriate legal avenues, as well as the Federal Rules of Civil Procedure, to the extent they seek third-party discovery from Senator Moran.[68] Finally, Senator Moran's dismissal has no bearing on Plaintiffs' claims against other Defendants. In sum, the Court grants Defendant Senator Moran's Motion to Dismiss.

**D.    Plaintiff's Motions to Transfer Venue (Docs. 96, 105)**

The Court will briefly address Plaintiffs' Motions to Transfer Venue. The dismissal of all Defendants in this case has a bearing on Plaintiffs' pending motions. Because all Defendants' Motions to Dismiss have been granted, Plaintiffs' Motions to Transfer Venue are denied as moot. The Court notes, however, that Plaintiffs' motions are also meritless. Plaintiffs contend that transfer is required because "the appearance of fairness has collapsed in Kansas." They primarily take issue with one law firm representing both the County and State Defendants.[69] In addition, they

---

[66] An official capacity claim against an individual employed by the United States is a suit against the United States and is barred by sovereign immunity, absent any waiver of sovereign immunity. *See Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989). Plaintiffs do not allege or identify any waiver of sovereign immunity.

[67] *See Brereton,* 434 F.3d at 1216 (noting that dismissals for lack of jurisdiction are dismissals without prejudice).

[68] Because this case will be closed based on this Order, this issue will be moot as Plaintiffs will not be able to seek any discovery.

[69] The Court notes that Plaintiffs have asserted this issue in other motions before this Court. *See* Motions to Sever and a Motion to Disqualify Counsel. Docs 81, 84, and 93. Magistrate Judge Schwartz denied these motions. Doc. 95. In this Order, she stated that representation of multiple parties is not enough, standing alone, to support disqualification. In addition, she stated that a comprehensive ruling on a similar motion to disqualify counsel filed by Plaintiffs (in another pending case in this district) had already informed Plaintiffs of this proposition. She warned Plaintiffs (and noted that it was the fourth warning) about filing motions that have no legal basis and/or filing motions that contain either inaccurate or nonexistent case citations. Because of Plaintiffs' representations to the Court, she denied Plaintiffs' motions without prejudice. She stated that if they chose to refile, the motion must address the applicable legal standard and that Plaintiffs must exercise appropriate care to ensure that all arguments are supported by existing legal authority.

allege that the current United States Attorney for the District of Kansas will be a fact witness in this case which collapses the appearance of fairness. They request transfer of the case to the District of Colorado under 28 U.S.C. § 1404(a) and 1406(a).

28 U.S.C. § 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This action could not have been brought in Colorado because (1) all the events giving rise to Plaintiffs' claims occurred in Kansas, (2) no defendant resides in Colorado, and (3) no defendant is subject to personal jurisdiction in Colorado. Furthermore, none of the Defendants consent to venue in Colorado. Accordingly, transfer under § 1404(a) is inapplicable.

28 U.S.C. § 1406(a) provides that a Court may dismiss, or transfer, a case that was filed in the wrong venue. This statute only allows transfer if the case was originally filed in the wrong venue. It was not because, as noted above, Plaintiffs and all Defendants reside in Kansas. In addition, all the events giving rise to Plaintiffs' claims occurred in Kansas. Accordingly, not only are Plaintiffs' motions moot, they are also without merit.

**IT IS THEREFORE ORDERED** that the State Defendants' Motion to Dismiss (Doc. 88) is **GRANTED**.

**IT IS FURTHER ORDERED** that the County Defendants' Motion to Dismiss (Doc. 89) is **GRANTED**.

**IT IS FURTHER ORDERED** that Senator Jerry Moran's Motion to Dismiss (Doc. 103) is **GRANTED**.

---

In Plaintiffs' Motion to Change Venue (Doc. 96)—filed two days after Judge Schwartz's order—they state that Judge Schwartz "already acknowledged conflict risk by denying severance without prejudice." This is an inaccurate statement of Judge Shwartz's order. The undersigned again cautions Plaintiffs about making misrepresentations to the Court as they have been explicitly warned to not do so.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Change Venue (Doc. 96) and Motion to Transfer Case (Doc. 105) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

This case is closed.

Dated this 17th day of March, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE